# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

---

## No. 2007-CV-3599
## SECTION C, MAG. 2

---

## WELLS FARGO BANK, N.A.,
## F/K/A WELLS FARGO HOME MORTGAGE, INC.
### Defendant-Appellant

**versus**

## MICHAEL JONES
### Plaintiff/Debtor-Appellee

---

## APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA
## ADVERSARY PROCEEDING NUMBER 06-1093, SECTION A
## THE HONORABLE ELIZABETH W. MAGNER, PRESIDING.
## A CIVIL PROCEEDING

## ORIGINAL APPELLATE BRIEF ON BEHALF OF
## WELLS FARGO BANK, N.A.,
## F/K/A WELLS FARGO HOME MORTGAGE, INC.
## (DEFENDANT/APPELLANT)

LAW OFFICE OF PAUL RUMAGE
Paul Rumage (Bar No. 1574)
Attorney for Wells Fargo Bank, N.A.
    Defendant/Appellant
13541 Tiger Bend Road
Baton Rouge, Louisiana 70817
Telephone:   (504) 458-3999
Facsimile:   (225) 756-5311
E-mail: RumageLawOffice@cs.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................ ii.

TABLE OF AUTHORITIES ...................................................... vii.

STATEMENT OF JURISDICTION ................................................1

CONCISE STATEMENT OF THE CASE ..........................................1

STANDARD OF REVIEW .......................................................1

SPECIFICATION OF ERRORS ..................................................4

LAW AND ARGUMENT

1.   The Bankruptcy Court committed manifest error when it failed to
     apply and/or recognize the affirmative defense of failure to mitigate
     damages on the part of the Debtor and his legal counsel after Debtor
     admitted it paid Five Thousand Dollars to its counsel during the
     bankruptcy without prior court approval or even knowledge, and less
     than $5,000 was owed by the Debtor under the Chapter 13 plan. . . . . . . . . . . . . 10

2.   When it was discovered at trial that the Debtor paid, and
     legal counsel accepted, $5,000.00 in estate property
     while the bankruptcy was pending and without notice or the
     approval of the Bankruptcy Court, it was manifest error for
     the Bankruptcy Court to allow Debtor's legal counsel to continue to
     serve as counsel for the Debtor.  The Bankruptcy Court should have
     disqualified the Debtor's counsel immediately. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3.   After the payment and conflict between the debtor and
     his counsel was discovered at trial, the Bankruptcy Court committed
     manifest error when it denied Wells Fargo's Motion To Strike
     The Request For Attorney Fees From The Debtor's Prayer For Attorney
     Fees on the basis of 'prematurity'. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

4.   It was manifest error for the Bankruptcy Court to determine there was
     no conflict of interest between the Debtor and his legal counsel
     when the Debtor paid, and his legal counsel accepted, $5,000.00 in
     estate property while the bankruptcy was pending
     and without notice to, or approval of, the Bankruptcy Court. . . . . . . . . . . . . . . . .11

5.   The Bankruptcy Court committed error in directing that Wells Fargo
     not argue a reasonable interpretation of the Court's previous
     Orders.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

6.   The Bankruptcy Court erred in determining that Wells Fargo violated
     the stay by providing a payoff letter to the debtor that included amounts
     due under the mortgage, and not just the proof of claim, where the order
     that authorized the debtor to refinance the security directed that Wells
     Fargo be paid the amounts due under its mortgage.. . . . . . . . . . . . . . . . . . . . . . . .20

7.   The Bankruptcy Court erred in determining that Wells Fargo violated
     orders of court by not returning promptly to the debtor property
     insurance proceeds that the debtor obtained during the Chapter 13
     Bankruptcy without notice to or approval of the Trial Court, and
     where the Bankruptcy Court never previously ordered Wells Fargo to
     surrender the insurance proceeds and never directed to whom
     the insurance proceeds should be surrendered. . . . . . . . . . . . . . . . . . . . . . . . . . . .21

8.   The Bankruptcy Court committed manifest error when it disregarded
     the anti-modification rule of Section 1322(b)(2) and the contract
     provision of Section 1322 rather than any provision of Section 506
     to control the assessment of fees and costs against Wells Fargo as
     the overly secured first lien mortgage.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

9.   The Bankruptcy Court committed manifest error when it applied Section
     506 because there is no private right of action under Section 506. . . . . . . . . . . . .21

10.  The Bankruptcy Court committed manifest error in applying Section 506
     after confirmation of the plan.  Based on *Nobleman,* the only
     controlling statute is § 1322(b)(2) because the note and mortgage
     executed by Michael Jones, the Debtor, remained in full force and
     effect after confirmation.  The relationship between Michael Jones
     and Wells Fargo is governed solely by the terms of the note and
     mortgage and the Bankruptcy Court should not attempt to apply § 506
     and should not rule on the validity or amount of post-confirmation costs
     added to the debt under the terms of the note and mortgage.. . . . . . . . . . . . . . . 21

11.  The Bankruptcy Court erred in ruling that the confirmation of a
     debtor's Chapter 13 plan could modify the rights of a creditor
     that was overly secured by a first mortgage on the debtor's
     residence in direct contravention of the recent rulings of the
     United States Supreme Court.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..21

12.  The Bankruptcy Court erred when it ruled that the balance on an
     overly secured mortgage on the debtor's residence due to

the secured creditor, as allowed in the mortgage and by state
law, is discharged when the Chapter 13 plan is completed and/
or the amount due under the proof of claim is paid. . . . . . . . . . . . . . . . . . . . . . . .22

13.    The Bankruptcy Court erred when it ruled that the collection of interest,
       fees, commissions, and costs due to Wells Fargo under the terms of the
       mortgage violated the stay and the confirmation order of the Trial Court. . . . . . .22

14.    The Bankruptcy Court erred in requiring that any bankruptcy-related
       attorney's fees and costs assessed by Wells Fargo after the bankruptcy
       petition is filed are not allowed without application to and approval by
       the Bankruptcy Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

15.    The Bankruptcy Court erred in ruling that Michael Jones (debtor/
       plaintiff) was not obligated to pay Wells Fargo Bank, N.A., interest,
       costs, inspection fees, sheriff's commissions, attorney fees, and
       assessments that the mortgage between the parties obligated the
       debtor/plaintiff to pay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

16.    The Bankruptcy Court erred in determining that Wells Fargo's rights
       to recover collection costs, including postpetition costs such as
       inspection fees, are *claims* against the estate instead of recognizing
       that these amounts relate to and arise out of Wells Fargo's *right* to
       payment on the mortgage and note. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

17.    The Bankruptcy Court erred in refusing to apply the voluntary
       repayment doctrine as a bar to Plaintiff's claims. . . . . . . . . . . . . . . . . . . . . . . . . . 28

18.    The Bankruptcy Court committed manifest error in not applying the
       voluntary payment doctrine based on the error of fact that there
       was no case pending between Wells Fargo and the Debtor. . . . . . . . . . . . . . . . . 28

19.    The Bankruptcy Court committed manifest error in not applying the
       voluntary payment doctrine based on the error of law that a
       case needed to be pending between Wells Fargo and the Debtor. . . . . . . . . . . . .30

20.    The Bankruptcy Court committed manifest error in not considering
       the failure of the Plaintiff to mitigate his damages. The Debtor
       testified himself that he had sufficient time to seek advice from
       legal counsel on the issues prior to voluntarily paying the
       disputed sums. No evidence was introduced that the Debtor
       was going to "lose" his loan commitment if he sought court
       intervention "at the first instance". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

21.    The Bankruptcy Court erred in holding that the burden of proof rested

with the Defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

22.    The Bankruptcy Court erred in holding that the Plaintiff was not
       required to provide any expert testimony to meet the Plaintiff's burden
       of proof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

23.    The Bankruptcy Court erred in holding that the Debtor/Plaintiff ever
       satisfied its burden of proof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

24.    The Bankruptcy Court erred in shifting the burden of proof to the
       Creditor/Defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

25.    It was manifest error for the Bankruptcy Court to refuse the
       Defendant's Rule 59 motion to proffer an accounting
       by a Certified Public Accountant of how the payments
       should have been applied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

26.    The Bankruptcy Court erred in not granting the Defendant's Rule 59
       Motion To Offer Expert Testimony In The Field Of Accounting where the
       Bankruptcy Court provided its expertise in accounting to assist the Plaintiff
       where the Plaintiff had previously notified Defendant that Plaintiff would
       not offer such evidence at trial and the Defendant was given no notice that
       the Bankruptcy Court would apply such expertise in accounting. . . . . . . . . . . . .37

27.    The Bankruptcy Court erred in allowing the Plaintiff/Witness to provide
       opinion testimony to the Bankruptcy Court where the Plaintiff/Witness
       was not offered and was not qualified as an expert, and where the
       Creditor/Defendant had no notice that such opinion testimony would be
       offered. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38

28.    The Bankruptcy Court committed manifest error when it recalculated
       the loan and adjusted the amount due Wells Fargo as set forth
       in Wells Fargo's proof of claim and accepted under the Debtor's
       confirmed Chapter 13 plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

29.    The Bankruptcy Court committed manifest error when it calculated
       the Debtor's loan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

30.    The Bankruptcy Court erred in its interpretation of certain accountings. . . . . . .40

31.    The Bankruptcy Court erred in calculating the amounts to be forfeited
       by Wells Fargo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

32.    The Bankruptcy Court erred in providing its expertise in accounting to
       assist the Plaintiff where the Plaintiff had previously notified Defendant

that it would not offer such evidence at trial and the defendant was given
no notice that the Bankruptcy Court would apply such expertise in accounting. .41

33.    The Bankruptcy Court committed manifest error when the Trial Court
       ruled that Wells Fargo acted unreasonably in incurring inspection
       fees and other charges..............................................42

34.    It was manifest error for the Bankruptcy Court to find that all of the
       inspections were unreasonable.......................................42

35.    The Bankruptcy Court committed manifest error when the Trial Court
       ruled that Wells Fargo, an over-secured lender, acted unreasonably in
       assessing inspection fees and other charges to the Debtor's account......... 42

36.    The Bankruptcy Court committed manifest error when the Trial Court
       ruled that the amounts assessed by Wells Fargo for inspection
       fees and other charges were unreasonable..............................43

37.    It was manifest error for the Bankruptcy Court to rule that the
       Defendant/Creditor had the discretion, regardless of the
       automatic stay, to dismiss a foreclosure petition in state court
       after the commencement of the Chapter 13 proceedings.................... 43

38.    It was manifest error for the Bankruptcy Court to rule that the
       Defendant/Creditor was required to dismiss a prepetition
       state court foreclosure action after the Debtor filed a
       Chapter 13 bankruptcy petition........................................44

39.    It was manifest error for the Court to rule that the Defendant/ Creditor
       was required to send notices, during the automatic stay, of all and
       every assessment and amount due by the debtor to the debtor, and that
       such notices would not have violated the automatic stay or the Court's
       Orders. ...........................................................46

40.    It was manifest error for the Bankruptcy Court to consider an award
       of punitive damages after it had rendered a final judgment for actual
       damages............................................................46

41.    It was manifest error for the Bankruptcy Court to render a final judgment
       in the case but to consider at a later hearing an award of attorney fees
       because an award of additional actual damages in the form of attorney
       fees is a prohibited substantive amendment to a final judgment. .............47

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

VERIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

# TABLE OF AUTHORITIES

Cases:                                                                Page

*Armstrong v. Office of the President,* 1 F.3d 1274 (D.C. 1993)........................19

*Ball v. A.O. Smith Corporation,* (N.D. N.Y. 2005), citing *In re Sumpter,* 171 B.R. 835,
844 (Bankr., N.D. Ill. 1994.............................................................. 48

*Barbara, Inc. v. Billelo,* 33 So.2d 689 (La. 1947)....................................43

*Bolen v. Mercedes Benz, Inc. (In re Bolen),* 295 B.R. 803, 807 (Bankr.D.S.C. 2002)........ 36

*Bradley v. U.S.,* 866 F.2d 120, 127 (5th Cir. 1989)...................................39

*Breffeilh v. Breffeilh,* 60 So.2d 457 (La. 1952)......................................43

*Bridas S.A.P.I.C. v. Govt. of Turkmenistan,* 345 F.3d 347 at 359 and 360 (5th Cir. 2003)...... 31

*Brockington v. Citizens and S. Nat'l Bank of S.C. (In re Brockington),* 129 B.R. 68, 70
(Bankr.D.S.C. 1991)..................................................................36

*California State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fid.
Holding Co.),* 837 F.2d 696, 698 (5th Cir. 1988)...................................... 36

*Cen-Pen Corp. v. Hanson,* 58 F.3d 89, 33 Collier Bankr. Cas. 2d (MB) 1159, Bankr. L.
Rep. (CCH) P 76549 (4th Cir. 1995)................................................... 22

*Chris Albritton Constr. v. Pitney Bowes Inc.,* 304 F.3d 527 (5th Cir. 2002)..............30, 34

*Clayton v. King (In re Clayton),* 235 B.R. 801, 806-07 (Bankr. M.D.N.C. 1998)............. 36

*Diviney v. NationsBank of Texas (In re Diviney),* 211 B.R. 951, 961 (Bankr.N.D.Okla.
1997) *aff'd* 225 B.R. 762 (10th Cir. BAP 1998)........................................36

*The Eleanore,* 248 F. 472 (6th Cir. 1918).............................................38

*Estep v. Fifth Third Bank of N.W. Ohio (In re Estep),* 173 B.R. 126, 129 (Bankr.N.D.
Ohio 1994)........................................................................... 36

*First City Bank v. Lee,* 576 S.2d 544, 545 (La. App. 4 Cir. 1991)........................43

*First Interstate Bank of Nevada, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.),* 175 B.R.
52, 56 (B.A.P. 9th Cir. 1994)......................................................... 15

*Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). . . . . . . . . . . . . . 35

*Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434, 469 (D.Utah 1998). . . . . . . . . . . . . . . . . . . .15

*Homebanc v. Chappell*, 984 F.2d 775 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Bisch*, 159 B.R. 546, 29 Collier Bankr. Cas. 2d (MB) 1611, 72 A.F.T.R.2d 93-6534
(B.A.P. 9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Brown*, 121 B.R. 768 (Bankr. S.D. Ohio 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*In Re Browning Timber Of Alaska, Inc.*, (Alaska, 10/08/99). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Clarkson,* 168 B.R. 93, 95 (Bankr., D.S.C. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*In re Crimson Investments, N.V.,* 109 B.R. 397, 402 (Bankr. D. Ariz 1989) . . . . . . . . . . . . . . . . .16

*In re Downs*, 103 F.3d 472, 477 (6th Cir. 1996), *quoting In re Chapel Gate Apartments,*
*Ltd.,* 64 B.R. 569, 575 (Bankr. N.D.Tex. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Dominguez,* 312 B.R. 499, 508 (Bankr. S.D.N.Y. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . .48

*In re Dunn*, 202 B.R. 530 (Bankr.D.N.H. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

*In re Green Valley Beer*, 281 B.R. 253 (Bankr. W.D. Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . .38

*In re Florence Tanners, Inc.*, 213 B.R. 129, 133 (Bankr.E.D.Mich. 1997). . . . . . . . . . . . . . . . . . 15

*In re Ford*, 967 F.2d 1047, 1051 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26

*In re Harmon*, 72 B.R. 458 (Bankr. E.D. Pa. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Harris*, 64 B.R. 717, Bankr. L. Rep. (CCH) P 71446 (Bankr. D. Conn. 1986). . . . . . . . . . . 22

*In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051 (5th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*In re Hutchings* (Bkrtcy.N.D.Ala., 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*In re Josephs*, 108 B.R. 654 (Bankr. N.D. Ill. 1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Kennedy Mortgage Co. v. Larson*, 23 B.R. 466, 472 (D.N.J. 1982). . . . . . . . . . . . . . . . . . . .45

*In re Lejeune*, 73 B.R. 98 (Bankr. N.D. Ga. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Levine*, 45 B.R. 333 (N.D. Ill. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*In re Martinez*, 281 B.R. 883 (Bankr. W.D.Tex. 2002)...................................46

*In re Mayeaux*, (E.D. Tex., 2001) 269 B.R. 614 ...........................................18

*In re National Steel Corp.,* 316 B.R. 267 (N.D. Ill, 10/26/2004)...........................30

*In re Rhoades*, 34 B.R. 168 (Bankr. D. Vt. 1983).......................................22

*In re Richardson*, 63 B.R. 112 (Bankr. W.D. Va. 1986)....................................25

*In Re Robinson,* (W.D. La. 2006) 352 B.R. 436.........................................12

*In re Ross*, 338 B.R. 266 (E.D.Pa. 2006)...............................................35

*In re Scheierl*, 176 B.R. 498 (Bankr.D. Minn. 1995)......................................22

*In re Sucre,* 226 B.R. 340, 349 (Bankr. S.D.N.Y. 1998)...................................48

*In re Sumpter,* 171 B.R. 835, 844 (Bankr., N.D. Ill. 1994)................................48

*In re Tarnow,* 749 F.2d 464, 465 (7th Cir. 1984).......................................23

*In re Thomas*, 883 F.2d 991, 19 Bankr. Ct. Dec. (CRR) 1358, Bankr. L. Rep. (CCH)
P 73128 (11th Cir. 1989) ............................................................22

*In re Van Hierden*, 87 B.R. 563, 19 Collier Bankr. Cas. 2d (MB) 143 (Bankr. E.D.
Wis. 1988)..........................................................................22

*In re Ward*, 73 B.R. 119 (Bankr. N.D.Ga. 1987)........................................25

*In re West Delta Oil Co., Inc.,* 432 F.3d 347 (5th Cir. 2005)............................17

*In re White*, 88 B.R. 498 (Bankr. D. Mass. 1988)......................................25

*In re Whitt*, 79 B.R. 611, 615 (E.D. Pa. 1987).........................................46

*In re Wolf*, 162 B.R. 98, 30 Collier Bankr. Cas. 2d (MB) 730 (Bankr. D. N.J. 1993)..........22

*Longwell v. Banco Mortgage Co.*, 38 B.R. 709 (N.D. Ohio 1984).........................25

*Macks' Seafood Café v. Quinteros*, 176 F.3rd 669 at 677 (3rd Cir. 1999)...................30

*Majchrowlski v. Norwest Mortgage, Inc.,* 6 F.Supp.2d 946, 964-965 (N.D. Ill. 1998)......46, 47

*Mann v. Chase Manhattan Mortgage Corp.,* (R.I. 2002), *affirmed,* 316 F.3d 1

-x-

(1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 26, 27, 45

*Matter of Howard*, 972 F.2d 639, 27 Collier Bankr. Cas. 2d (MB) 1016, Bankr.
L. Rep. (CCH) P 74838 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . 22, 24, 46, 48

*Matter of Kennedy Mort. Co.,* 23 B.R. 466 (United States Bankruptcy Court, D.
New Jersey, 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Matter of Prudhomme,* 43 F.3d 1000 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 16, 17

*Matter of Taylor*, 132 F.3d 256 (5th Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Matter of Stein*, 63 B.R. 140, 14 Bankr. Ct. Dec. (CRR) 733 (Bankr. D. Neb. 1985). . . . . . . . . . 22

*Miller v. Norfolk S. Rwy. Co.,* 208 F. Supp. 2nd 851 (N.D. Ohio 2002) . . . . . . . . . . . . . . . . . . . . .30

*New Orleans & N.E.R. Co. v. Louisiana Const. & Imp. Co.,* 33 So. 51 (La.1902). . . . . . . .. . . . .28

*Nationwide Mut. Ins. Co. v. Berryman Prods. (In re Berryman)*, 159 F.3d 941, 943
(5th Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Nobleman v. American Savings Bank,* 968 F.2d 483 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . .24

*Nobleman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed. 2d 228
(1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 49

*Quait v. Berger (In re Vann)*, 136 B.R. 863, 870-71 (D.Colo. 1992), *aff'd*, 986 F.2d
1431 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L. Ed. 2d 424 (1993).. . . . . . . . . . . . . . . . . . .40

*Simmons*, 765 F.2d 547 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Sizzler Family Steak Houses v. Western Sizzlin Steak House,Inc.*, 793 F.2d 1529, 1533
n. 2 (11th Cir. 1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1337 n.8 (11th Cir. 2000), cert.
Denied, 531 U.S. 1073, 121 S.Ct. 765, 148 L. Ed. 2d 666, rehearing denied, 531
U.S. 1185, 121 S. Ct. 1173, 148 L.Ed. 2d 1030 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Theriault v. Silber*, 547 F.2d1279, 1280 (5th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 204-205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).. . . .13

*United States v. O'Rourke*, 943 F.2d 180, 186 (2d Cir. 1991). . . .. . . . . . . . . . . . . . . . . . . . . . . . .19

*Westchester Fire Ins. Co. v. Buffalo H. And Salvage*, 40 F.Supp. 378 (W.D.N.Y., 1941). . . . . . .38

*Woods v. City Natl. Bank & Trust Co.*, 312 U.S. 262, 268 (1941). . . . . . . . . . . . . . . . . . . . . . . 15, 17

Statutes:

11 U.S.C.§ 329 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

11 U.S.C. § 330(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

11 U.S.C. § 362 (a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26, 44

11 U.S.C. § 362(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .48

11 U.S.C. § 506(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24, 40

11 U.S.C. § 541 (a) (1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 541 (a) (5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11 U.S.C. § 1322(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22, 24, 25, 40

11 U.S.C. § 1322(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

11 U.S.C. § 1325(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

11 U.S.C. §1328(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. § 158(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Bankruptcy Rule 1007(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16, 17

Bankruptcy Rule 2016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 18

Bankruptcy Rule 8001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Bankruptcy Rule 8013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §702(b)(2)(D), 108 Stat. 4106 (1994). . . 25

Federal Rules of Civil Procedure, Rule 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38

LA. CIV. C. Art. 1831 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

LA. CIV. C. Art. 2340 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**NOW INTO COURT**, through undersigned counsel comes the Defendant-Appellant, Wells Fargo Bank, N.A., F/K/A Wells Fargo Home Mortgage, Inc. ("Wells Fargo" or "Defendant/Creditor") which appeals the written judgment rendered, signed and docketed.[1] The judgment is not consistent with admissions made in the record and the evidence, is contrary to law, and is inconsistent with rulings from the United States Supreme Court, the Fifth Circuit, and the Louisiana Supreme Court. The Bankruptcy Court's judgment should be vacated in accordance with settled law and the complaint should be dismissed.

## STATEMENT OF JURISDICTION

The District Court properly has jurisdiction over this case under 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001. *See* 28 U.S.C. § 158(a); FED.R.BANKR.P. 8001. All proceedings sought to be reviewed occurred in the Eastern District of Louisiana.

## STANDARD OF REVIEW

The district court sits as an appellate court in this proceeding. *See* Bankruptcy Rule 8013. Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed de novo. *Nationwide Mut. Ins. Co. v. Berryman Prods. (In re Berryman)*, 159 F.3d 941, 943 (5th Cir. 1998).

## CONCISE STATEMENT OF THE CASE

On April 04, 2001, Michael Jones signed the promissory note identified as Exhibit 2. Contemporaneously with the execution of the promissory note, Michael Jones executed the purchase money mortgage identified as Exhibit 2. By the act of mortgage, Michael Jones placed a mortgage on the property identified as 59 Piper Lane, Mandeville, LA 70448, in favor of Wells

---

[1] Judgment dated April 13, 2007.

Fargo.The mortgage identified as Exhibit 2 was recorded in the Mortgage Records of St. Tammany Parish on April 10, 2001. At no time has any lien or encumbrance been ranked ahead of the mortgage identified as Exhibit 2.The real estate at 59 Piper Lane, Mandeville, LA 70448 has been the primary residence of Michael Jones since April 04, 2001.

On June 14, 2002, Wells Fargo filed a petition for executory process with the 22nd Judicial District Court (St. Tammany Parish) for the State of Louisiana seeking to foreclose against the property at 59 Piper Lane, Mandeville, LA 70048. The case was assigned case no. 2002-12987-G. Michael Jones paid the arrearages, fees, commissions and costs associated with the state court action. Wells Fargo dismissed the petition for executory process.

On November 06,2002, Wells Fargo filed a petition for foreclosure under ordinary process with the 22nd Judicial District Court (St. Tammany Parish) for the State of Louisiana seeking to foreclose against the property at 59 Piper Lane, Mandeville, LA 70048. The case was assigned case no. 2002-15535-E. Michael Jones paid the arrearages, fees and costs associated with the state court action. Wells Fargo dismissed the petition for executory process.

On May 09, 2003, Wells Fargo filed a petition for executory process with the 22nd Judicial District Court (St. Tammany Parish) for the State of Louisiana seeking to foreclose against the property at 59 Piper Lane, Mandeville, LA 70048. The case was assigned case no. 2003-12210-E.

On the eve of the foreclosure sale, Michael Jones commenced a voluntary petition under Chapter 13 of the U.S. Bankruptcy Code on August 26, 2003 in the United States District Court for the Eastern District of Louisiana (Case 03-16518, Document 1).The bankruptcy petition of Michael Jones lists Wells Fargo as a secured creditor. Schedule A of the Schedules (Case 03-16518, Document 3) and the Chapter 13 Plan (Case 03-16518, Document 4) filed by Michael Jones place a fair market value of $320,000.00 for the real estate identified as 59 Piper Lane, Mandeville, LA

70048. The Chapter 13 Plan (Case 03-16518, Document 4) filed by Michael Jones provided that Michael Jones was to make "regular payments" directly to Wells Fargo.

On September 03, 2003, Wells Fargo filed a proof of claim in the proceeding Case 03-16518 (Claim No. 1). Attached to the proof of claim was a copy of the promissory note and mortgage referenced as Exhibit 2. Also attached was an itemization of the amounts known to be owed by Michael Jones as an attachment to the proof of claim. The attachment disclosed a "Principal Balance" of $213,949.06 and "Arrearages Due" of $22,259.69 as of the commencement of the case. The arrearages included costs actually advanced by Wells Fargo regarding the foreclosure action. The itemization included "Court Costs" of $1,283.87. Although the "Court Costs" were not broken down further, the "Court Costs" included $650.00 actually paid to the Sheriff for the Parish of St. Tammany as a deposit against the costs and commissions that may be due to the Sheriff. The amount due to the Sheriff was uncertain at the time the proof of claim was filed because the St. Tammany Parish Sheriff's Office charges a commission based on 3% of the amount collected by the creditor, or 3% of the highest bid at the foreclosure auction, or 3% of the writ amount, whichever amount is the lesser, upon the setting of a sale date.

The Chapter 13 Plan (Case 03-16518, Document 4) filed by Michael Jones proposed that Michael Jones was to cure a default to Wells Fargo in the amount of $22,259.69 over a period of the first twelve months of the bankruptcy by means of the monthly payment of $2,105.35 to the Chapter 13 Trustee.

After confirmation of the plan, Wells Fargo assessed charges against the account of the debtor for inspection fees and such post-petition. After Hurricane Katrina, the plaintiff voluntarily delivered to Wells Fargo, N.A. insurance proceeds for the damage to the security. The debtor did not apply to the Bankruptcy Court for the use of these insurance proceeds until after Wells Fargo,

N.A. returned the insurance proceeds to the debtor.

The plaintiff applied to the Bankruptcy Court to payout the mortgage to Wells Fargo, N.A. in an amount that was sufficient to pay the mortgage balance to Wells Fargo, N.A., specifically $235,702.00.[2] The Bankruptcy Court directed that the plaintiff refinance the security "to pay off the existing mortgage with Wells Fargo Home Mortgage."[3] Wells Fargo, N.A. provided a payoff statement to the plaintiff consistent with the amount that the debtor proposed to the Bankruptcy Court. On January 03, 2006, Debtor refinanced his home and paid out the debt secured by the mortgage owed to Wells Fargo.

The plaintiff subsequently initiated an adversary proceeding after the voluntary payment to Wells Fargo, N.A., seeking to have Wells Fargo, N.A held in violation of the stay orders, and seeking damages, among other relief. After a trial on the merits, the Bankruptcy Court rendered judgment. Wells Fargo, N.A. filed a Rule 59 motion, which the Bankruptcy Court denied. Wells Fargo, N.A. seeks an appeal and review of the judgment of the Bankruptcy Court on the merits and on the Bankruptcy Court's denial of the Rule 59 motion.

## SPECIFICATION OF ERRORS

1.    The Bankruptcy Court committed manifest error when it failed to apply and/or recognize the affirmative defense of failure to mitigate damages on the part of the Debtor and his legal counsel after Debtor admitted it paid Five Thousand Dollars to its counsel during the bankruptcy without prior court approval or even knowledge, and less than $5,000 was

---

[2] "Debtor will borrow up to $275,00 from Option One Mortgage Corporation *to pay off his existing mortgage* with Wells Fargo Home Mortgage in the amount of not more than $235,702." (Emphasis added.) "Request for Approval of Post Petition Consumer Debt," Doc. 92, ¶ 3, U.S.B.C. No. 03-16518.

[3] Document 98, "In re: Michael Jones," U.S.B.C., E.D.La. No. 03-16518-A.

owed by the Debtor under the Chapter 13 plan.

2.  When it was discovered at trial that the Debtor paid, and legal counsel accepted, $5,000.00 in estate property while the bankruptcy was pending and without notice or the approval of the Bankruptcy Court, it was manifest error for the Bankruptcy Court to allow Debtor's legal counsel to continue to serve as counsel for the Debtor. The Bankruptcy Court should have disqualified the Debtor's counsel immediately.

3.  After the payment and conflict between the debtor and his counsel was discovered at trial, the Bankruptcy Court committed manifest error when it denied Wells Fargo's Motion To Strike The Request For Attorney Fees From The Debtor's Prayer For Attorney Fees on the basis of 'prematurity'.

4.  It was manifest error for the Bankruptcy Court to determine there was no conflict of interest between the Debtor and his legal counsel when the Debtor paid, and his legal counsel secretly accepted, $5,000.00 in estate property while the bankruptcy was pending and without notice to, or approval of, the Bankruptcy Court.

5.  The Bankruptcy Court committed error in directing that Wells Fargo not argue a reasonable interpretation of the Court's previous Orders.

6.  The Bankruptcy Court erred in determining that Wells Fargo violated the stay by providing a payoff letter to the debtor that included amounts due under the mortgage, and not just the proof of claim, where the order that authorized the debtor to refinance the security directed that Wells Fargo be paid the amounts due under its mortgage.

7.  The Bankruptcy Court erred in determining that Wells Fargo violated orders of court by not returning promptly to the debtor property insurance proceeds that the debtor obtained during the Chapter 13 Bankruptcy without notice to or approval of the Bankruptcy Court,

and where the Bankruptcy Court never previously ordered Wells Fargo to surrender the insurance proceeds and never directed to whom the insurance proceeds should be surrendered.

8.      The Bankruptcy Court committed manifest error when it disregarded the anti-modification rule of Section 1322(b)(2) and the contract provision of Section 1322 rather than any provision of Section 506 to control the assessment of fees and costs against Wells Fargo as the overly secured first lien mortgage.

9.      The Bankruptcy Court committed manifest error when it applied Section 506 because there is no private right of action under Section 506.

10.     The Bankruptcy Court committed manifest error in applying 11 U.S.C. § 506 after confirmation of the plan.  Based on *Nobleman,* the only controlling statute is § 1322(b)(2) because the note and mortgage executed by Michael Jones, the Debtor, remained in full force and effect after confirmation.  The relationship between Michael Jones and Wells Fargo is governed solely by the terms of the note and mortgage and the Bankruptcy Court committed reversible error in disallowing the validity and amount of post-confirmation costs added to the debt under the terms of the note and mortgage.

11.     The Bankruptcy Court erred in ruling that the confirmation of a debtor's Chapter 13 plan could modify the rights of a creditor that was overly secured by a first mortgage on the debtor's residence in direct contravention of the recent rulings of the United States Supreme Court.

12.     The Bankruptcy Court erred when it ruled that the balance on an overly secured mortgage on the debtor's residence due to the secured creditor, as allowed in the mortgage and by state law, is discharged when the Chapter 13 plan is completed and/or the amount due

under the proof of claim is paid.

13. The Bankruptcy Court erred when it ruled that the collection of interest, fees, commissions, and costs due to Wells Fargo under the terms of the mortgage violated the stay and the confirmation order of the Bankruptcy Court.

14. The Bankruptcy Court erred in requiring that any bankruptcy-related attorney's fees and costs assessed by Wells Fargo after the bankruptcy petition is filed are not allowed without application to and approval by the Bankruptcy Court.

15. The Bankruptcy Court erred in ruling that Michael Jones (debtor/plaintiff) was not obligated to pay Wells Fargo Bank, N.A., interest, costs, inspection fees, sheriff's commissions, attorney fees, and assessments that the mortgage between the parties obligated the debtor/plaintiff to pay.

16. The Bankruptcy Court erred in determining that Wells Fargo's rights to recover collection costs, including postpetition costs such as inspection fees, are *claims* against the estate instead of recognizing that these amounts relate to and arise out of Wells Fargo's *right* to payment on the mortgage and note.

17. The Bankruptcy Court erred in refusing to apply the voluntary repayment doctrine as a bar to Plaintiff's claims.

18. The Bankruptcy Court committed manifest error in not applying the voluntary payment doctrine based on the error of fact that there was no case pending between Wells Fargo and the Debtor.

19. The Bankruptcy Court committed manifest error in not applying the voluntary payment doctrine based on the error of law that a case needed to be pending between Wells Fargo and the Debtor.

20.     The Bankruptcy Court committed manifest error in not considering the failure of the

        Plaintiff to mitigate his damages. The Debtor testified himself that he had sufficient time to

        seek advice from legal counsel on the issues prior to voluntarily paying the disputed sums.

        No evidence was introduced that the Debtor was going to "lose" his loan commitment if he

        sought court intervention "at the first instance".

21.     The Bankruptcy Court erred in holding that the burden of proof rested with the Defendant.

22.     The Bankruptcy Court erred in holding that the Plaintiff was not required to provide any

        expert testimony to meet the Plaintiff's burden of proof.

23.     The Bankruptcy Court erred in holding that the Debtor/Plaintiff ever satisfied its burden of

        proof.

24.     The Bankruptcy Court erred in shifting the burden of proof to the Creditor/Defendant.

25.     It was manifest error for the Bankruptcy Court to refuse the Defendant's Rule 59 motion to

        proffer an accounting by a Certified Public Accountant of how the payments should have

        been applied.

26.     The Bankruptcy Court erred in not granting the Defendant's Rule 59 Motion To Offer

        Expert Testimony In The Field Of Accounting where the Bankruptcy Court provided its

        expertise in accounting to assist the Plaintiff where the Plaintiff had previously notified

        Defendant that Plaintiff would not offer such evidence at trial and the Defendant was given

        no notice that the Bankruptcy Court would apply such expertise in accounting.

27.     The Bankruptcy Court erred in allowing the Plaintiff/Witness to provide opinion testimony

        to the Bankruptcy Court where the Plaintiff/Witness was not offered and was not qualified

        as an expert, and where the Creditor/Defendant had no notice that such opinion testimony

        would be offered.

28. The Bankruptcy Court committed manifest error when it recalculated the loan and adjusted the amount due Wells Fargo as set forth in Wells Fargo's proof of claim and accepted under the Debtor's confirmed Chapter 13 plan.

29. The Bankruptcy Court committed manifest error when it calculated the Debtor's loan.

30. The Bankruptcy Court erred in its interpretation of certain accountings.

31. The Bankruptcy Court erred in calculating the amounts to be forfeited by Wells Fargo.

32. The Bankruptcy Court erred in providing its expertise in accounting to assist the Plaintiff where the Plaintiff had previously notified Defendant that it would not offer such evidence at trial and the defendant was given no notice that the Bankruptcy Court would apply such expertise in accounting.

33. The Bankruptcy Court committed manifest error when the Bankruptcy Court ruled that Wells Fargo acted unreasonably in incurring inspection fees and other charges.

34. It was manifest error for the Bankruptcy Court to find that all of the inspections were unreasonable. On page 238 of the trial transcript, the Bankruptcy Court, discussing the inspections, states "It is a year later. And of course, that's also Hurricane Katrina hits at that point too, which I would understand why you would definitively want to know what's happening with the property." However, in its judgment, the Bankruptcy Court denied the post-Katrina inspection charge and found *all* inspections to be unreasonable.

35. The Bankruptcy Court committed manifest error when the Bankruptcy Court ruled that Wells Fargo, an over-secured lender, acted unreasonably in assessing inspection fees and other charges to the Debtor's account.

36. The Bankruptcy Court committed manifest error when the Bankruptcy Court ruled that the amounts assessed by Wells Fargo for inspection fees and other charges were unreasonable.

37.  It was manifest error for the Bankruptcy Court to rule that the Defendant/Creditor had the discretion, regardless of the automatic stay, to dismiss a foreclosure petition in state court after the commencement of the Chapter 13 proceedings.

38.  It was manifest error for the Bankruptcy Court to rule that the Defendant/Creditor was required to dismiss a prepetition state court foreclosure action after the Debtor filed a Chapter 13 bankruptcy petition.

39.  It was manifest error for the Bankruptcy Court to rule that the Defendant/ Creditor was required to send notices, during the automatic stay, of all and every assessment and amount due by the debtor to the debtor, and that such notices would not have violated the automatic stay or the Court's Orders.

40.  It was manifest error for the Bankruptcy Court to consider an award of punitive damages after it had rendered a final judgment for actual damages.

41.  It was manifest error for the Bankruptcy Court to render a final judgment in the case but to consider at a later hearing an award of attorney fees because an award of additional actual damages in the form of attorney fees is a prohibited substantive amendment to a final judgment.

42.  The Bankruptcy Court erred in awarding actual damages to the Plaintiff/Debtor where the Plaintiff/Debtor failed to prove that he incurred any actual damages.

## LAW AND ARGUMENT

1.  **The Bankruptcy Court committed manifest error when it failed to apply and/or recognize the affirmative defense of failure to mitigate damages on the part of the Debtor and his legal counsel after Debtor admitted it paid Five Thousand Dollars to its counsel during the bankruptcy without prior court approval or even knowledge, and less than $5,000 was owed by the Debtor under the Chapter 13 plan; and**

2.  **When it was discovered *at trial* that the Debtor paid, and counsel accepted, $5,000.00**

in estate property while the bankruptcy was pending without notice or the approval of the Bankruptcy Court, it was manifest error for the Bankruptcy Court to allow Debtor's legal counsel to continue to serve as counsel for the Debtor. The Bankruptcy Court should have disqualified the Debtor's counsel immediately; and

3.    After the payment and conflict between the debtor and his counsel was discovered at trial, the Bankruptcy Court committed manifest error when it denied Wells Fargo's Motion To Strike The Request For Attorney Fees From The Debtor's Prayer For Attorney Fees on the basis of 'prematurity'; and

4.    It was manifest error for the Bankruptcy Court to determine there was no conflict of interest between the Debtor and his legal counsel when the Debtor paid, and his legal counsel accepted, $5,000.00 in estate property while the bankruptcy was pending and without notice to, or approval of, the Bankruptcy Court.

During the trial, the Plaintiff admitted to transferring $5,000.00 of the estate's property to his current legal counsel.[4] His legal counsel admitted to receiving those funds.[5] Because the record is completely void of any request by the debtor with the Bankruptcy Court to transfer this estate property, the statement by Michael L. Jones constituted an admission of an unauthorized transfer of estate funds by the debtor. Because the record is also completely void of any request by Debtor's legal counsel to be paid or to receive those funds, the statement by Debtor's counsel constitutes an admission of the unauthorized receipt of those funds.

The Debtor testified at trial that, "...I wanted to be discharged from this whole mess in January of '06. That's the primary problem here." (Transcript, p. 124, ll. 11-13.) But instead of paying the Chapter 13 Trustee "a little more than $4,000.00"[6] to be "discharged from this whole

---

[4] Trial Transcript, page 125, line 25: THE COURT: *Mr. Jones, how much have you paid Ms. DeLeo in connection—"* THE WITNESS: *"I've paid over $5,000.00 to date - -"*

[5] Trial Transcript, page 126, lines 17 - 22. THE COURT: *"Okay, Ms. DeLeo, have you filed an application for any of these fees? Are you holding the $5,000.00 in escrow?"* MS. DELEO: *"We are and the remainder fees, Your Honor, we have kept time records, but we haven't billed him."*

[6] Transcript, p. 69, ll 6-9.

mess" and thus mitigating his damages, the debtor chose to pay his attorney the $5,000 without leave of Court.

In an attempt to explain away these acts and behavior only discovered during trial, the Debtor argued that no estate property was transferred by the Debtor to legal counsel because the funds he transferred were allegedly a "gift" from his wife. The Debtor suggested to the Bankruptcy Court that the financial "gift" from the wife to the Debtor does not constitute property of the estate. To the extent this new representation is inconsistent with the trial testimony of the Debtor, the debtor should be estopped from making such a representation. In any case, the Debtor's argument is without any merit. The Debtor, months after his testimony at trial and only after Wells Fargo filed a Motion to Strike the Request for Attorney Fees, represented that "In fact, the legal retainer remitted by Mr. Jones to his counsel was a gift to Mr. Jones from his wife, Mrs. Jones, a non-debtor."[7]

Other Bankruptcy Courts, specifically interpreting Louisiana law, disagree with the argument advanced by the Debtor. The Honorable Gregory H. Schiff, Bankruptcy Judge for the Western District of Louisiana, in the reported decision of *In Re Robinson,* (W.D. La. 2006) 352 B.R. 436, recently found that, upon receiving a gift, the debtor acquires an interest in the property:

> *"The court's review of Louisiana law on the subject, however, compels the conclusion that upon delivery of such a conditional gift, the donee, here the Debtor, does acquire an interest in the property." Id.* at 438.

The United States Bankruptcy Court for the Western District of Louisiana further found that because the debtor had an interest in the gift, the gift was property of the bankruptcy estate.

> *"Under section 541, the fact that the debtor undeniably has an interest in the ring, whether or not there may be strings attached, makes the ring property of the bankruptcy estate." Id. at 438.*

---

[7] "Debtor's Opposition to Wells Fargo's Motion to Strike Attorneys' Fees," ¶ 5.

The argument advanced by the Debtor that the gift did not become property of the bankruptcy estate upon delivery to the Debtor was frivolous and is not supported under any basis in federal or Louisiana law.[8]

Further, the Debtor failed to offer any evidence that the payment to the debtor or his attorney was made by the Debtor's wife or that the payment was other than community property. Property in possession of a spouse during the existence of a regime of community of acquets and gains is presumed to be community.[9] The Debtor failed to offer any evidence to overcome the presumption that the money paid to the debtor's counsel was community property owned by the Debtor in community.

The unauthorized postpetition transfer of $5,000.00 by the debtor to his legal counsel without leave of court created a clear conflict of interest. Counsel's legal duties, as a matter of law to the Debtor, include a duty to recover preferences. Debtor's counsel had and has a conflict of interest between its personal stake in receiving the payment without prior Bankruptcy Court approval thereby willfully violating the automatic stay, and their duty, under the law, to seek sanctions against parties for violating the automatic stay.

Debtor's counsel also had and has a conflict of interest between its personal stake in retaining the unauthorized payment and their duty to recover such payments. A conflict of interest also exists due to debtor's counsel violating the Code's Bankruptcy Rule 2016 disclosure

---

[8] The Debtor's argument also conflicts with the interpretation of the United States Supreme Court which has stated that 11 U.S.C. § 541 (a) (1), which defines what constitutes property of the estate, is to be interpreted broadly, as Congress intended it to be. See *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 204-205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

[9] LA. CIV. C. Art. 2340. Presumption of community. "Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property."

requirements.

Whenever an unauthorized transfer of estate property from the debtor to his attorney has taken place, Bankruptcy Courts have easily found that a conflict of interest has been created between the debtor and his legal counsel, warranting not only a denial of compensation, but the immediate termination of the legal counsel's employment. In the bankruptcy case of *In Re Browning Timber Of Alaska, Inc.,* (Alaska, 10/08/99), the Bankruptcy Court found that the

> ... *unauthorized postpetition transfer to his firm created a potential preference claim as well as a potential claim for sanctions for violation of the automatic stay pursuant to 11 U.S.C. § 362(h). Artus* [debtor's legal counsel] *has a conflict of interest between his personal stake in retaining the payment and his duties to the debtor to recover preferences and to seek sanctions against parties violating the stay. Professionals with conflicts of interest are not entitled to compensation under the Bankruptcy Code.* ... [Debtor's legal counsel] *knowingly violated the automatic stay ... Severe sanctions are warranted. His application for fees and costs will be denied and the orders authorizing his employment will be vacated.*

Based upon the fact that this Honorable Court, the Chapter 13 Trustee, and creditors had to first learn about these unauthorized transfers at trial, *"severe sanctions are warranted."* [10] The debtor's legal counsel should have been immediately disqualified and any request for a special award or application for fees and costs denied. Instead, the Bankruptcy Court allowed the representation to continue and even denied Defendant's Motion To Strike The Plaintiff's Request For Attorney Fees as 'premature'.

The United States Supreme Court has held that professionals with a conflict of interest are not entitled to any compensation under the Bankruptcy Code. The Bankruptcy Code includes the provisions for special sanctions. If there is a conflict of interest, even a special award is

_____

[10] There in not only a conflict of interest due to the preferential payment and clear violation of the automatic stay by debtor's legal counsel, there are serious disclosure issues which have also been clearly violated. These disclosure issues alone demand the vacating of the judgment under the doctrine of unclean hands as well as the disqualification of counsel and a remand for a new trial.

prohibited as is continued representation.

In *Woods v. City Natl. Bank & Trust Co.,* 312 U.S. 262, 268 (1941), the United States

Supreme Court set out that the only aspect that need be proven to deny compensation to a

debtor's attorney is a finding that an actual conflict of interest existed. The degree or type of

conflict need not be proven:

> [T]he incidence of a particular conflict of interest can seldom be measured with any degree
> of certainty. The bankruptcy court need not speculate as to whether the result of the
> conflict was to delay action where speed was essential, to close the record of past
> transactions where publicity and investigation were needed, to compromise claims by
> inattention where vigilant assertion was necessary, or otherwise to dilute the undivided
> loyalty owed to those whom the claimant purported to represent. Where an actual conflict
> of interest exists, no more need be shown in this type of case to support a denial of
> compensation.

*Id.* at 268.

See also *Matter of Prudhomme,* 43 F.3d 1000 (5th Cir. 1995); *In re Florence Tanners, Inc.,* 213

B.R. 129, 133 (Bankr.E.D.Mich. 1997), and numerous case cited thereby; *First Interstate Bank of*

*Nevada, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.),* 175 B.R. 52, 56 (B.A.P. 9th Cir. 1994);

*Hansen, Jones & Leta, P.C. v. Segal,* 220 B.R. 434, 469 (D.Utah 1998); *Quait v. Berger (In re*

*Vann),* 136 B.R. 863, 870-71 (D.Colo. 1992), *aff'd,* 986 F.2d 1431 (10th Cir. 1993).

Because a conflict of interest exists as a result of (1) the violation of the stay in receiving

the estate property without court approval, and (2) the continuing disclosure violations and the

preferential nature of the transfer, debtor's counsel should have been disqualified and is not

entitled to *any* legal fee compensation under the Bankruptcy Code, including any "special

sanction" award.

The continuing disclosure violations also warrant disqualification. 11 U.S.C.§ 329, as

implemented through Fed. R. Bankr. P. 2016(b), requires the debtor's legal counsel to disclose the

Page -15-

*source* of any payments received within 15 days of their receipt.[11]

Upon information and belief, Debtor's legal counsel has failed to file a supplemental disclosure statement revealing the *source* of payment within 15 days after receiving payments not previously disclosed, all in violation of 11 U.S.C.§ 329 (a). Upon information and belief, Debtor's legal counsel continues to fail to file the required supplement disclosure statement revealing the *source* of payment after receiving payments not previously disclosed, all in violation of 11 U.S.C.§ 329 (a).[12]

Disclosure violations involving the Debtor also demonstrate the Debtor's unclean hands. Bankruptcy Rule 1007(h) requires a Chapter 13 debtor to file a supplemental statement with the Court if, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in additional property. The Chapter 13 debtor shall file the supplemental schedule within 10 days after the information comes to the debtor's knowledge or within such further time the court may allow. Upon information and belief the Debtor, Michael L. Jones, has failed to file a supplemental disclosure statement revealing the financial gift allegedly received from his wife within 10 days after receiving the same, all in violation of Rule 1107(h). Upon information and belief the Debtor, Michael L. Jones, continues to fail to file a supplement disclosure statement revealing the alleged financial gift received from his wife, in continuing violation of Rule 1007(h).

The United States Supreme Court has recognized that conflict-of-interest rules applying

---

[11] See 11 U.S.C. §329 (a): ". . . *and the source of such compensation*"

[12] See also the United States Fifth Circuit decision of *Matter of Prudhomme,* 43 F.3d 1000 (5th Cir. 1995), at 1004, citing with approval *In re Crimson Investments, N.V.,* 109 B.R. 397 (Bankr. D. Ariz 1989) at 402 "*(ordering surrender of unearned retainer because of counsel's failure to disclose source of compensation)."* (Bold and underline added).

to attorneys must be forcefully and strictly enforced. The denial of compensation as a tool for strict enforcement of conflict-of-interest rules was upheld in *Woods v. City Nat'l, supra*. The United States Court of Appeal, Fifth Circuit, has likewise held that conflict-of-interest and disclosure rules are to be strictly enforced and has denied all compensation to the debtor's counsel where there have been violations. See *Matter of Prudhomme,* 43 F.3d 1000, 1004-5 (5th Cir. 1995).

Even when the professional's actions did not prejudice the estate (and in this matter, it clearly did), professionals with conflicts of interest are not entitled to any compensation under the Bankruptcy Code and special sanctions are part and parcel of the United States Bankruptcy Code. The United States Supreme Court has made it perfectly clear that evidence pointing to actual prejudice is not required or necessary to deny compensation where a conflict of interest exists. The United States Fifth Circuit, echoing the United States Supreme Court, recently stated *In re West Delta Oil Co., Inc.,* 432 F.3d 347 (5th Cir. 2005):

"It is irrelevant that no evidence exists pointing to actual prejudice to the estate. *As the Supreme Court has made perfectly clear, such evidence is not required because of difficulty of proof and because the problem is not just 'actual evil results' but the 'tendency to evil in other cases.' Id.* at fn.32.

Simply put, professionals with conflicts of interest must be disqualified and are not entitled to *any* compensation under the Bankruptcy Code, including any provision for sanctions under the Bankruptcy Code.[13]

---

[13] Attorney fees may only be paid from bankruptcy estate property to a debtor's attorney in a Chapter 13 case upon judicial approval of a formal fee application, with proper notice to all parties in interest. 11 U.S.C. § 330(a)(4)(B) and 331 and F.R.Bankr.P. 2016(a). That requirement is "absolute," notwithstanding any agreement to the contrary which might have been negotiated between the Debtor and Debtor's counsel. *In re Mayeaux,* (E.D. Tex., 2001) 269 B.R. 614. Federal Rule of Bankruptcy Court Procedure 2016 (b) imposes a continuing duty on debtor's counsel to disclose all compensation paid or agreed to be paid and to file a supplement statement *"within 15 days after any payment or agreement not previously disclosed."* A failure of counsel

Page -17-

**5.      The Bankruptcy Court committed reversible error in directing Wells Fargo not to argue a reasonable interpretation of the Court's previous Order.**

During the trial, the Bankruptcy Court improperly threatened the Defendant/Creditor and its legal counsel with sanctions in the future if the Defendant/Creditor and/or legal counsel argued a particular interpretation of the Bankruptcy Court's previous Orders. The order that the Bankruptcy Court entered by the Bankruptcy Court approving the refinancing of the mortgage debt authorized the payment of the *mortgage* that was owed, not what was left on the incomplete proof of claim. When Wells Fargo attempted to argue that the payoff letter reflected what was owed on the mortgage, the Bankruptcy Court improperly threatened the Defendant/Creditor with future sanctions in future cases, which represents a denial of due process in the present case.

The exact exchange between the Bankruptcy Court and the Defendant/Creditor was as follows:

Page 343
24      MR. RUMAGE:         Well, Your Honor, once we received
25      notice from the Debtor that he's going to pay out the account
Page 344
1       at what point after that do we need to file an amended
2       claim?
3       THE COURT:          Immediately if you think that there's
4       another charge.
5       MR. RUMAGE:         But the - -
6       THE COURT:          Immediately.
7       MR. RUMAGE:         And if the order that was entered by the
8       Court authorizing the Debtor to refinance his house provided
9       that Well's Fargo's proof of claim would be paid, then we
10      certainly would have tried or certainly it would have been
11      recommended that they file a Motion to Amend the Proof of
12      Claim. But the order that was entered by the Court authorized

to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid." *In re Downs,* 103 F.3d 472, 477 (6th Cir. 1996), *quoting In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 575 (Bankr. N.D.Tex. 1986).

13    the payment of the mortgage that was owed.

14    THE COURT:      Based on the representation of Wells

15    Fargo on a sworn statement that this was what was due. It

16    doesn't mean that the Court accepts additional hidden charges

17    that have not been disclosed to this Court or been approved,

18    and just gives you a blanket right to take them. I mean,

19    Mr. Rumage, you can't possibly think that that's going to be

20    the position of the Court. **If so, you'll never get another**

21    **order out of me on a refinancing. I assure you, you in**

22    **particular will not get an order out of me if that's the way**

23    **your going to read it. And Wells Fargo will never see a**

24    **repayment on a loan. They will have to come in and prove up**

25    **their debt before I authorize a dime to them.** That's not ....

    (Bold added).

The Bankruptcy's Court's threat to never issue an order to legal counsel again if he

interpreted and advanced a particular legal argument on behalf of his client which the Bankruptcy

Court disagreed with was improper. The further threat by the Bankruptcy Court that *"And Wells*

*Fargo will never see a prepayment on a loan"* was equally improper.

The threat of future sanctions without a hearing in future cases if a lawyer advances a

reasonable argument in the present case is an absolute and unequivocal denial of the due process

provided for in the United States Constitution. *Armstrong v. Office of the President*, 1 F.3d 1274

(D.C. 1993).[14] The Judgment of the Bankruptcy Court must be vacated and the matter remanded

for further proceedings.

**6.**    **The Bankruptcy Court erred in determining that Wells Fargo violated the stay by providing a payoff letter to the debtor that included amounts due under the mortgage, and not just the proof of claim, where the order that authorized the debtor to refinance the security directed that Wells Fargo be paid the amounts due under its mortgage.**

---

[14] "Being placed under the threat of future sanction is a present sanction.. . . [A] party under a specific threat of future sanctions is in a different, more serious, often worse situation than one not under such a threat, even if the future sanctions are never imposed." *Sizzler Family Steak Houses v. Western Sizzlin Steak House,Inc.*, 793 F.2d 1529, 1533 n. 2 (11th Cir. 1986). See also *United States v. O'Rourke*, 943 F.2d 180, 186 (2d Cir. 1991).

The plaintiff applied to the Bankruptcy Court to payout the mortgage to Wells Fargo, N.A. in an amount that was sufficient to pay the mortgage balance to Wells Fargo, N.A., specifically "not more than $235,702.00."[15] The Bankruptcy Court directed that the plaintiff refinance the security "to pay off the existing mortgage with Wells Fargo Home Mortgage."[16] Wells Fargo, N.A. provided a payoff statement to the plaintiff consistent with the amount that the debtor proposed to the Bankruptcy Court. (Trial Exhibit 4.) On January 03, 2006, Debtor refinanced his home and paid out the debt secured by the mortgage owed to Wells Fargo by paying $231,463.97.

It is incredulous that the Debtor would testify that he was shocked to receive a payout letter requesting $231,463.97 for the payout when he represented in pleadings that he needed "not more than $235, 702" to payout the mortgage. (Transcript, p. 69, l. 20- p. 70, l. 6.) Wells Fargo, N.A. did not violate any orders of the Court. The Court should not have held that Wells Fargo, N.A., violated the stay by providing a payoff statement to the debtor that included postpetition amounts due under the terms of the mortgage because the motion of the debtor and the order of Court specifically provide that Wells Fargo, N.A. was to be paid the amounts due under the mortgage, and not just the amounts due under the proof of claim.

7.    **The Bankruptcy Court erred in determining that Wells Fargo violated orders of court by not returning promptly to the debtor property insurance proceeds that the debtor obtained during the Chapter 13 Bankruptcy without notice to or approval of the Trial Court, and where the Bankruptcy Court never previously ordered Wells Fargo to surrender the insurance proceeds and never directed to whom the insurance proceeds**

---

[15] "Debtor will borrow up to $275,00 from Option One Mortgage Corporation *to pay off his existing mortgage* with Wells Fargo Home Mortgage in the amount of not more than $235,702." (Emphasis added.) "Request for Approval of Post Petition Consumer Debt," Doc. 92, ¶ 3, U.S.B.C. No. 03-16518.

[16] Document 98, "In re: Michael Jones," U.S.B.C., E.D.La. No. 03-16518-A.

should be surrendered.

The plaintiff voluntarily surrendered the property insurance proceeds to Wells Fargo, N.A.
shortly after Hurricane Katrina. As has been discussed at length infra, the voluntary payment
doctrine applies to the payments made by the debtor to Wells Fargo, N.A. The debtor failed to
apply to the Bankruptcy Court for leave to use the insurance proceeds until long after the proceeds
were returned by Wells Fargo, N.A. to the debtor. Since the property insurance proceeds were
returned by Wells Fargo, N.A. to the debtor prior to the debtor obtaining any court order
authorizing the use of the insurance proceeds, it was reversible error for the Bankruptcy Court to
rule that Wells Fargo, N.A. violated any order of the Bankruptcy Court.

8.     The Bankruptcy Court committed manifest error when it disregarded the anti-
       modification rule of Section 1322(b)(2) and the contract provision of Section 1322
       rather than any provision of Section 506 to control the assessment of fees and costs
       against Wells Fargo as the overly secured first lien mortgage.

9.     The Bankruptcy Court committed manifest error when it applied Section 506 because
       there is no private right of action under Section 506.

10.    The Bankruptcy Court committed manifest error in applying Section 506 after
       confirmation of the plan. Based on *Nobleman,* the only controlling statute is §
       1322(b)(2) because the note and mortgage executed by Michael Jones, the Debtor,
       remained in full force and effect after confirmation. The relationship between
       Michael Jones and Wells Fargo is governed solely by the terms of the note and
       mortgage and the Bankruptcy Court should not attempt to apply § 506 and should
       not rule on the validity or amount of post-confirmation costs added to the debt under
       the terms of the note and mortgage.

11.    The Bankruptcy Court erred in ruling that the confirmation of a debtor's Chapter 13
       plan could modify the rights of a creditor that was overly secured by a first mortgage
       on the debtor's residence in direct contravention of the recent rulings of the United
       States Supreme Court.

12.    The Bankruptcy Court erred when it ruled that the balance on an overly secured
       mortgage on the debtor's residence due to the secured creditor, as allowed in the
       mortgage and by state law, is discharged when the Chapter 13 plan is completed
       and/or the amount due under the proof of claim is paid.

**13.    The Bankruptcy Court erred when it ruled that the collection of interest, fees, commissions, and costs due to Wells Fargo under the terms of the mortgage violated the stay and the confirmation order of the Bankruptcy Court.**

The power to modify secured claims in Chapter 13 cases is limited by § 1322(b)(2) to

claims "other than a claim secured only by a security interest in real property that is the debtor's

principal residence." 11 U.S.C. § 1322(b)(2). This exception was intended to prohibit modification

of the terms of home mortgages.[17] The United States Fifth Circuit, and many other courts[18], have

long held that liens that are valid under state law[19] are unaffected by confirmation of a Chapter 13

plan, even where the secured creditor failed to object to confirmation of the plan.

In *Matter of Howard*, 972 F.2d 639, 27 Collier Bankr. Cas. 2d (MB) 1016, Bankr. L. Rep.

(CCH) P 74838 (5th Cir. 1992), the United States Fifth Circuit ruled that the confirmed Chapter 13

plan could not effect the rights of a mortgage holder where the debtor did not take some step to

---

[17] See H.R. Rep. No. 95-595, at 429 (1977); S. Rep. No. 95-989, at 141 (1978); 124 Cong. Rec. H11, 106-07 (daily ed. Sept. 28, 1978) (remarks by Rep. Edwards), S17,423 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).

[18] *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 33 Collier Bankr. Cas. 2d (MB) 1159, Bankr. L. Rep. (CCH) P 76549 (4th Cir. 1995) (debtor must take some affirmative step to extinguish or to modify lien, even when creditor fails to file a proof of claim or to object to plan prior to confirmation); *In re Thomas*, 883 F.2d 991, 19 Bankr. Ct. Dec. (CRR) 1358, Bankr. L. Rep. (CCH) P 73128 (11th Cir. 1989) (secured claim holder is free to ride through bankruptcy claim process and retain lien without filing proof of claim); *In re Bisch*, 159 B.R. 546, 29 Collier Bankr. Cas. 2d (MB) 1611, 72 A.F.T.R.2d 93-6534 (B.A.P. 9th Cir. 1993) (statutory lien remains valid through bankruptcy unless invalidated by some provision of the Code); *In re Levine*, 45 B.R. 333 (N.D. Ill. 1984); *In re Scheierl*, 176 B.R. 498 (Bankr.D. Minn. 1995); *In re Wolf*, 162 B.R. 98, 30 Collier Bankr. Cas. 2d (MB) 730 (Bankr. D. N.J. 1993); *In re Van Hierden*, 87 B.R. 563, 19 Collier Bankr. Cas. 2d (MB) 143 (Bankr. E.D. Wis. 1988); *In re Harris*, 64 B.R. 717, Bankr. L. Rep. (CCH) P 71446 (Bankr. D. Conn. 1986); *Matter of Stein*, 63 B.R. 140, 14 Bankr. Ct. Dec. (CRR) 733 (Bankr. D. Neb. 1985); *In re Rhoades*, 34 B.R. 168 (Bankr. D. Vt. 1983).

[19] State law determines whether a debt is owed and the rights of the parties; the bankruptcy process only determines how, when, and what claims will be paid. *In re Ford*, 967 F.2d 1047, 1051 (5th Cir. 1992).

affirmatively challenge the validity of the lien. The facts of the case were undisputed. Sun Finance

held a mortgage on two pieces of real estate of the debtors. Sun was listed as a secured creditor in

the Howards' bankruptcy and the plan proposed to satisfy the mortgage by the payment of $500.00.

Sun Finance received notice of the filing of the petition, the creditors' meeting, and the plan

confirmation hearing. Sun filed a proof of claim before the confirmation hearing. The Howards did

not file an objection to Sun's proof of claim. Sun did not participate in the confirmation

proceedings beyond filing its proof of claim. No objection was made to the plan's confirmation and

the bankruptcy court confirmed the Chapter 13 plan. Sun filed a motion to lift the stay after

confirmation. The United States Bankruptcy Court for the Eastern District of Louisiana refused to

lift the stay, ruling that the confirmation of the plan was res judicata to the issues raised in Sun's

motion because Sun failed to object to the plan prior to confirmation. The Fifth Circuit applied its

ruling stated in *Simmons*, 765 F.2d 547 (5th Cir. 1985): a secured creditor "with a loan secured by a

lien on the assets of a debtor who becomes bankrupt before the loan is repaid may ignore the

bankruptcy proceeding and look to the lien for satisfaction of the debt." *Simmons*, 765 F.2d at 556,

quoting *In re Tarnow*, 749 F.2d 464, 465 (7th Cir. 1984). The Fifth Circuit reversed the bankruptcy

court. "(W)e find that the confirmation of the Chapter 13 plan does not bar Sun from seeking

enforcement of its lien. Sun's timely filed proof of claim was never objected to and Sun did not

participate in the confirmation of the Howards' plan. Accordingly, we will reverse the judgment."

See also *Matter of Taylor*, 132 F.3d 256 (5th Cir. 1998).

  The United States Fifth Circuit extended this principal espoused in *Howard*, supra, to

§1322(b)(2) and the bifurcation of debts secured by the debtor's principal residence in *Nobleman v.

American Savings Bank*, 968 F.2d 483 (5th Cir. 1992). The United States Supreme Court accepted

*Nobleman* for review to resolve a conflict among the circuits and affirmed the Fifth Circuit.

*Nobleman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed. 2d 228 (1993). The

Supreme Court distinguished the *claim* of a secured creditor and the *rights* of the secured creditor.

The Supreme Court noted that the Bankruptcy Code does not define the term "rights." Justice

Thomas, writing for the majority, ruled that state law and the mortgage contract between the parties

established the *rights* of the secured creditor:

> The bank's 'rights,' therefore, are reflected in the relevant mortgage
> instruments....They include the right of repayment of the principal and monthly
> installments over a fixed term and specified adjustable rates of interest, the right to
> retain the lien until the debt is paid off, the right to accelerate the loan upon default
> and to proceed against petitioners' residence by foreclosure and public sale, and the
> right to bring an action to recover any deficiency remaining after
> foreclosure....These are the rights that were' bargained for by the mortgagor and the
> mortgagee.'

The Supreme Court affirmed the Fifth Circuit, and ruled that Section 1322(b)(2) prohibits the

modification of the rights of the creditor that is secured only by a mortgage on the debtor's

residence. Accordingly, under *Nobleman* the creditor secured by the mortgage on the debtor's

principal residence is entitled to recover interest, inspection costs, expenses, and such where the

state law and mortgage agreement allow such a recovery, since to prohibit such recovery would be

a violation of the state law and mortgage agreement.

The Bankruptcy Code applies this principle to all over-secured claims, not just home

mortgages. 11 U.S.C. 506(b) requires that the holder of a secured claim be paid interest and "any

reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

For example, an over-secured claim holder is entitled to late charges as allowed by the contract so

long as they are in an amount that is compensatory and not punitive.[20] An over-secured claim holder is entitled to attorney fees if the contract allows for the recovery of attorney fees.[21]

Consistent with the protections to be afforded creditors secured by a mortgage on the debtor's residence, Congress amended 11 U.S.C. 1322(e).[22] The amendment applies to all mortgage contracts entered into after October 22, 1994. The amount necessary to cure defaults "shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."

Also consistent with the clear intent to protect the rights of mortgage holders, Section 1328(a)(1) excepts from discharge at completion of all payments any debt "provided for under § 1322(b)(5)." Section 1322(b)(5) applies to secured claims on which the last payment is due after the date on which the final payment under the plan is due. The debt owed by Debtor to Wells Fargo is such a debt.

When the debtor's plan proposes to cure a default and to maintain the contract payments on a long-term debt, the balance due to the secured creditor as allowed by the mortgage and state law is not discharged when the plan is completed.[23]

---

[20] *In re Richardson*, 63 B.R. 112 (Bankr. W.D. Va. 1986); *In re Lejeune*, 73 B.R. 98 (Bankr. N.D. Ga. 1987); *In re Harmon*, 72 B.R. 458 (Bankr. E.D. Pa. 1987); *In re Ward*, 73 B.R. 119 (Bankr. N.D.Ga. 1987); *In re White*, 88 B.R. 498 (Bankr. D. Mass. 1988).

[21] *Longwell v. Banco Mortgage Co.*, 38 B.R. 709 (N.D. Ohio 1984); *In re Josephs*, 108 B.R. 654 (Bankr. N.D. Ill. 1989).

[22] 11 U.S.C. § 1322(e), as amended by Bankruptcy Reform Act of 1994. Pub. L. No. 103-394, § 305, 108 Stat. 4106 (1994).

[23] *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1337 n.8 (11th Cir. 2000), cert. Denied, 531 U.S. 1073, 121 S.Ct. 765, 148 L. Ed. 2d 666, rehearing denied, 531 U.S. 1185, 121 S. Ct. 1173, 148 L.Ed. 2d 1030 (2001) (Assessment and collection of attorney's fees during and after discharge in Chapter 13 case did not violate discharge provisions of §1328 or §524. The

14. **The Bankruptcy Court erred in requiring that any bankruptcy-related attorney's fees and costs assessed by Wells Fargo after the bankruptcy petition is filed are not allowed without application to and approval by the Bankruptcy Court; and**

15. **The Bankruptcy Court erred in ruling that Michael Jones (debtor/plaintiff) was not obligated to pay Wells Fargo Bank, N.A., interest, costs, inspection fees, sheriff's commissions, attorney fees, and assessments that the mortgage between the parties obligated the debtor/plaintiff to pay; and**

16. **The Bankruptcy Court erred in determining that Wells Fargo's rights to recover collection costs, including postpetition costs such as inspection fees, are *claims* against the estate instead of recognizing that these amounts relate to and arise out of Wells Fargo's *right* to payment on the mortgage and note.**

Jurisprudence holds that the assessment of post-petition inspection fees does not amount

to an "act" to create, perfect, or enforce any lien against property of the estate within the meaning

of subsection (a)(4) of 11 U.S.C. § 362. It is well-settled that the assessment of post-petition

inspection fees does not amount to an act "to create, perfect or enforce any lien" against property

of the estate within the meaning of subsection (a)(4) of 11 U.S.C. § 362. See *Mann v. Chase*

*Manhattan Mortgage Corp.,* (R.I. 2002), *affirmed,* 316 F.3d 1 (1ˢᵗ Cir. 2003). The Bankruptcy

Court's ruling that post-petition inspections are violations of the automatic stay fails as a matter

of law.

Courts have held that viewing such charges as "creating" a lien against property of the

estate would be "inconsistent with the purpose of subsection (a)(4)." *Mann v. Chase, supra.*

Following the holdings of *Matter of Kennedy Mort. Co.,* 23 B.R. 466 (United States Bankruptcy

Court, D. New Jersey, 1982), a case which has been cited with approval by the United States Court

---

attorney's fees were allowed by contract, and the mortgage was excluded from discharge
pursuant to §1322(b)(5).); *Homebanc v. Chappell,* 984 F.2d 775 (7ᵗʰ Cir. 1993) (Section 1328
(a)(1) excepts from discharge long-term debts provided for under 1322(b)(5).); *In re Ford,* 221
B.R. 749, 753 (Bankr. W.D. Tenn. 1998)("1322(b)(5) debts are made nondischargeable by §
1328(a)(1)."); *In re Brown,* 121 B.R. 768 (Bankr. S.D. Ohio 1990) (The unpaid balance of a
long-term debt survives discharge in a Chapter 13 case.).

of Appeal, Fifth Circuit, the *Mann* court stated " . . . increases in the amount due under a mortgage loan that are attributable to expenses incurred as a result of the debtor's default do not "create" a lien any more than the accrual of additional interest on the unpaid obligation would. . . . Like interest that automatically accrues on a pre-petition debt while a bankruptcy case is pending, legal and inspection fees attributable to the debtor's default on a preexisting mortgage loan arise out of and are incidental to that loan." Under all of these precedents, the Bankruptcy Court rulings fail legally.

The Plaintiff's primary cause of action fails legally because Wells Fargo's rights to sheriff's costs and inspection fees are not independent claims against the estate; these amounts relate to *and arise out of* Wells Fargo's claim for payment on the mortgage note. *Matter of Kennedy Mort. Co.,* 23 B.R. 466 (United States Bankruptcy Court, D. New Jersey, 1982).

Wells Fargo's right to payment of sheriff's costs and inspection fees are part of Wells Fargo's claim for payment pursuant to the mortgage and mortgage note. Wells Fargo's right to payment accrued when the note was defaulted upon, and this occurred before the case was commenced in Bankruptcy Court. Just as the right to post-petition interest under the note is not a separate right to payment but is merely the automatic accrual of what was due under the note, the sheriff costs and nominal inspection fees are not separate claims for payment but arise from and are due under the terms of the mortgage and mortgage note. As the Bankruptcy Court ruled in *Kennedy, supra, "The Bank's claim against Kennedy on the notes clearly arose pre-petition, and the interest and fees which were provided for in the notes are a part of this claim."* Because these rights all arise from one claim, to accept payment of these fees from a mortgage payoff is no more of a violation of the automatic stay as accepting the principal balance from the payoff.

As the principal balance arises from and is due under the terms of the mortgage and note, so are the sheriff cost and inspection fees. Plaintiff's attempts to separate these claims and allege that the acceptance of the sheriff's and  inspection fees is a violation of the automatic stay when the acceptance of the principal and post-petition interest is not a violation of the automatic stay, fails as a matter of law.[24] Simply put, the principal balance, the sheriff fees, the nominal inspection fees and the post-petition interest *all* relate to and arise out of Wells Fargo's claim for payment on the mortgage note. *Matter of Kennedy Mortg. Co., supra.*

**17.**     **The Bankruptcy Court erred in refusing to apply the voluntary repayment doctrine as a bar to Plaintiff's claims; and**

**18.**     **The Bankruptcy Court committed manifest error in not applying the voluntary payment doctrine based on the error of fact that there was no case pending between Wells Fargo and the Debtor.**

On page 29 of the Memorandum Opinion issued on April 13, 2007, the Bankruptcy Court incorrectly distinguished the holdings of the Louisiana Supreme Court in *New Orleans & N.E.R.*

*Co. v. Louisiana Const. & Imp. Co.,* 33 So. 51 (La.1902) from the instant case on an error of fact.

The Bankruptcy Court stated:

> " *In its post trial brief, Wells Fargo argues that it is irrelevant whether or not these charges are actually due because Debtor has forfeited the right to reclaim the amounts owed. . . .*
> *This rule is easily distinguishable from the case at hand. First, there was no pending action at the time Debtor made his payments to Wells Fargo. Debtor's bankruptcy is not a "pending action" for the purposes of this rule as it did not adjudicate the financial accuracy of Wells Fargo's loan, nor was this issue ever before the Court. . . ."*

---

[24] The *Kennedy* Court not only found that the Bank's right to fees and costs to be a part of the Bank's original claim and not a separate claim, it found that the fees and costs were subject to setoff just as the principal balance was since the fees and principal balance all originated or arose under the same source, the note. The Court allowed the setoff up to the value of the original collateral (the $299,369.96 in the checking account).

At the time the voluntary payments were made, there *was an action pending* in state court

and the Bankruptcy Court's erroneous statement that *there was no action pending* constitutes an

error of fact which directly affected the Bankruptcy Court's ruling. The Bankruptcy Court's own

factual findings 27 pages earlier contrarily found that:

> *"At the time of his filing, Debtor was obligated to Wells Fargo on
> a debt secured by his residence. Prior to the institution of this case, Wells
> Fargo had filed a foreclosure action against Debtor in State Court. After
> this case was filed, Wells Fargo stayed the prosecution of the foreclosure
> action but did not dismiss its suit."*
>
> > (See Page 2 of Memorandum Opinion, Section 1, "Factual Findings", ¶ 1,
> > bold added).[25]

The Bankruptcy Court's comments in footnote 33 on page 13 of its Memorandum

Opinion also acknowledged that the state suit between Wells Fargo and the Debtor, contrary to

its later erroneous assertions on page 29, *remained pending*:

> "33.    *Had Wells Fargo dismissed its foreclosure action upon the
> the institution of this case, this problem would have never occurred. Wells
> Fargo did not dismiss the foreclosure because it wanted to save itself the
> time and additional expense should a default occur postpetition, resulting
> in a return to foreclosure. The stay of a pending foreclosure action during a
> bankruptcy's administration might result in the imposition of additional fees
> or expenses against even a fully performing debtor, depending on the position
> taken by the local sheriff. In this case, the Sheriff did not impose any additional
> fees or commissions. The Court leaves for another day how it will address the
> consequences of a lender's postpetition maintenance of a foreclosure action
> that results in additional costs to a debtor or the estate."*
> (Footnote 33, page 13, "Memorandum Opinion" dated April 13, 2007, bold
> added.)

Because an action remained pending between the debtor and Wells Fargo, the Bankruptcy

---

[25] The suit between Wells Fargo and the Debtor that remained pending at all times the
debtor was making the voluntary payments in question was *Wells Fargo Home Mortgage, Inc. v.
Michael L. Jones and Rachael Hoggatt Jones a/k/a/ Rachel Doyle Hoggatt Jones,* Case No. 2003-
12210, filed in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana.
When the refinancing amounts were paid, the suit was dismissed on February 7, 2006.

Court based its judgment of April 13, 2007 directly upon a manifest error of fact that *"there was no pending action at the time Debtor made his payments to Wells Fargo."* [26]

**19.    The Bankruptcy Court committed manifest error in not applying the voluntary payment doctrine based on the error of law that a case needed to be pending between Wells Fargo and the Debtor.**

Even if an action was not pending (and one clearly was), the Bankruptcy Court also rendered its opinion upon a manifest error of law because there is no such federal requirement that an action be pending when the voluntary payments were made by the Debtor.

In the published bankruptcy case of *In re National Steel Corp.*, 316 B.R. 267 (N.D. Ill, 10/26/2004), the United States Bankruptcy Court for the Northern District of Illinois correctly applied the Federal Voluntary Payment Doctrine even though no case outside the bankruptcy case was pending. The United States Court of Appeal, Fifth Circuit, also upheld the application of the Federal Voluntary Payment Doctrine when no case was pending when voluntary payments were made in *Chris Albritton Constr. v. Pitney Bowes Inc.*, 304 F.3d 527 (5th Cir. 2002).

By suggesting that a case, outside of the bankruptcy case, needed to be pending when the voluntary payments were made by Michael Jones, Debtor, the Bankruptcy Court committed (and wrongfully based its decision upon) a manifest error of law. Reconsideration of the Bankruptcy

---

[26] The jurisprudence is well-settled that when a Court has made an error of fact, reconsideration should have been granted. Where "something material was overlooked or disregarded . . . [which point[s] to substantial error of fact or law" reconsideration is warranted. *Miller v. Norfolk S. Rwy. Co.*, 208 F. Supp. 2nd 851 (N.D. Ohio 2002) (citations omitted); "so long as the party seeking a reconsideration can establish 'the need to correct a clear error of . . . fact,' that party is entitled to relief. *Macks' Seafood Café v. Quinteros*, 176 F.3rd 669 at 677 (3rd Cir. 1999)(citations omitted)(emphasis added)." When the debtor Michael Jones paid Wells Fargo the payoff amounts at issue on January 4, 2006, the 22nd Judicial District Court case *was pending*. Said case was dismissed by the state court without prejudice at plaintiff's costs on February 7, 2006. Even though the Bankruptcy Court was apprized of the error of fact, it refused to reconsider its judgment.

Court's judgment rejecting the Federal Voluntary Payment Doctrine was required under the law.[27]

After the Bankruptcy Court based its decision to reject the Voluntary Payment Doctrine on the error of fact that a case was not pending and then upon the error of law that a case needed to be pending in the first place, the Bankruptcy Court wrongfully denied applying the Federal Voluntary Payment Doctrine on the incorrect error of fact that the Debtor *"did not have full knowledge of the facts involving all the charges, interest and expenses assessed."*

At trial, two points were clearly established. The Debtor was sufficiently knowledgeable about Wells Fargo disputed interest charges that he contacted his attorney in mid-may of 2005. The clear testimony of Michael L. Jones, Debtor, commencing on page 66, line 8, was as follows:

| | |
|---|---|
| 8. | *Now, going to your next question. I had asked Wells Fargo* |
| 9. | *in May of 2005 to give me a pay off request, because their* |
| 10. | *correction letter triggered me to want to get out of this* |
| 11. | *relationship. And I'm proactive in life and wanted to know* |
| 12. | *exactly what Wells Fargo was thinking. I contacted them in May* |
| 13. | *of 2005 on two separate issues, one about my credit report, **and*** |
| 14. | ***one about the pay off of the note. I received such a letter in*** |
| 15. | ***mid-May of 2005.*** |
| 16. | Q. *And is that the letter that is behind Exhibit 5 in our* |
| 17. | *Books?* |
| 18. | A. *Yes, it is.* |
| 19. | Q. *And does that pay off letter reflect an outstanding* |
| 20. | *sheriff's commission?* |
| 21. | A. *It does not. There are no sheriff's commissions* |
| 22. | *indicated, special costs, handling fees, recording fees, any* |

---

[27] When a Court commits an error of law, reconsideration is required. See *Bridas S.A.P.I.C. v. Govt. of Turkmenistan,* 345 F.3d 347 at 359 and 360 (5th Cir. 2003). *"Because the district court failed to take into account all of the relationship between the Government and Turkmenneft, it committed an error of law and must reconsider the issue on remand.*

23.    *other fees other than simply interest and principal.*

24.         MR. RUMAGE: *I'm sorry, what document are we*
25.    *referring to?*

1.    THE COURT: *Number 5, Mr. Rumage.*

2.    MR. RUMAGE: *Thank you, Your Honor.*

3.    BY MS. DeLEO:
4.    Q.    *Is there any indication in that letter, Mr. Jones, that a*
5.    *property inpection fee is owing on your account?*

6.    A.    *No.  **And this letter triggered me to contact your law firm***
7.    ***to ask why the interest rates were again misstated.***
      (Bold added)

The debtor is clearly testifying that he had sufficient knowledge regarding disputes on the

interest rates as early as mid-May of 2005. In fact, the debtor had such knowledge and agitation

that *"this letter triggered me to contact your law firm"* in mid-May, 2005, *"to ask why the*

*interest rates were again misstated."* For the Bankruptcy Court to find that the debtor didn't

have knowledge of disputed interest rates sufficient to resist any claim by Wells Fargo constitutes

a manifest error of fact. The debtor sought legal advice as early as mid-May 2005 and it was

simply wrong for the Bankruptcy Court to turn a blind eye to the testimony offered by the

Debtor/Plaintiff himself.

The second issue clearly proven at trial was that the Debtor *"question*[ed] *the entire*

*process that Wells Fargo was having in the pay off loan"* long before the refinancing occurred.

*"The entire process"* is a judicial admission by the Debtor that does not limit his concerns

to only disputed interest rates. The judicial admission by the Debtor is what it is. The Debtor

question the *entire process* as early as mid-2005 and still voluntarily paid the sums in 2006. The

Debtor's testimony on page 67 of the trial transcript is crystal clear:

6.     A.     *No. And this letter triggered me to contact your law firm*
7.     *to ask why the interest rates were again misstated.*

8.     THE COURT: *Okay, this is the line that you're*
9.     *referring to, Mr. Jones, that says, "Interest at 12.375 percent*
10.    *from 10/1/04 to 6/13/05"?*

11.    THE WITNESS: *Yes. And I'd like to note to*
12.    *Your Honor that the change letter, which we haven't seen yet as*
13.    *evidence, comes in the mid part of this particular interest*
14.    *date from 10/1 to 6/13, and you'll see again they ignored any*
15.    *rate change.*

16.    THE COURT: *All right.*

17.    THE WITNESS: ***This letter prompted me to question the***
18.    ***entire process that Wells Fargo was having in the pay off loan.***
19.    ***I contacted your law - -***
        (Bold added.)

The Debtor clearly testified he questioned the *entire process* between 10/1/04 and

6/13/05. The Debtor had sufficient knowledge and questioned the *entire process* to such a

degree that he contacted his lawyers yet again. The Bankruptcy Court's rejection of the

Voluntary Payment Doctrine was based upon errors of fact and must be, by law, vacated.

**20.    The Bankruptcy Court committed manifest error in not considering the failure of the
Plaintiff to mitigate his damages. The Debtor testified himself that he had sufficient
time to seek advice from legal counsel on the issues prior to voluntarily paying the
disputed sums. No evidence was introduced that the Debtor was going to "lose" his
loan commitment if he sought court intervention "at the first instance".**

The Debtor clearly had multiple opportunities to resist Wells Fargo's invoices. The

United States Court of Appeal, Fifth Circuit, has found, contrary to the Bankruptcy Court's

decision, that if the Debtor could have resisted the claim at the outset, the application of the

Federal Voluntary Payment Doctrine is appropriate. *". . . Plaintiffs voluntarily paid for the*

*ValueMax program under circumstances where they could have resisted the charges at the*

*outset. Under these facts the voluntary payment doctrine defeats Plaintiff's claims for breach of*

*contract and bad faith breach of contract." Chris Albritton Constr., supra,* at 533.

Certainly, the Debtor was agitated sufficiently enough to seek legal advice *multiple times*.

This is undisputable evidence that the Debtor had imputed, if not actual, knowledge that the

payoff was incorrect. Furthermore, in the words of the United States Court of Appeal, Fifth

Circuit, imputed knowledge is enough and excusable ignorance on the Debtor's part does not

negate the doctrine:

> *"Plaintiffs have imputed knowledge of Pitney Bowes' risk management*
> *program, because they are charged with the duty to read the lease they sign,      even*
> *the fine print. The purpose of the voluntary payment doctrine is to preclude      courts from*
> *"`being occupied in undoing the arrangements of parties, which they      have voluntarily*
> *made, and into which they have not been drawn by fraud or      accident, or by any*
> *excusable ignorance of their legal rights and liabilities.'" Id.      (quoting 2 Elliott on*
> *Contracts 645 § 1391). The exceptions for fraud, accident, or excusable ignorance do not*
> *negate the doctrine.*
> *Chris Albritton Constr., supra,* at 532.

Over and over again, the Debtor testified that he disputed interest charges, disputed the

application of payments, and even questioned the *entire process* as early as mid 2005, long

before receiving a payoff.

The United States Court of Appeal, Fifth Circuit, found that a plaintiff could have resisted

the charges just from *the information provided on the invoice. "They could have resisted the*

*demand based on the contract or based on the information on the invoice."* See page 532 of *Chris*

*Albritton Constr., supra.*

The Bankruptcy Court made a manifest error of law in holding that the Debtor could not

have resisted the payoff when he received dozens of invoices in which he disputed the interest

charges. The Debtor knew the payoff invoice was incorrect and had sufficient information (and

was sufficiently agitated) to report to his attorney that the invoices were incorrect. He then

requested multiple legal opinions as to whether they should resist the claim now or later. The

debtor could have resisted the demand based on the mortgage contract and information on the early

2005 letters alone. The debtor's attorney advised the Debtor to voluntarily pay the funds and that

they would contest the matter later.

It was a manifest error of law for the Bankruptcy Court to hold that the Debtor could not

have resisted the payoff request from the information provided in the payoff invoice and could not

have resisted even earlier invoices, particularly where he testified himself that he question, in 2005,

*the entire process* . The ruling of this Court that the Debtor was unable to resist the invoices *he*

*believed to be incorrect as early as mid may 2005* is contrary to the holdings of the United States

Court of Appeal, Fifth Circuit and constitutes a manifest error of law.

## 21.     The Bankruptcy Court erred in holding that the burden of proof rested with the Defendant.

The question of who bears the burden of proof is a legal issue requiring *de novo* review.

*Theriault v. Silber*, 547 F.2d1279, 1280 (5th Cir. 1977). As the plaintiff in this adversary action, the

debtor had the obligation to carry the burden of proof. *Grogan v. Garner*, 498 U.S. 279, 286, 111

S.Ct. 654, 112 L.Ed.2d 755 (1991). *In re Ross*, 338 B.R. 266 (E.D.Pa. 2006). It is not sufficient for

the plaintiff simply to make allegations. The debtor bears the burden of proof in an action for

violation of the automatic by the preponderance of the evidence. *See, e.g. Clayton v. King (In re*

*Clayton)*, 235 B.R. 801, 806-07 (Bankr. M.D.N.C. 1998); *In re Dunn*, 202 B.R. 530 (Bankr.D.N.H.

1996); *Estep v. Fifth Third Bank of N.W. Ohio (In re Estep)*, 173 B.R. 126, 129 (Bankr.N.D.Ohio 1994) (citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). Some courts have required the debtor to carry the burden of proof by clear and convincing evidence. *See, e.g., Bolen v. Mercedes Benz, Inc. (In re Bolen)*, 295 B.R. 803, 807 (Bankr.D.S.C. 2002); *Diviney v. NationsBank of Texas (In re Diviney)*, 211 B.R. 951, 961 (Bankr.N.D.Okla. 1997) *aff'd* 225 B.R. 762 (10th Cir. BAP 1998); *Brockington v. Citizens and S. Nat'l Bank of S.C. (In re Brockington)*, 129 B.R. 68, 70 (Bankr.D.S.C. 1991).

The Bankruptcy Court, however, applied the state law of Louisiana and placed the burden of proof in this adversary proceeding on the defendant, Wells Fargo.[28] If the burden of proof in an adversary proceeding for damages for an alleged violation of the stay is shifted to the creditor, any debtor in bankruptcy could file any adversary complaint alleging a violation of the stay, present no evidence, and expect that the creditor would be compelled to prove that it had taken no action that violated the stay.[29] With all respect to the Bankruptcy Court, it was error for the Bankruptcy Court to place the burden of proof on Wells Fargo in this adversary proceeding.

**22.    The Bankruptcy Court erred in holding that the Plaintiff was not required to provide any expert testimony to meet the Plaintiff's burden of proof; and**

**23.    The Bankruptcy Court erred in holding that the Debtor/Plaintiff ever satisfied its burden of proof; and**

---

[28] "Under Louisiana law, the creditor bears the burden of establishing its debt." (Citing La. C.C. art. 1831.) Memorandum Opinion, page 21, line 8.

[29] Although a creditor ultimately bears the burden of proof in an objection to a proof of claim (*California State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fid. Holding Co.)*, 837 F.2d 696, 698 (5th Cir. 1988), those presumptions and rules of burden-shifting apply to objections to proofs of claims.

**24.**   **The Bankruptcy Court erred in shifting the burden of proof to the Creditor/ Defendant.**

The plaintiff called only himself as a witness prior to resting. The plaintiff testified, "I have spent literally hours and hours. I spent probably 100 to 150 hours trying to figure this whole mess out and still can come to no conclusion." (Transcript, p. 12, ll. 23-25.) At the conclusion of the plaintiff's case, Wells Fargo, N.A. moved for judgment as a matter of law. (Transcript, p. 150, ll. 18-21.) The Bankruptcy Court denied the motion. (Transcript, p. 151, l.2.) The Bankruptcy Court, however, relies on evidence deduced *after* the close of plaintiff's case to find that the burden of proof shifted to the defendant, Wells Fargo, N.A. The Court concluded that the way collection costs were assessed and the way Wells Fargo, N.A. applied payments was improper despite the admission of plaintiff that he could "come to no conclusion" as to how costs were assessed and payments were applied. Because the plaintiff failed to satisfy its burden of proof, the Bankruptcy Court erred in concluding that the burden of proof shifted and the Court erred in denying the motion for judgment as a matter of law.

**25.**   **It was manifest error for the Bankruptcy Court to refuse the Defendant's Rule 59 motion to proffer an accounting by a Certified Public Accountant of how the payments should have been applied; and**

**26.**   **The Bankruptcy Court erred in not granting the Defendant's Rule 59 Motion To Offer Expert Testimony In The Field Of Accounting where the Bankruptcy Court provided its expertise in accounting to assist the Plaintiff where the Plaintiff had previously notified Defendant that Plaintiff would not offer such evidence at trial and the Defendant was given no notice that the Bankruptcy Court would apply such expertise in accounting.**

After this objection was brought to the Bankruptcy Court's attention in the Rule 59 motion, the Bankruptcy Court cited *In re Green Valley Beer*, 281 B.R. 253 (Bankr. W.D. Pa. 2002) as precedent to support that the Court could rely on its own expertise. That case, however, dealt with

the reasonableness of an attorney fee request and had nothing to do with proper accounting practices.[30] The only other case cited by the Bankruptcy Court[31] was an admiralty case, and at the time of the decision the admiralty courts were not bound by the common law rules of evidence. *Westchester Fire Ins. Co. v. Buffalo H. And Salvage*, 40 F.Supp. 378 (W.D.N.Y., 1941). The Bankruptcy Court erred in providing its own expert opinion when there was no opportunity and no notice to present independent expert testimony. Additionally, the Bankruptcy Court erred in not granting the defendant's Rule 59 motion to offer expert testimony in the field of accounting where the trial court provided its expertise in accounting to assist the plaintiff where the plaintiff had previously notified defendant that it would not offer such evidence at trial and the defendant was given no notice that the trial court would apply such expertise in accounting.

27. **The Bankruptcy Court erred in allowing the Plaintiff/Witness to provide opinion testimony to the Bankruptcy Court where the Plaintiff/Witness was not offered and was not qualified as an expert, and where the Creditor/Defendant had no notice that such opinion testimony would be offered.**

The Bankruptcy Court relied upon the opinion testimony of the plaintiff as an expert in the field of accounting. In its Memorandum Opinion, the Bankruptcy Court concluded that the Debtor was a certified public accountant. See page 10, paragraph one, line 5: *"Debtor, who is a certified public accountant, . . . . "* This statement is an error of fact. There was absolutely no evidence that the debtor is or was at trial a licensed certified public accountant.

---

[30] "[w]hen the nature of time entries or individual portions of the time entries make it impossible to determine which items were reasonably necessary for the protection of the creditor's interests, the Court must rely on its own knowledge and experience in arriving at the proper fee award." at p. 256.

[31] *The Eleanore*, 248 F. 472 (6th Cir. 1918).

The Bankruptcy Court may have relied upon the Plaintiff's statement in its post-trial brief that "Mr. Jones, as a certified public accountant, is educated in financial matters and therefore, (sic) knowledgeable as to defendant's accounting errors."[32] However, statements made in briefs are not evidence, and there was no evidence introduced to substantiate the representation made by the plaintiff. The conclusion of fact by the Court that plaintiff was a certified public accountant is an error of law.

The Bankruptcy Court should not have considered the opinion of the plaintiff because the debtor failed to identify himself as an expert who would testify in any field. The debtor failed to identify any expert that would be called at trial in the pretrial order should have prohibited the Bankruptcy Court from considering the opinion testimony of the debtor. *Bradley v. U.S.*, 866 F.2d 120, 127 (5th Cir. 1989).[33] It was manifest error for the Court to consider the testimony of the debtor as a certified public accountant since the debtor in fact is not a licensed certified public accountant and since the debtor failed to identify himself as an expert in any field in the pre-trial order.

**28.     The Bankruptcy Court committed manifest error when it calculated the Debtor's loan; and**

**39.     The Bankruptcy Court erred in its interpretation of certain accountings; and**

**30.     The Bankruptcy Court erred in calculating the amounts to be forfeited by Wells Fargo; and**

---

[32] Post-trial brief of Michael Jones, page 26, lines 18-19.

[33] "We will not allow that imprimatur to exist any longer. We hold that, under the circumstances of this case, the district court abused its discretion by allowing the government to designate Brekken and Bernell out of time and to offer their testimony. Moreover, we are hopeful that this decision will serve as a catalyst for appropriate changes in the above-described policies, to the extent that such policies still deter adherence to the applicable rules." (Footnote omitted.)

**31.    The Bankruptcy Court erred in providing its expertise in accounting to assist the
        Plaintiff where the Plaintiff had previously notified Defendant that it would not offer
        such evidence at trial and the defendant was given no notice that the Bankruptcy
        Court would apply such expertise in accounting.**

There can be no doubt that Wells Fargo, as the overly secured creditor secured by the first

mortgage on the debtor's residence, is entitled to interest according to the terms of the mortgage

agreement and promissory note. Section 305 of the Bankruptcy Reform Act of 1994 added a new §

1322(e):

> Notwithstanding subsection (b)(2) of the section and sections 506(b) and 1325(a)(5)
> of this title, if it is proposed in a plan to cure a default, the amount necessary to cure
> the default shall be determined in accordance with the underlying agreement and
> applicable nonbankruptcy law.

The clear intent of Congress was to assure that mortgage contracts signed after the effective date of

the Act were not controlled by the decision of the United States Supreme Court in *Rake v. Wade*,

508 U.S. 464, 113 S.Ct. 2187, 124 L. Ed. 2d 424 (1993).[34] Wells Fargo, as an over-secured

creditor, is entitled by §506(b) to "interest...reasonable fees, costs, or charges provided for under

the agreement." The agreement between Debtor and Wells Fargo clearly allows for the method of

how payments are to be applied and on how interest may be assessed.[35]

----

[34] Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §702(b)(2)(D), 108 Stat. 4106
(1994).

[35]  Page 1, Paragraph Number 2 of "Adjustable Rate Note" (Exhibit Two) reads: "Interest
will be charged on unpaid principal until the full amount of principal has been paid. . . .The
interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before
and after any default described in Section 7(B) of this Note."

Page 1, Paragraph Number 3 of "Adjustable Rate Note" (Exhibit Two) reads: "Each monthly
payment will be applied **as of its scheduled due date** and will be applied to interest before
Principal." (Emphasis added.)

The Bankruptcy Court, however, assumed that simple interest was the appropriate method to calculate the interest payments that became due under the plaintiff's mortgage. No evidence or expert testimony was offered in this regard. In fact, the evidence that was offered established that a 360-day mortgage amortization based on the application of payments when the payment were contractually due and not when they were received was the correct method of accounting to use, and that simple interest was *not* the correct method of calculating the interest payments. (Transcript, p. 156, ll.2-17; p. 205, l. 9- p. 206, l.25; p. 213, ll. 15-18; p. 215, ll. 21-24; p. 219, l.2- p. 220, l. 15; p. 269, ll.3-9.)

The Bankruptcy Court adjusted the balances it felt was owed and not owed by conducting a review of the accounting from the date of the loan's inception through the petition date and beyond. The Debtor and Wells Fargo, however, entered into a consent judgment on May 12, 2004. By conducting a review of the loan from its inception as opposed to the date of the last consent judgment entered into between the parties, the Court committed a manifest error of law.

32.   **The Bankruptcy Court committed manifest error in ruling that Wells Fargo acted unreasonably in incurring inspection fees and other charges; and**

33.   **It was manifest error for the Bankruptcy Court to find that all of the inspections were unreasonable. On page 238 of the trial transcript, the Trial Court, discussing the inspections, states "It is a year later. And of Course, that's also Hurricane Katrina hits at that point too, which I would understand why you would definitively want to**

---

"Page 4 of 18," Paragraph Number 2 of "Mortgage" (Exhibit Two) reads: "Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) Interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such amounts shall be applied to each Periodic Payment **in the order in which it became due**. Any remaining amounts shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note." (Emphasis added.)

know what's happening with the property." However, in its judgment, the
Bankruptcy Court denied the post-Katrina inspection charge and found *all*
inspections to be unreasonable; and

34.  The Bankruptcy Court committed manifest error when the Bankruptcy Court ruled
     that Wells Fargo, an over-secured lender, acted unreasonably in assessing inspection
     fees and other charges to the Debtor's account; and

35.  The Bankruptcy Court committed manifest error when the Bankruptcy Court ruled
     that the amounts assessed by Wells Fargo for inspection fees and other charges were
     unreasonable.

The Bankruptcy Court disallowed the costs of *all* inspections of the debtor's residence even

though Wells Fargo established the reasonableness of the inspections. (Transcript, p. 225, l.2- p.

239, l.12.) Even the Bankruptcy Court acknowledged during the trial that, "And of course that's

also Hurricane Katrina hits at that point too, which I would understand why you would definitely

want to know what's happening with the property." (Transcript, p.238, ll. 11-14.) The subsequent

decision by the Bankruptcy Court that Wells Fargo, N.A. acted unreasonably in inspecting the

property is an abuse of discretion and reversible error.

The cost of each inspection was $15.00. Although there was no evidence of any relation

between Wells Fargo, N.A. and the property inspection company, the Bankruptcy Court scrutinized

Wells Fargo, N.A. to determine if any part of the inspection company was related to Wells Fargo,

N.A. (Transcript, p. 225, l. 14- p. 226, l.10.) There was no evidence offered that the amounts

assessed by Wells Fargo, N.A. for an inspection was unreasonable, but the Bankruptcy Court

disallowed all the inspection costs.

36.  It was manifest error for the Bankruptcy Court to rule that the Defendant/Creditor
     had the discretion, regardless of the automatic stay, to dismiss a foreclosure petition
     in state court after the commencement of the Chapter 13 proceedings; and

**37.    It was manifest error for the Bankruptcy Court to rule that the Defendant/Creditor was required to dismiss a prepetition state court foreclosure action after the Debtor filed a Chapter 13 bankruptcy petition.**

There is no legal requirement that a creditor dismiss the foreclosure petition filed prior to

the commencement of a bankruptcy case simply because the debtor filed bankruptcy. In fact, Wells

Fargo may have been accused of violating the stay if it dismissed the petition.[36] Clearly it was

reasonable for Wells Fargo to maintain the foreclosure petition. The debtor admitted, and the

evidence at trial proved, that this was the *fourth* significant default within two years by the

debtor.[37] After the first and second foreclosure actions each were voluntarily dismissed by Wells

Fargo, the debtor again defaulted and compelled Wells Fargo to commence a new foreclosure

action. The debtor waited until the eve of the foreclosure sale to file the Chapter 13 bankruptcy.

Additionally, the record reflects that the debtor was consistently late in making the postpetition,

direct monthly mortgage payment to Wells Fargo. In fact, Wells Fargo was compelled to file a

motion to lift the stay due to the debtor's failure to honor his obligation to pay his postpetition

monthly mortgage payment.[38] The debtor admitted that he had failed in his obligation to pay his

mortgage payment to Wells Fargo even after he filed bankruptcy and even after he swore in his

Chapter 13 plan that he would make his monthly mortgage payments to Wells Fargo in a timely

---

[36] *Barbara, Inc. v. Billelo*, 33 So.2d 689 (La. 1947)("It is the settled jurisprudence of this court that a plaintiff may discontinue his suit at any time prior to the rendition of judgment `unless thereby some acquired right of the defendant would be impaired.'"). Accord, *Breffeilh v. Breffeilh*, 60 So.2d 457 (La. 1952). See *First City Bank v. Lee*, 576 S.2d 544, 545 (La. App. 4 Cir. 1991), where a mortgage creditor was not allowed to dismiss a petition for executory process without prejudice because the dismissal would cause the debtor "to lose substantive rights and will prevent him from asserting just defenses."

[37] Trial Transcript, page 48, lines 5-7.

[38] Trial Transcript, page 158, lines 1 through 13.

manner.[39] Certainly Wells Fargo acted reasonably in not dismissing the foreclosure petition.

**38.    It was manifest error for the Court to rule that the Defendant/ Creditor was required to send notices, during the automatic stay, of all and every assessment and amount due by the debtor to the debtor, and that such notices would not have violated the automatic stay or the Court's Orders.**

Under the terms of the mortgage, Wells Fargo, N.A., was entitled to make assessments

against the debtor's account for collection costs. The assessment of post-petition collection costs,

such as inspection fees, does not amount to an act "to create, perfect, or enforce any lien" against

the property within the meaning of subsection (a)(4) of 11 U.S.C. § 362. It is true that such

charges increase the amount owed under the note and secured by the mortgage. Such charges are

clearly allowed by the note and mortgage signed by the debtor.[40]  However, increases in the

_____

[39] Document Nos. 28 and 71.

[40] Page 2, Paragraph Number 7(E) of "Adjustable Rate Note" (Exhibit Two) reads: "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law."

"Page 8 of 18," Paragraph Number 7 of "Mortgage" (Exhibit Two) reads: "Lender or its agent may make reasonable entries upon and inspections of the Property...."

"Page 8 of 18," Paragraph Number 9 of "Mortgage" (Exhibit Two) reads: "If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property."...."Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument...."

"Page 12 of 18," Paragraph Number 14 of "Mortgage" (Exhibit Two) reads: "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of

amount due under a mortgage loan that are attributable to expenses incurred as a result of the

debtor's default do not "create" a lien any more than the accrual of additional interest on the unpaid

obligation would. *In re Kennedy Mortgage Co. v. Larson,* 23 B.R. 466, 472 (D.N.J. 1982).[41] Like

interest that automatically accrues on a pre-petition debt while a bankruptcy case is pending,

inspection fees attributable to the debtor's default on a preexisting mortgage loan arise out of and

are incidental to that loan.[42] See *Mann v. Chase Manhattan Mortgage Corp.,* (R.I. 2002), *affirmed,*

---

protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees."

"Page 14 of 18," Paragraph Number 19 of "Mortgage" (Exhibit Two) reads: "If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued....Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument, and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument."

"Page 16 of 18," Paragraph Number 23 of "Mortgage" (Exhibit Two) reads: "For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorney fees and other fees and charges."

[41] *In re Kennedy Mortgage Co. v. Larson,* 23 B.R. 466, 472 (D.N.J. 1982), has been cited with approval by the United States Court of Appeal, Fifth Circuit, in *In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051 (5th Cir. 1986).

[42] Moreover, viewing such charges as "creating" a lien against property of the estate would be inconsistent with the purpose of subsection (a) (4). The prohibition against creating liens on a debtor's property after a bankruptcy petition has been filed was designed to prevent a creditor from obtaining preferential treatment vis a vis *other creditors* by converting an unsecured debt into a secured debt. H.R. Rep. No. 95-595, at 341 (1977). Here the assessment of inspection fees does not confer, on Wells Fargo, any advantage over *other creditors.* Wells Fargo was precluded from foreclosing upon its mortgage by the filing of the Chapter 13 petition. Thus, the fact that the additional charges may be secured by Wells Fargo's mortgage does not provide Wells Fargo with any advantage over *other creditors* of the estate.

316 F.3d 1 (1ˢᵗ Cir. 2003).

It is well-settled that inspections to determine the condition of the mortgaged property may be "necessary to protect the value of the property." *Majchrowlski v. Norwest Mortgage, Inc.,* 6 F.Supp.2d 946, 964-965 (N.D. Ill. 1998).

While the debtor's Chapter 13 plan cannot effect the rights of Wells Fargo, N.A. as a secured creditor absent some affirmative action by the debtor,[43] and Wells Fargo, N.A. is entitled to assess collection costs, there is no method by which Wells Fargo, N.A. could send notice of the assessments to the debtor without violating the stay.[44] There should be no doubt that Wells Fargo, N.A., would have been accused of violating the stay if it issued notices of every assessment to the debtor. *In re Whitt,* 79 B.R. 611, 615 (E.D. Pa. 1987).

It was manifest error for the Bankruptcy Court to rule that the Defendant/Creditor was required to send notices of all and every assessment and amount due by the debtor to the debtor, and that such notices would not have violated the stay or the Bankruptcy Court's orders.

**39.    It was manifest error for the Bankruptcy Court to consider an award of punitive damages after it had rendered a final judgment for actual damages; and**

**40.    It was manifest error for the Bankruptcy Court to render a final judgment in the case but to consider at a later hearing an award of attorney fees because an award of additional actual damages in the form of attorney fees is a prohibited substantive amendment to a final judgment; and**

---

[43] See the discussion of *Matter of Howard,* 972 F.2d 639, 27 Collier Bankr. Cas. 2d (MB) 1016, Bankr. L. Rep. (CCH) P 74838 (5ᵗʰ Cir. 1992), et al., infra.

[44] This dilemma is discussed in the matter *In re Martinez,* 281 B.R. 883 (Bankr. W.D.Tex. 2002).

**41.     The Bankruptcy Court erred in awarding actual damages to the Plaintiff/Debtor
where the Plaintiff/Debtor failed to prove that he incurred any actual damages.**

The Plaintiff provided no evidence as to any actual damages he allegedly suffered as the

result of the inspection fees.  Plaintiff testified that he did not even know of the drive-by

inspections until the closing.  The inspections did not involve entry upon the plaintiff's property

and the inspections were contractually provided for in paragraph 14 the mortgage:

> "14.     Loan Charges.          Lender may charge Borrower fees for services performed  in
> connection with Borrower's default, for the purpose of
> protecting Lender's interest in the Property and rights under
> the Security Instrument, including, but not limited to,
> attorney's fees, *property inspection* and valuation fees."
> (Emphasis added)

The inspections were not only contractually agreed to, they are legally permissive under

established jurisprudence.  *"There is no doubt that inspections to determine the condition of the*

*mortgaged property may be 'necessary to protect the value of the Property.'  Majchrowiski v.*

*Norwest Mortgage, Inc., 6 F. Supp.2d 946, 964-965 (N.D. Ill. 1998) (finding that provisions of a*

*mortgage agreement identical to ¶¶ 7 and 9 authorized post-default inspections)."  Mann v.*

*Chase, supra.*

The amount associated with the unintrusive inspections was so nominal ($320.00), that

Plaintiff was unable to establish any actual damages associated with the inspection fees.

Actual damages for purposes of section 362(h) should only be awarded if there is evidence

supporting the award of a definite amount which may not be predicated upon mere speculation.

Different circuits have held that the evidence of damages in regards to section 362(h) must be

"concrete". "For § 362(h) purposes, actual damages should be awarded only if there is *concrete* evidence supporting the award of a definite amount." See *Ball v. A.O. Smith Corporation,* (N.D. N.Y. 2005), citing *In re Sumpter,* 171 B.R. 835, 844 (Bankr., N.D. Ill. 1994). (Emphasis added). In the case *sub judice,* the Plaintiff provide not a scintilla of "concrete" evidence that he had incurred actual damages. The Plaintiff offered only his conlusory and self-serving testimony.

"The party seeking damages pursuant to § 362(h) has the burden of proving what damages were incurred and what relief is appropriate." See *In re Sucre,* 226 B.R. 340, 349 (Bankr. S.D.N.Y. 1998); and *In re Dominguez,* 312 B.R. 499, 508 (Bankr. S.D.N.Y. 2004).

The Plaintiff provided no concrete evidence proving what damages were incurred and provided no evidence whatsoever to this Court as to what relief was appropriate.

Simply put, "The moving party bears the burden of proof in order to prevail on an action for violation of the automatic stay and must prove his case by clear and convincing evidence." See *Ball v. A.O. Smith Corporation,* (N.D. N.Y. 2005), citing *In re Clarkson,* 168 B.R. 93, 95 (Bankr., D.S.C. 1994). At trial, the Plaintiff did not meet this burden through either clear and convincing evidence or evidence that was concrete.

Furthermore, "For damages to be awarded for automatic stay violation, party seeking damages must prove an injury caused by the stay violation and that the violation of the stay was willful. 11 U.S.C. (2000 Ed.) § 362(h)." *In re Hutchings* (Bkrtcy.N.D.Ala., 2006). At trial, no injury to Jones or the estate was proven whatsoever.[45]

---

[45] As prerequisites to maintaining action for automatic stay violation, debtor must have been injured by the stay violation and creditor's actions must have caused debtor to suffer damages which are "actual" in that they are damages which debtor in fact incurred. *In re Hutchings, supra.*

## CONCLUSION

In considering the plaintiff's motion for leave to payout the debt owed to Wells Fargo,

N.A., the Bankruptcy Court directed that the plaintiff refinance the security "to pay off the existing

mortgage with Wells Fargo Home Mortgage."[46] The order does not direct the Wells Fargo be paid

only the amount allowed in the proof of claim or by the confirmed plan. As a creditor oversecured

by a first mortgage on the debtor's residence,  the precedents of *Nobleman v. American Savings*

*Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed. 2d 228 (1993) and *Matter of Howard*, 972 F.2d

639, 27 Collier Bankr. Cas. 2d (MB) 1016, Bankr. L. Rep. (CCH) P 74838 (5th Cir. 1992),

prohibited the modification of the rights of Wells Fargo. Wells Fargo, N.A. would have objected if

the Bankruptcy Court's order allowed the debtor to pay anything less than the amounts due under

the terms of the mortgage.[47]

Since the order of the Bankruptcy Court required the debtor to pay the balance due under

the terms of the mortgage, Wells Fargo, N.A. could not be in violation of the Bankruptcy Court's

---

[46] Document 98, "In re: Michael Jones," U.S.B.C., E.D.La. No. 03-16518-A.

[47] See, for example, the recent case of *In re Coutee*, (W.D.La. No. 03-52145, 01/23/2006). In that Chapter 13 proceeding, Union Planters, which was secured by a first mortgage on the debtors' principal residence, filed a proof of claim in the amount of $123,190.53. This amount included foreclosure fees and costs. The debtors objected to the amount of the proof of claim, including the foreclosure fees and costs, and the objection was sustained. The proof of claim was set at $101,767.16. Subsequently, the debtors filed a "Motion to Incur Debt,"by which the debtors sought "to incur the post petition debt stated hereinabove and payoff in full Union Planters Bank, N.A....." The Court granted the motion. The debtors then filed an "Amended Motion to Incur Debt." By this motion the debtors sought to "set the payoff in full for Union Planters Bank, N.A. in the amount of $101,902.77." Judge Schiff found that the amount owed to Union Planters for a payoff was the "amount due to Union Planters under the *mortgage*." (Emphasis added.) The Court ordered that the payoff to Union Planters had to include the prepetition costs, including attorney fees for filing the executory process, the Sheriff's costs, and the clerk of court's costs, as well as the post-petition attorney fees and costs.

orders when it provided a statement to the debtor of the amount due under the terms of the mortgage. Similarly, Wells Fargo. N.A. could not be in violation of the Bankruptcy Court's orders when the debtor voluntarily paid it the amount that was due under the terms of the mortgage.

For the reasons cited herein, the judgment of the Bankruptcy Court should be vacated and set aside, and the complaint of Mr. Michael Jones should be dismissed. Wells Fargo, N.A. prays for all other relief.

Respectfully submitted:

/s/Paul Rumage_____
Paul Rumage (1574), T.A.
Law Office of Paul Rumage
13541 Tiger Bend Road
Baton Rouge, LA 70817
Telephone:    (504) 458-3999
Facsimile:    (225) 243-4735
Email: RumageLawOffice@cs.com

/s/Herschel C. Adcock, Jr._____
Herschel C. Adcock, Jr.
Attorney at Law
Post Office Box 87379
Baton Rouge, LA 70879-8379
Telephone:    (225) 756-0373

## VERIFICATION

**UNITED STATES OF AMERICA**
**STATE OF LOUISIANA**
**PARISH OF BATON ROUGE**

BEFORE ME, the undersigned notary public, personally came and appeared

PAUL RUMAGE

as counsel for Wells Fargo Bank, N.A. Defendant/Appellant who, after first being
duly sworn, did declare as follows:

1.   That he prepared this original brief on behalf of Wells Fargo Bank,
     N.A.;

2.   That the allegations and statements contained in the appeal and brief
     are true and correct to the best of his knowledge after inquiry and consultation with
     his client;

3.   That copies of the brief have been served on this 13th day of July, 2007 upon the
     following entities, persons, and counsel, by placing them in the United States mail,
     properly addressed and postage prepaid, as follows:

     Honorable Elizabeth W. Magner
     United States Bankruptcy Court Judge
     500 Poydras Street, Room 741B
     Hale Boggs Federal Building
     New Orleans, LA 70130

     Michael L. Jones
     through his attorney of record:
     DeLeo & Ronquillo
     Robin R. De Leo, Esq.
     #1 Sanctuary Boulevard, Suite 303
     Mandeville, LA 70471

PAUL RUMAGE

SWORN TO AND SUBSCRIBED BEFORE ME,
NOTARY, THIS 12TH DAY OF JULY, 2007.

Herschel C. Adcock, Jr.(Bar No. 17903)
NOTARY PUBLIC