**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,** | **CIVIL ACTION** |
| **f/k/a WELLS FARGO HOME** | |
| **MORTGAGE, INC.** | |
| | |
| **VERSUS** | **NO. 07-3599  &** |
| | **CONSOLIDATED CASES** |
| | |
| **MICHAEL L. JONES** | **SECTION "C" (2)** |
| | |
| | **BANK. NO.:  03-16518 "A"** |
| | **ADV. NO.:    06-01093** |

## ORDER AND REASONS

This consolidated matter comes before the Court on appeal from the Bankruptcy Court.

Wells Fargo Bank, N.A. f/k/a Wells Fargo Home Mortgage, Inc. ("Wells Fargo") has filed eight

(8) Notices of Appeal, or Motions Seeking Leave to Appeal in this matter.[1]  In the interests of

judicial efficiency, the Court has consolidated these appeals, and asked the parties to submit

omnibus briefs addressing all of the issues raised in the individual appeals.[2]  Having considered

_____

[1] Case Numbers 07-3599, 07-7993, 07-7994, 07-7995, 07-7996, 07-7997. 07-7998, and
07-9229.  In addition, Wells Fargo filed a Motion to Stay Judgment Pending Appeal, case no.
07-3973.0

[2] Wells Fargo requested permission to file a 146 page brief, Rec. Doc. 33, which was
granted.  Unfortunately, much of that brief was excessively redundant and unduly hyperbolic,
raising some issues that were borderline frivolous and at times mischaracterized the facts and the

the parties briefs, exhibits and the applicable law, the Court AFFIRMS IN PART, AND REVERSES IN PART the Bankruptcy Court's rulings.

**I. BACKGROUND**

On August 26, 2003, this matter originated in Bankruptcy Court when Michael L. Jones, the debtor-appellee ("Jones"), filed for Chapter 13 relief. Jones's bankruptcy petition automatically stayed Wells Fargo's pending mortgage foreclosure action. However, Wells Fargo did not dismiss the foreclosure suit.[3] As part of the bankruptcy action, Wells Fargo filed a proof of claim reflecting pre-petition arrearage of $22,259.69.[4] Jones's Chapter 13 plan provided that Jones was to make all future monthly mortgage payments directly to Wells Fargo, while a Chapter 13 Trustee was to make payments on Wells Fargo's pre-petition arrearage claim. In addition, the plan provided for 100% payment to all unsecured creditors. The plan was confirmed by the Bankruptcy Court on October 28, 2003.

On November 1, 2003, Jones suffered a heart attack and missed payments both to the Trustee under the plan and mortgage payments to Wells Fargo. The Bankruptcy Court extended the term of Jones's plan by three months to compensate for the missed plan payments. In addition, and under a Consent Order with Wells Fargo, Jones agreed to pay $9,348.22 directly to Wells Fargo to cure the post-petition default on his mortgage.[5] Following the Consent Order, Jones made payments to both the Trustee and Wells Fargo; the Trustee forwarded payments to

law. This voluminous and unnecessary briefing made it all the more difficult to separate the wheat from the chafe.

[3] *In re Jones*, 366 B.R. 584, 586 (Bkrtcy.E.D.La. 2007).

[4] Rec. Doc. 48, Exhibit A.

[5] *In re Jones*, 366 B.R. at 587.

2

Wells Fargo to cover the pre-petition arrearage.

In the summer of 2005, Jones requested authorization to refinance his mortgage. Jones attempted to use the equity in his house to satisfy his debt to Wells Fargo and all of his unsecured creditors.[6] Due to Hurricane Katrina, a hearing on the motion to refinance the debt was not held until November 15, 2005. On December 7, 2005, the Bankruptcy Court approved Jones's request to refinance. On December 15, 2005, Jones requested a payoff statement of the amounts due to Wells Fargo. On January 3, 2006, Wells Fargo faxed an itemized payoff statement, indicating a payoff balance of $231,463.97.

Jones asserts that he disagreed with the amount listed on the payoff statement, specifically the $6,741.67 for Sheriff's Commissions. Yet, the new loan could not be closed without a release of the Wells Fargo mortgage, and the mortgage would not be released by Wells Fargo unless it received its payoff demand. Thus, Jones remitted the entire $231,463.97 to Wells Fargo, even though this left insufficient funds to satisfy Jones's remaining obligations under his plan.

After closing, Jones received a letter from Wells Fargo, dated January 12, 2006, indicating that Wells Fargo had collected sums in excess of the amount necessary to satisfy the debt, and that Wells Fargo would refund Jones's overpayment in about 15 days.[7] Jones did not receive reimbursement within 15 days. On March 30, 2006, Jones filed an adversary action

---

[6] Jones's request to refinance was based on a commitment from Option One to lend $275,000. According to the Bankruptcy Court, $275,000 was an amount sufficient to satisfy the costs of refinancing, the outstanding claims of Wells Fargo, and the remaining obligations due under his plan. *In re Jones*, 366 B.R. at 587.

[7] *In re Jones*, 366 B.R. at 588.

3

against Wells Fargo to recover the overpayment.  On April 20, 2006, Wells Fargo deposited $7,598.64 in the registry of the Bankruptcy Court pending the outcome of the adversary proceeding.  Following a trial, the Bankruptcy Court found that Wells Fargo misapplied funds between pre- and post-petition debts, which violated the terms of Jones's plan.

In a "Memorandum Opinion" dated April 13, 2007, the Bankruptcy Court held that Wells Fargo erred by: (1) miscalculating pre-petition debt; (2) assessing additional pre-petition charges, without amending the proof of claim; (3) miscalculating post-petition debt by misallocating payments to pre- and post-petition debt, thereby increasing interest charges over the life of the plan; (4) assessing unauthorized post-petition fees and charges.[8]

Based on these findings, the Bankruptcy Court concluded that Wells Fargo violated the Bankruptcy Code's automatic stay.  *In re Jones*, 366 B.R. at 600.  Furthermore, the Bankruptcy Court held that Jones was entitled to recover "actual damages" under § 362(h) of the Bankruptcy Code.[9]  Finally, the Bankruptcy Court scheduled a subsequent hearing to determine the appropriateness of sanctions against Wells Fargo.  *Id.* at 604.[10]

On April 23, 2007, Wells Fargo filed a motion to reconsider the Judgment.  The Bankruptcy Court denied the motion to reconsider on May 1, 2007.  *In re Jones*, 2007 WL 1302549 (Bkrtcy.E.D.La. 2007).  Specifically, the Bankruptcy Court found no grounds for reconsideration because "the application of estate property to undisclosed fees and charges was

---

[8]  *In re Jones*, 366 B.R. at 591-98.

[9]  The Bankruptcy Court ordered Wells Fargo to remit $16,852.01 to Jones.

[10]  The Bankruptcy Court entered a "Judgment" upon the record on April 13, 2007.  In addition to ordering reimbursement, the Judgement noted, "[t]he Court will hold an evidentiary hearing on the propriety of a sanction award on May 16, 2007, at 2:00 p.m."

an unrefuted fact." *Id.* at *2.

Wells Fargo filed a Notice of Appeal from the April 13, 2007 "Judgment" with this Court on May 10, 2007.[11]  Yet, proceedings continued in the Bankruptcy Court.  On May 29, 2007, the Bankruptcy Court conducted an evidentiary hearing to determine whether sanctions were appropriate against Wells Fargo.  At the hearing, counsel for Wells Fargo represented that Wells Fargo was willing to enter into a Consent Order regarding a change in their business and accounting practices to ensure that other debtors would be properly treated, in lieu of punitive damages.[12]  However, Wells Fargo's consent to enter a Consent Order is an issue on appeal.

Wells Fargo filed a Motion to Submit Additional Evidence or Reopen the Evidence on July 24, 2007.[13]  In the Motion to Reopen, Wells Fargo argued that the April 13, 2007 Judgment was a final judgment, but that they should be allowed to submit a payoff statement, dated July 21, 2005, to contradict part of Jones's testimony at the trial.  Specifically, Wells Fargo claimed that the July 2005 payoff statement would undermine Jones's testimony regarding the date that Wells Fargo provided the payoff information.  The Bankruptcy Court denied the Motion to Reopen, holding that evidence regarding the date on which the payoff letter was transmitted would provide, "at best," minimal probative value of the underlying sanctionable conduct: the misapplication and miscalculation of payments, fees, and charges.[14]

---

[11] Case No. 07-3599.

[12] Bankruptcy Case No. 06-01093, Rec. Doc. 126, Transcript of Hearing Held may 29, 2006, p. 80-83.

[13] Bankruptcy Case No. 06-01093, Rec. Doc. 121.

[14] *Id.*, Rec. Doc. 137.  The Bankruptcy Court also found that Wells Fargo had not met any of the factors in *Garcia v. Woman's Hospital of Texas*, 97 F.3d 810 (5th Cir. 1996) to admit new evidence.

On August 13, 2007, Wells Fargo filed a Motion to Vacate the Judgment.[15]  Wells Fargo argued that Jones failed to disclose a pending lawsuit against the maker of Vioxx in violation of the debtor's duty to notify the court of any pending or potential lawsuit in which the debtor was a plaintiff.[16]  On that basis, Wells Fargo asserted that the April 13, 2007 Judgment must be vacated, and that all claims against Wells Fargo be dismissed.  On August 20, 2007, the Bankruptcy Court denied the Motion to Vacate, stating that the failure to disclose the Vioxx lawsuit was not material to "Wells Fargo's actions that violated the automatic stay and confirmation order; its misapplication and miscalculation of payments, fees, charges, and the interest rate."  Bankruptcy Case No. 06-01093, Rec. Doc. 143.

On August 22 and 23, 2007, Wells Fargo entered four (4) Notices of Appeal and two (2) Motions for Leave to Appeal in the Bankruptcy Court record.[17]  The Bankruptcy Court promulgated an Amended Judgment on August 29, 2007.[18]  The Amended Judgment awarded $67,202.45 to Jones as damages and sanctions against Wells Fargo.[19]  In addition, the Amended Judgment ordered Wells Fargo to implement new accounting procedures.[20]  A Second Amended Judgment was entered in the record on September 14, 2007 to correct clerical error.[21]

---

[15] Bankruptcy Case No. 06-01093, Rec. Doc. 138.

[16] Bankruptcy Case No. 06-01093, Rec. Doc. 138, p. 3.

[17] Bankruptcy Case No. 06-01093, Rec. Docs. 145, 146, 147, 149, 150, and 151.

[18]  Bankruptcy Case No. 06-01093, Rec. Doc. 154.

[19] *Id.*

[20] *Id.*

[21]  Bankruptcy Case No. 06-01093, Rec. Doc. 183.  The Second Amended Judgment states, "This Judgment is being entered to change the word 'inspections' to 'insurance' in the

6

In this matter, Wells Fargo has filed a total of eight (8) appeals.  The case numbers for the

appeals are: 07-3599, 07-7993, 07-7994, 07-7995, 07-7996, 07-7997, 07-7998, and 07-9229.

The Court notes that the issues presented in these appeals substantially overlap.[22]  Indeed, 07-

7993 and 07-7997 are duplicates in terms of the issues presented, just as 07-7996 and 07-7998

---

third sentence of paragraph two in the accounting procedures."

[22] Case No. 07-3599 is an appeal both from (1) the Bankruptcy Judgment filed April 13, 2007; (2) the Order denying motion to reconsider, filed May 1, 2007.

Case No. 07-7993 is an appeal from the Bankruptcy Judge's Order denying Wells Fargo's Motion to Strike a "non-party" response, filed August 13, 2007 (filed as an appeal "as of right").

Case No. 07-7994 appeals: (1) the Bankruptcy Judgment, filed April 13, 2007; (2) the Order denying motion to reconsider, filed May 1, 2007; (3) the Amended Judgment, filed Aug. 29, 2007; (4) the Order partially granting motion to alter or amend the Judgment, filed Sept. 14, 2007; (5) the Second Amended Judgment, filed Sept. 14, 2007; (6) the Order, filed Sept. 14, 2007; (7) the Amended Order, filed Sept. 24, 2007.

Case No. 07-7995 appeals the Bankruptcy Judge's Order denying Wells Fargo's  motion for relief from judgment, filed August 20, 2007.

Case No. 07-7996 appeals the Bankruptcy Judge's Order denying Wells Fargo's Motion for leave to submit additional evidence or alternatively, to re-open the evidence, filed August 13, 2007 (filed as an appeal "as of right").

Case No. 07-7997 appeals the Bankruptcy Judge's Order denying Wells Fargo's Motion to Strike a "non-party" response, filed August 13, 2007 (filed as a "motion for leave to appeal").

Case No. 07-7998 appeals the Bankruptcy Judge's Order denying Wells Fargo's Motion for leave to submit additional evidence or alternatively, to re-open the evidence, filed August 13, 2007 (filed as a "motion for leave to appeal").

Case No. 07-9229 appeals the Bankruptcy Judge's decision to stay only part of that court's judgment pending appeal.  Wells Fargo argues that the Bankruptcy Judge only had authority to set the amount of the supersedeas bond, not to parse the effectiveness of the stay against the monetary and non-monetary aspects of the judgment.

are duplicates.[23]  The difference between these appeals is their designation as "appeals of right"
vs. "motions for leave to appeal."  Under the Bankruptcy Rules, a district court may entertain
appeals from interlocutory orders of the bankruptcy courts, if leave is granted.[24]

## II. STANDARD OF REVIEW

The Fifth Circuit has consistently held that the standard of review applicable to
bankruptcy appeals in a district court is the same as the standard applied by a Court of Appeals
to a district court proceeding.  *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989).
Furthermore, Bankruptcy Rule 8013 requires that a bankruptcy court's findings of fact are
subject to clearly erroneous review.  Fed. R. Bankr. P. 8013; *see also, In re Multiponics, Inc.*,
622 F.2d 709, 713 (5th Cir. 1980). Conclusions of law, on the other hand, are reviewed *de novo*.
*Id.*;  *Killebrew*, 888 F.2d at 1519.

---

[23] See n. 2, *supra*.

[24] Generally, a district court should grant leave sparingly, "since interlocutory bankruptcy
appeals should be the exception, rather than the rule." *United States Trustee v. PHM Credit
Corp.* (*In re PHM Credit Corp.*), 99 B.R. 762, 767 (E.D. Mich. 1989).  Regarding appeals, the
Bankruptcy Code states:

> (a) The district courts of the United States shall have jurisdiction to hear appeals
>    (1) from final judgments, orders, and decrees;
>    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11
>    increasing or reducing the time periods referred to in section 1121 of such title;
>    and
>    (3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges
entered in cases and proceedings referred to the bankruptcy judges under section 157 of
this title. An appeal under this subsection shall be taken only to the district court for the
judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a).

### III. LAW & ANALYSIS

As an initial matter, the Court must determine whether the orders appealed from in cases 07-7993, 07-7996, 07-7997, and 07-7998 are interlocutory.  Again, the court notes that the issues presented in 07-7993 and 07-7997 are identical, just as the issues in 07-7996 mirror those in 07-7998.  In 07-7993 & 07-7997, Wells Fargo seeks review of the Bankruptcy Court's dismissal of Wells Fargo's motion to strike a non-party pleading. And, in 07-7996 & 07-7998 Wells Fargo seeks review of the Bankruptcy Court's decision to deny its motion for leave to submit additional evidence or alternatively, to re-open the evidence.

An interlocutory appeal is one that occurs "before the trial court's final ruling on the entire case." BLACK'S LAW DICTIONARY 106 (8th ed. 2004).  In these appeals, Wells Fargo is seeking review of orders entered before a final ruling was entered. Clearly, an order denying a motion to strike is entered before a court's final ruling on the entire case; similarly, an order denying the submission of additional evidence occurs before a court's final ruling.  Thus, Wells Fargo is seeking interlocutory appeals.

As noted above, an appeal from an interlocutory order under 28 U.S.C. § 158(a) may be taken only with the leave of the district court.  Unfortunately, the Bankruptcy Code does not contain any standards to govern whether leave should be granted.  10 COLLIER ON BANKRUPTCY ¶ 8003.03 (15th ed. rev. 2007).  Thus, the standard of 28 U.S.C. § 1292(b), which governs the appeal of interlocutory orders from district courts to courts of appeals, is borrowed.  *Id.*  Section 1292(b) states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance

the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

In *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007), the Fifth Circuit stated that "Title 28, § 1292(b) of the United States Code permits a court to certify an interlocutory appeal where (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation."  In *U.S. v. Garner*, the Fifth Circuit held that "[t]he purpose of § 1292(b) is to provide for an interlocutory appeal in those exceptional cases" where the three part test is satisfied.  *U.S. v. Garner*, 749 F.2d 281 (5th Cir. 1985).

In this matter, interlocutory appeals regarding a dispute over a motion to strike and a denial of a request to submit additional evidence does not satisfy the *Flores* test for appealability. Additionally, the interlocutory appeals present no exceptional circumstances.  *United States Trustee v. PHM Credit Corp.* (*In re PHM Credit Corp.*), 99 B.R. 762, 767 (E.D. Mich. 1989). Therefore, Wells Fargo's Motions to appeal as of right in 07-7993 and 07-7996 are improperly designated.  Additionally, the Court exercises its discretion to deny defendants' request for leave to appeal in 07-7997 and 07-7998.  Merely for completeness, the issues in these appeals are addressed below.


**1. Motion to Vacate**

Wells Fargo's first argument is that Jones violated an affirmative duty to disclose a pending lawsuit during his bankruptcy. Wells Fargo asserts that Jones concealed a suit regarding Vioxx, and thus, the Bankruptcy Court abused its discretion in denying Wells Fargo's Rule 60 motion to vacate the April 13, 2007 judgment. Wells Fargo initially relies on *In re Superior Crewboats*, 374 F.3d 330 (5th Cir. 2004)[25] and *In re Coastal Plains, Inc*., 179 F.3d 197 (5th Cir. 1999) as examples of cases in which debtors failed to disclose personal injury claims.

In response to the motion to vacate, the Bankruptcy Court held that non-disclosure of the Vioxx suit was not material to the April 13, 2007 judgment, and thus, refused to vacate the judgment. Wells Fargo, relying on *Rozier v. Ford Motor Co*., 573 F.2d 1332 (5th Cir. 1978) as Fifth Circuit precedent, asserts that Rule 60 applies to misconduct in withholding information, even when the information is not material, or would not alter the result of a case.[26] In addition, Wells Fargo notes the similarity between the claims that Jones posited against both Merck, the maker of Vioxx, and Wells Fargo, including "mental anguish" and "medical expenses." Wells Fargo argues that Jones's failure to disclose the Vioxx lawsuit precluded Wells Fargo from presenting an affirmative defense.

Furthermore, Wells Fargo argues that the Bankruptcy Court abused its discretion in denying the Rule 60 motion to vacate without conducting an evidentiary hearing. Wells Fargo notes that when a "cognizable claim" was alleged in a Rule 60 motion, the Eighth Circuit

---

[25] *In re Superior Crewboats* discussed the application of judicial estoppel to bar debtors from pursuing a personal lawsuit after failing to disclose the claim in bankruptcy court.

[26] In *Rozier,* the defendant, Ford Motor Co., withheld discoverable materials, in violation of Rule 26. The *Rozier* court held that Ford prejudiced the plaintiff because the concealed material would "have made a difference in the way plaintiff's counsel approached the case or prepared for trial." *Rozier*, 573 F.2d at 1342.

11

reversed a trial court for denying a Rule 60 motion without a hearing.[27]

The Bankruptcy Court did not abuse its discretion by denying Wells Fargo's Rule 60(b) Motion to Vacate.  "The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts." *Hesling v. CSX Transp., Inc*., 396 F.3d 632, 638 (5th Cir. 2005).  The grant or denial of a motion to vacate a judgment under Rule 60(b) is within the sound discretion of the trial court, and will only be reversed upon a showing of abuse of this discretion.  *Blois v. Friday*, 612 F.2d 938, 940 (5th Cir. 1980).  A party seeking relief under Rule 60(b)(3) based on fraud, misrepresentation, or other misconduct "must establish (1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case."  *Hesling,* 396 at 641 (citing *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place*, 62 F.3d 767, 772 (5th Cir. 1995)).

Wells Fargo's argument, based on *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978), is not convincing.  *Rozier* merely re-states the second prong of the *Hesling* test; yet, Wells Fargo has not shown that Jones's failure to disclose his Vioxx lawsuit prevented a full and fair presentation of Wells Fargo's case in the adversary proceeding.  Wells Fargo cites language from *Rozier* to argue that the Bankruptcy Court should not have considered the "materiality" of the failure to disclose.  Indeed, in *Hesling* the Fifth Circuit cites *Rozier* to distinguish the subsections of Rule 60: "Unlike Rule 60(b)(2), 60(b)(3) does not require that the information withheld be such that it can alter the outcome of the case."  *Hesling*, 396 F.3d at 641.  Yet, the Fifth Circuit in *Hesling* upheld the denial of a Rule 60(b)(3) motion because the withheld

[27] Wells Fargo cites *Kansas City Laborers Pension F. v. Paramount*, 829 F.2d 644 (8th Cir. 1987).

12

documents were irrelevant to the issue under consideration.  *Hesling*, 396 F.3d at 642 (noting

"the failure to produce the documents did not affect how Hesling's case was presented to the

court").  Following the Fifth Circuit's determination in *Hesling*, a Rule 60(b)(3) determination

must focus on the withheld information's impact at the beginning of a lawsuit.

     In this case, it appears that Jones failed to disclose a suit that he filed against Merck, the

manufacturer of Vioxx, in violation of his duty to disclose all assets under the Bankruptcy

Code.[28]  Even assuming that Jones violated the duty to disclose, and thus, triggered the first

prong for relief under *Hesling*, the Court does not find that the Bankruptcy Judge abused her

discretion by denying the Motion to Vacate.  Simply, Wells Fargo has not demonstrated that the

alleged misconduct prevented a full and fair presentation of its case.

     Similar to the plaintiff in *Hesling*, Wells Fargo argues unconvincingly that the failure to

disclose the Vioxx litigation precluded Wells Fargo from developing alternative defenses and

arguments.  It is undisputed that Jones's Vioxx suit alleged physical injury after ingesting the

drug, while Jones's adversary proceeding against Wells Fargo alleged recovery overpayments

and violations of the Bankruptcy Code's automatic stay.  Even with the benefit of hindsight,

Wells Fargo has not presented sufficient evidence to connect the Vioxx suit to an alternative trial

strategy in the bankruptcy proceeding.  Therefore, the Court concludes that Wells Fargo's lack of

knowledge about the pending Vioxx suit did not prohibit a full and fair presentation of the issues

surrounding the stay violation.  Consequently, Wells Fargo was not entitled to relief under Rule

60(b)(3).

     Furthermore, Wells Fargo's assertion that the Bankruptcy Court based its decision to

--------

[28] Jones disputes that the duty to disclose encompassed his Vioxx suit because the cause
of action arose post-petition.

deny the Motion to Vacate on an erroneous view of the law is unconvincing.  Wells Fargo argues that the bankruptcy Court's language improperly focused on the Vioxx suit's hypothetical effect on the result of the proceeding: "Debtor's failure or neglect to disclose the Vioxx lawsuit is immaterial and would have no effect on the April 13, 2007 Judgment."[29]  The Bankruptcy Court's characterization of the Vioxx suit as "immaterial," however, is not wholly incompatible with the *Hesling* standard.  Again, the *Hesling* Court investigated whether the withheld information would have altered the uninformed party's trial preparation and presentation. *Hesling*, 396 F.3d at 641-42.  The Bankruptcy Court's statement that the Vioxx case was "immaterial" is similar to stating that disclosure of the Vioxx case would not have affected Wells Fargo's trial presentation.  Because Wells Fargo has not demonstrated a connection between the issues in the Vioxx case and the adversary proceeding, there is insufficient evidence to support Wells Fargo's position.

In addition, Wells Fargo's reliance on *In re Superior Crewboats, Inc*., 374 F.3d 330 (5th Cir. 2004) is misplaced.  *Superior Crewboats* involved the application of judicial estoppel to prevent claimants from establishing a personal injury lawsuit following a bankruptcy case.[30] Therefore, *Superior Crewboats*' holding is not relevant to the adversary proceeding between Jones and Wells Fargo, but only to Jones's ability to recover in the Vioxx case.  Finally, the Bankruptcy Court did not commit reversible error by failing to conduct an evidentiary hearing on

---

[29] Bankruptcy Case No. 06-01093, Rec. Doc. 143.

[30] Essentially, *Superior Crewboats* holds that debtors cannot recover pre-petition personal injury claims if the debtors failed to disclose the cause(s) of action to their creditors during bankruptcy proceedings.  *In re Superior Crewboats, Inc*., 374 F.3d at 335 (applying judicial estoppel because "omission of the personal injury claim from their mandatory bankruptcy filings is tantamount to a representation that no such claim existed.")

the Motion to Vacate because Wells Fargo did not present a cognizable claim under Rule 60.

### 2. $67,202.45 in Attorney's Fees and Costs

Wells Fargo claims that the Bankruptcy Court abused its discretion in awarding Jones $67,202.45 in attorney's fees and costs. Wells Fargo claims that the award for sanctions and damages is a *de facto* award of attorney's fees. Essentially, Wells Fargo asserts that there was no factual basis for an award of $67,202.45. Citing *Pembrook v. Gulf Oil Corporation*, 454 F.2d 606 (5th Cir. 1971), Wells Fargo notes that the Fifth Circuit reversed an award for fees due to an absence of proof that the fees were paid, or that the obligation to pay had arisen. In the alternative, Wells Fargo argues that the award of $67,202.45, if imposed as a sanction for violating the automatic stay, is improper. Finally, Wells Fargo avers that the award of $67,202.45 is excessive because the Bankruptcy Court failed to properly apply the Lodestar Method in determining the award.

On August 29, 2007, the Bankruptcy Court entered an "Amended Judgment" on the record, awarding $67,202.45 as "sanctions and damages." Bankruptcy Case No. 06-1093, Rec. Doc. 154. Wells Fargo asserts that there was no factual basis for an award of $67,202.45. In opposition, Jones asserts that the Bankruptcy Judge was required to impose costs under the Bankruptcy Code, 11 U.S.C. § 362. Additionally, Jones seeks an award of attorney's fees and costs in association with resisting Wells Fargo's appeals under Bankruptcy Rule 8013. The Bankruptcy Code gives debtors the right to sue for violations of the automatic stay, "specifying that [a]n individual injured by any willful violation of a stay provided by this section **shall recover** actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *In re Chestnut*, 422 F.3d 298, 302 (quoting 11

15

U.S.C. § 362(h), which is now 11 U.S.C. § 362(k)) (internal quotations omitted) (emphasis

added).  Wells Fargo's reliance on *Pembroke* appears to be misplaced.  *Pembroke* states:

> No direct, affirmative evidence of what amount would reasonably compensate the
> attorneys for their participation was introduced at trial. It is well settled that in
> cases in which attorneys fees are allowed, absence of proof that fees have been
> paid or that an obligation has been incurred to pay defeats recovery. The complete
> absence of proof on this issue is, therefore, dispositive and fully supports the
> district court's judgment.

*Pembrook v. Gulf Oil Corporation*, 454 F.2d 606, 613 (5th Cir. 1971).  First, *Pembroke* was a

breach of contract case; it did not involve the awarding of attorney's fees or costs under Section

362 of the Bankruptcy Code.  However, even applying *Pembroke* to this matter does not support

Wells Fargo's position.  First, the facts of this case are in direct contrast to those of *Pembroke*.

In *Pembroke*, "[n]o direct, affirmative evidence of what amount would reasonably compensate

the attorneys for their participation was introduced at trial."  In contrast, counsel for Jones **and**

counsel for Wells Fargo submitted time sheets and bookkeeping records to assist the Bankruptcy

Court in fashioning a reasonable award.  Bankruptcy Case No. 06-1093, Rec. Docs. 75 & 110.

Thus, evidence of the legal fees incurred by both parties were available for the Bankruptcy

Court's review and assisted the Bankruptcy Judge in finding that $67,202.45 was a reasonable

award.

　　　　In addition, Wells Fargo relies on *In re Hutchings*, 348 B.R. 847 (Bkrtcy.N.D.Ala. 2006)

to argue that only the person who actually paid or incurred the obligation to pay costs and

attorney's fees may recover under Section 362 of the Bankruptcy Code.  Wells Fargo asserts that

Jones did not prove that he actually paid or incurred the obligation to pay attorney's fees, and

thus, the $67,202.45 award is improper under *Hutchings*.  This Court finds that *Hutchings* is not

directly applicable because the debtor in that case was not "injured" by the creditor's stay

violation when the creditor merely contacted debtor via mail and telephone.  *In re Hutchings*, 348 B.R. at 881.[31]  The *Hutchings* court stated, "because [debtor] was not injured by [creditor's] stay violation, [debtor] is not entitled, under section 362(h), to recover any of the costs and expenses, including attorneys fees, which he has incurred in maintaining said action."  Clearly, the posture of this matter is opposite that of *Hutchings* because the Bankruptcy Court determined Jones was injured by Wells Fargo's willful stay violations.  *In re Jones*, 366 B.R. at 600 (finding injury to Jones because "Wells Fargo charged Debtor's account with unreasonable fees and costs.").  Consequently, the statements in *Hutchings* regarding the recovery of attorney's fees are not on point.

Moreover, the Fifth Circuit has ruled that the submission of legal invoices is sufficient evidence to affirm a district court's fee award.  *K3C Inc. v. Bank of America, N.A.*, 204 Fed.Appx. 455, 467 (5th Cir. 2006).  Upon reviewing the affidavits submitted by counsel for Jones and counsel for Wells Fargo, the Court finds sufficient evidence of legal invoices, billing, and record keeping to uphold the Bankruptcy Court's award.  Consequently, Wells Fargo has failed to show that the Bankruptcy Court abused its discretion by awarding $67,202.45 as costs and fees under Section 362 of the Bankruptcy Code.

In the alternative, Wells Fargo avers that the award of $67,202.45 is excessive because the Bankruptcy Court failed to properly apply the Lodestar Method in determining the award. Wells Fargo relies on *Saizan v. Delta Concrete Products Co., Inc*., 448 F.3d 795 (5th Cir. 2006)

---

[31] *In re Hutchings* noted, "(1) [creditor] placed eight to ten telephone calls to [debtor] relating to the collection of his mortgage debt; (2) as a result of those calls [creditor's] representatives had five conversations with [debtor] relating to the collection of his mortgage debt; and (3) [creditor] sent five items of correspondence to [debtor] relating to the collection of his mortgage debt. [Creditor] admits as much, and this Court concludes, that those ten or so contacts constituted violations of the automatic stay."

to note that an award of attorney's fees has to be reasonable.  In addition, Wells Fargo cites

*Johnson v. Georgia Highway Express, Inc*., 488 F.2d 715 (5th Cir. 1974) to argue that the Fifth

Circuit generally applies the "Lodestar Method" to calculate attorney's fee awards.

Neither *Saizan* not *Johnson* are bankruptcy cases.  *Saizan* was a Fair Labor Standards Act

("FLSA") case in which the Fifth Circuit noted, "[u]nder the [FLSA], the District Court **may**

award reasonable attorney's fees to the prevailing party." *Saizan*, 448 F.3d at 799 (emphasis

added).  *Johnson* was a Title VII race discrimination case in which the Fifth Circuit noted, "In

any action or proceeding under [Title VII] the Court, in its discretion, **may** allow the prevailing

party ... a reasonable attorney's  fee as part of the cost of the litigation."  *Johnson*, 488 F.2d at

716 (emphasis added).  The language of the FLSA and Title VII allowing for the possibility of

attorney's fees appears to be substantially different from the language of the Bankruptcy Code

which requires the award of attorney's fees.[32]  However, a review of the record demonstrates that

the Bankruptcy Judge properly applied the *Johnson* factors to this matter.

First, the Bankruptcy Judge noted that Jones's counsel charged a reasonable and

"customary rate for bankruptcy litigation" of $175 and then $200 per hour, which was then

multiplied by 350.90 (the total number of hours worked).[33]  In addition, the Bankruptcy Judge's

Supplemental Memorandum Opinion weighed the *Johnson* factors as follows:

---

[32] Again, Section 362 states, "[a]n individual injured by any willful violation of a stay
provided by this section **shall recover** actual damages, including costs and attorneys' fees, and,
in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k).

[33] Bankruptcy Case No. 06-1093, Rec. Docs. 75 and 153.  Rec. Doc. 75 lists the
attorney's fees incurred from February 20, 2006 through April 25, 2007, and shows 350.90 as the
total number of hours billed during that period.  Rec. Doc. 153 is a Supplemental Memorandum
Opinion, signed August 29, 2007, finding that the time Jones's counsel spent on the case was
high, "but not unreasonably so."  Rec. Doc. 153, p. 6-7.

> The issues involved [in this case] were novel, difficult, complex, and ones of first impression in this district. As a result, the issues presented required a level of expertise in bankruptcy not generally possessed by those with general litigation skills. Although the issues were complex and the litigation of this matter was time consuming, there is no evidence before the Court to suggest that Debtor's counsel actually turned away clients due to the acceptance of this case. However, the Court notes that Debtor's counsel is a small firm, and Debtor's counsel did spend a considerable amount of time on the case. Perhaps the most important factor concerns the results obtained. The Court entered a Partial Judgment in the amount of $16,852.01 for unreimbursed overcharges on Debtor's loan. While the amounts obtained are relatively small, particularly in relation to the fees generated, the importance of the issues settled by this litigation are significant and far reaching. The conduct of Wells Fargo is neither limited to this case nor unique to this lender. Therefore, this decision will have ramifications on many other cases pending in the district and perhaps beyond.

Bankruptcy Case No. 06-1093, Rec. Doc. 153, p. 8.  Accordingly, Wells Fargo has failed to demonstrate that the $67,202.45 was an excessive sanction under the circumstances.

### 3. MOTION TO REOPEN

Wells Fargo claims that the Bankruptcy Judge abused her discretion by denying a Motion to Reopen the Evidence.  Wells Fargo avers that the Fifth Circuit requires a court to re-open and admit "conclusive evidence."  Further, Wells Fargo asserts that a payoff letter, dated July 21, 2005, was conclusive evidence in support of Wells Fargo's position.  Wells Fargo relies on *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697 (5th Cir. 1955), *Capital Marine Supply, Inc., v. M/V ROLAND THOMAS, II*, 719 F.2d 104 (5th Cir. 1983) and *Caracci v. Brother Intern. Sewing Mach. Corp. of LA*, 222 F.Supp. 769 (E.D.La. 1963) to assert that the Bankruptcy Court abused her discretion.

However, the controlling Fifth Circuit precedent regarding the extent of a trial court's discretion to re-open evidence is contained in *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810 (5th Cir. 1996).  The factors discussed in *Garcia* were applied by the Bankruptcy Court in its

Order Denying the Motion to Submit Additional Evidence or Reopen the Evidence.  Bankruptcy

Case No. 06-1093, Rec. Doc. 137.  As the Fifth Circuit stated in *Garcia* "[a]mong the factors the

trial court should examine in deciding whether to allow a reopening are the importance and

probative value of the evidence, the reason for the moving party's failure to introduce the

evidence earlier, and the possibility of prejudice to the non-moving party."  *Garcia*, 97 F.3d at

814.  *Garcia* also notes, "Trial courts as a rule act within their discretion in refusing to reopen a

case where the proffered 'new' evidence is insufficiently probative to offset the procedural

disruption caused by reopening."  *Id.* (quoting *Rivera-Flores v. Puerto Rico Telephone Co.*, 64

F.3d 742, 746 (1st Cir.1995)).  Finally, *Garcia* states: "Should a district court conclude that a

litigant is engaging in any form of chicanery, it properly denies the motion. The same result

obtains where the litigant was negligent in failing to introduce the evidence."  *Id.*

 In this matter, the Bankruptcy Court specifically found that "Wells Fargo was negligent

... and that it has failed to provide a bona fide reason for its failure to introduce the document in a

timely manner."  Bankruptcy Case No. 06-1093, Rec. Doc. 137, p. 2.  Because the Bankruptcy

Court found Wells Fargo to be negligent regarding the 2005 payoff letter, Wells Fargo has not

provided sufficient evidence to demonstrate that the Bankruptcy Judge abused her discretion by

denying Wells Fargo's motion to reopen under *Garcia*.

 Moreover, Wells Fargo's reliance on *Ferrell v. Trailmobile* 223 F.2d 697 (5th Cir. 1955)

is misplaced.  In *Ferrell*, the Fifth Circuit stated, "conclusive evidence" should be admitted post-

trial because "the ends of justice may require granting a new trial even though proper diligence

was not used to secure such evidence for use at the trial."  *Id.* at 698.  That statement appears to

be at odds with the Fifth Circuit's statement in *Garcia* that a court properly denies a motion to

reopen "where the litigant was negligent in failing to introduce the evidence." *Garcia*, 97 F.3d at 814. Wells Fargo's reliance on *Ferrell* appears to be misplaced because *Ferrrell* discussed a Rule 60 motion for a new trial, whereas *Garcia* directly addressed the standards regarding motions to reopen.

Furthermore, the payoff letter does not appear to be "conclusive evidence" under *Ferrell*. The Court notes that in *Ferrell*, the untimely submitted evidence was deemed "conclusive evidence" because it showed that defendant was not liable to plaintiff (plaintiff untimely submitted conclusive evidence that he had already paid defendant the amount due).  In contrast, Wells Fargo does not suggest that the payoff letter is conclusive proof that it did not violate the automatic stay.  Indeed, Wells Fargo merely suggests that the letter is evidence that the Voluntary Payment Doctrine should apply.  The Court is not convinced that the Voluntary Payment Doctrine applies, nor that the application of the Voluntary Payment Doctrine would immunize Wells Fargo from liability for violating the Bankruptcy Code's automatic stay.

The Voluntary Payment Doctrine requires that a debt be actually owed between debtor and creditor.[34]  In this case the Bankruptcy Judge found that Wells Fargo collected "Sheriff's Fees" from Jones even though the Sheriff testified that the fees were improperly collected.  *In re Jones*, 366 B.R. 584, 601 n. 68 (Bkrtcy.E.D.La. 2007).  Because the Voluntary Payment Doctrine was rejected by the Bankruptcy Judge, and there is evidence that the doctrine is simply not applicable, Wells Fargo's assertion that the 2005 payoff letter is admissible under *Ferrell's* "conclusive evidence" standard is not convincing.  Thus, Wells Fargo's argument that the

---

[34] *See e.g., In re Ark-La-Tex Timber Co., Inc*., 482 F.3d 319 (5th Cir. 2007) (noting "A person who has received a payment of a thing not owed him is bound to restore it to the person from whom he received it.") (quoting La. Civ.Code Ann. art. 2299).

Bankruptcy Court committed reversible error for failing to admit evidence regarding a possible

defense, not an absolute defense, is unconvincing under *Ferrell*.

Finally, Wells Fargo asserts that the Bankruptcy Court erred in failing to hold an

evidentiary hearing regarding the motion to reopen.  Wells Fargo relies on *Matter of First*

*Colonial Corp. Of America*, 544 F.2d 1291 (5th Cir. 1977) to assert that a court abuses its

discretion by canceling an evidentiary hearing when one party is attempting to prove a historical

fact.  *Matter of First Colonial Corp. of America* states:

> Determining a reasonable attorneys' fee is a three-step process. In the first phase,
> the bankruptcy judge or district court must ascertain the nature and extent of the
> services supplied by the attorney. To this end, each attorney seeking
> compensation should be required to file a statement which recites the number of
> hours worked and contains a description of how each of those hours was spent. If
> there are disputed issues of fact, an evidentiary hearing must be held to facilitate
> their resolution.

*Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1299-1300 (5th Cir. 1977).

Again, Wells Fargo errs in taking the Fifth Circuit's language out of context and applying

it to the matter under review.  As quoted above, *Matter of First Colonial Corp. of America*

requires an evidentiary hearing to determine attorney's fees.  The Bankruptcy Court held an

evidentiary hearing regarding attorney's fees on May 29, 2007.  Bankruptcy Case No. 06-1093,

Rec. Docs. 109 & 137.  Therefore, the Bankruptcy Court complied with the mandate of *Matter of*

*First Colonial Corp. of America*.  Wells Fargo's assertion that the Bankruptcy Court erred under

*Matter of First Colonial Corp. of America* because it failed to hold an evidentiary hearing

regarding a motion to reopen is too broad a reading of *Matter of First Colonial Corp. of*

*America's* text.  Thus, the Court does not find reversible error in Wells Fargo's assertion

regarding the failure to conduct an evidentiary hearing with respect to its motion to reopen.

22

## 4. INTERPRETATION OF THE BANKRUPTCY COURT'S ORDERS

Wells Fargo claims that the Bankruptcy Court improperly threatened counsel for Wells Fargo with sanctions for arguing a particular interpretation of the Bankruptcy Court's previous orders.  Wells Fargo argues that the Bankruptcy Court's judgment must be vacated because the Judge's threat infringed Wells Fargo's due process rights.  During the bankruptcy proceedings, counsel for Wells Fargo and the Bankruptcy Judge disagreed about Wells Fargo's entitlement to collect the amount shown on Wells Fargo's proof of claim versus the amount due under the mortgage.  The Bankruptcy Judge stated that she did not authorize Wells Fargo to collect "hidden charges."  In addition, the Bankruptcy Judge stated that Wells Fargo would "have to come in and prove up their debt before . . . authoriz[ing] a dime to them."  Wells Fargo construes the exchange as a threat of future sanctions for merely advancing a reasonable argument.

After a thorough review of the transcript, it appears that counsel for Wells Fargo and the Bankruptcy Judge disagreed about the holding of *Nobleman v. American Savings Bank*, 508 U.S. 324 (1993).  During the allegedly threatening exchange, the Bankruptcy Judge stated that Wells Fargo should have filed an amended "proof of claim" so that the Bankruptcy Court could have approved the amount that Wells Fargo was attempting to collect.  Counsel for Wells Fargo replied, "Well, there's no requirement that the creditor provide such an accounting." and the Bankruptcy Court responded, "I disagree. I disagree. I think there is an absolute requirement under the Bankruptcy Code that legal fees be approved by this Court post-petition, that the reasonableness of the charges be approved that are discretionary. I don't have to rely on Wells Fargo's complete and total discretion on whether a charge is reasonable or not."  Bankruptcy Case No. 06-1093, Rec. Doc. 49, Transcript of Proceedings held January 5, 2007, p. 345-46.

23

Wells Fargo relies on *Armstrong v. Office of the President*, 1 F.3d 1274 (D.C. 1993) and *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc*., 793 F.2d 1529 (11th Cir. 1986)  to assert that the threat of future sanctions is an absolute denial of due process.  However, in *Armstrong*, the trial court placed the appellant under an "conditional" contempt order, and in *Sizzler*, the trial court ordered a "prospective fine schedule."  *Armstrong*, 1 F.3d at 1289; *Sizzler*, 793 F.2d at 1534 n. 2.

The facts in this case do not remotely align with *Armstrong* or *Sizzler*.  The Bankruptcy Court neither threatened to invoke its contempt powers, nor issued a "prospective fine."  A review of the transcript demonstrates that counsel for Wells Fargo and the Bankruptcy Court disagreed about a substantive issue of law, and that the Bankruptcy Judge warned that she would rigorously review Wells Fargo's future filings with her court based on the disagreement regarding the underlying law.  Wells Fargo's analogy to *Armstrong* and *Sizzler* is unfounded, and thus, there are no grounds for finding a due process violation.

### 5. *NOBLEMAN*, THE ANTI-MODIFICATION RULE AND AN ALLEGED CONFLICT BETWEEN SECTION 506 AND SECTION 1322

Wells Fargo claims that the Bankruptcy Court committed reversible error because it did not have the power to modify Wells Fargo's rights to recover interest and inspection fees because these expenses were controlled by the mortgage agreement.  However, Wells Fargo's claim of error misstates the grounds upon which the Bankruptcy Court ruled.

Wells Fargo argues that the Bankruptcy Court erred in awarding Jones $16,852.01 under § 506 because § 1322 contains an anti-modification rule.  Relying on *Nobleman v. American Savings Bank*, 508 U.S. 324 (1993), Wells Fargo claims that it was an oversecured creditor, and that its rights under the mortgage could not be modified.  Essentially, Wells Fargo argues that the

24

Bankruptcy Court committed reversible error because it did not have the power to modify Wells Fargo's rights to recover interest and inspection fees because these expenses were controlled by the mortgage agreement.  Wells Fargo relies on *Nobleman v. American Savings Bank*, 508 U.S. 324 (1993)[33] to assert that bankruptcy courts cannot modify the rights of secured creditors.  In addition, Wells Fargo points to the Eleventh Circuit's opinion in *Telfair v. First Mortgage Corp.*, 216 F.3d 1333, 1337 n. 8 (11th Cir. 2000) as support for the position that the collection of attorney's fees during and after discharge in a Chapter 13 case is allowed.

In *Nobleman*, the Supreme Court considered the question of whether a partially-secured claim secured by a homestead lien could be bifurcated into its secured and unsecured components, and "stripped down" to the value of the secured claim. The debtors argued that, under § 506(a), the holder of an undersecured mortgage - for which the value of the claim exceeds the value of the property - only holds a "secured claim" to the extent of the value of the property, and holds an "unsecured claim" for the excess value of the mortgage.  Because § 1322(b)(2) only protects the rights of "holders of secured claims," they maintained that only the secured portion of the mortgage was entitled to protection and, therefore, that the value of the mortgage could be effectively reduced to its secured value.

The Supreme Court rejected this approach of bifurcation and stripping down, primarily because the debtors' argument failed to consider the fact that § 1322(b)(2) focuses on the modification of the rights of holders, not the status of claims.  Although the Court found that it

---

[33]  *Nobleman* discusses the interaction of a secured creditor's "rights" in relation to Sections 506 and 1322(b) of the Bankruptcy Code.  The Supreme Court noted that the contractual rights of a home mortgage lender are subject to the Bankruptcy Code.  *Nobleman*, 508 U.S. at 330-31 (stating, "[t]he lender's power to enforce its rights-and, in particular, its right to foreclose on the property in the event of default-is checked by the Bankruptcy Code's automatic stay provision.").

was proper to look to § 506(a) for a judicial valuation of the collateral, the creditor was still the

holder of a secured claim.  Therefore, it was entitled to the protections of the anti-modification

clause.

Further consideration of the Supreme Court's interpretation of § 1322(b)(2) is necessary.

In *Nobleman*, the Fifth Circuit concluded that "section 1322(b)(2) appears to conflict with

section 506(a)," and resolved the conflict in favor of § 1322(b)(2).  *Nobleman v. Am. Sav. Bank*

(*In re Nobleman*), 968 F.2d 483, 488 (5th Cir. 1992).  However, the Supreme Court took a

different approach, giving effect to both statutes in its interpretation of "claim" in the

antimodification clause.  The Supreme Court found that "claim secured only by" is not

equivalent to the term of art "secured claim."  *In re Zimmer*, 313 F.3d 1220, 1225 (9th Cir.

2002).  "Instead, noting that  § 506(a) itself uses the phrase 'claim ... secured by a lien' to

encompass both portions of an undersecured claim, the Court found that the antimodification

clause similarly applied to both the unsecured and secured components of the mortgage claim."

*Id.*

Neither the facts, nor law discussed in *Nobleman* appear to be applicable to this matter.

In this case, the Bankruptcy Court did not modify Wells Fargo's rights under the adjustable rate

mortgage between Wells Fargo and Jones.  Instead, the Bankruptcy Court found that Wells

Fargo violated the Bankruptcy Code's automatic stay because Wells Fargo applied funds

obtained from Jones and the Trustee to both pre- and post-petition debt.  Specifically, the

Bankruptcy Court ruled that "Wells Fargo applied [Jones's] direct postpetition installment

payments to those payments owed prepetition" in derogation of the terms of the plan.  *In re*

*Jones*, 366 B.R. at 589.  In addition, the Bankruptcy Court found that Wells Fargo's accounting

26

procedures "failed to recognize that prepetition charges, fees, and missed payments were to be separately paid by the Trustee under the plan and did not bear interest." *Id.* Furthermore, the Bankruptcy Court found that Wells Fargo's proof of claim overstated the costs that were actually incurred. *Id.* at 591 (noting that Wells Fargo listed $1,283.87 in prepetition foreclosure costs, but that the testimony at trial demonstrated that the actual amount was $743.87). The Bankruptcy Court also noted Wells Fargo's admission that it "had collected sums in excess of the amounts necessary to satisfy the loan." *Id.* at 588 (referencing a January 12, 2006 letter from Wells Fargo to Jones).

Additionally, the Bankruptcy Court found that Wells Fargo "added to its prepetition arrearage without amendment to its proof of claim or disclosure to the Trustee or Court." *Id.* at 592. And, Wells Fargo inappropriately applied "postpetition installments . . . to prepetition installments, prepetition costs or fees, and postpetition charges not authorized or disclosed to [Jones], the Court, or the Trustee." *Id.* at 593. Specifically, the Bankruptcy Court determined that Wells Fargo improperly applied the post-petition payment for September 2003 to the pre-petition January 2003 installment. *Id.* Because "the Trustee was already scheduling payments to Wells Fargo to satisfy [the] earlier payments," and thus, "Wells Fargo denied [Jones] the benefit of the lower [interest] rate by collecting two installments at the higher rate." *Id.*

Indeed, the Bankruptcy Court stated that Wells Fargo may have been entitled to the post-petition charges incurred prior to confirmation, but found that the failure to disclose the charges for a "reasonableness" review was error, citing *Rake v. Wade*, 508 U.S. 464 (1993), Section 506, and Bankruptcy Rule 2016. *In Re Jones*, 366 B.R. at 594 n. 40 (and accompanying text). Moreover, the Bankruptcy Court stated that Wells Fargo "offered no evidence as to the nature of

the fees or their reasonableness" at trial.  *Id.* at 595.  Next, the Bankruptcy Court held "[b]ecause Wells Fargo has not only charged [Jones's] account with undisclosed post confirmation charges, but satisfied those charges with estate funds delivered to it to pay other debt, there can be no doubt that Wells Fargo's assessment of post confirmation attorney's fees and expenses directly relates to [Jones's] estate."  *Id.*  Finally, the Bankruptcy Court held:

> The contractual right to seek reimbursement is not the equivalent of a right to collect an undisclosed charge from the estate. While Wells Fargo argues that the accrual of fees is not a violation of the automatic stay, the application of estate funds to their payment without Court authority is clearly a violation. In this instance, Wells Fargo assessed and paid itself for additional pre and postpetition charges from payments designed to satisfy a prepetition arrearage contained in its proof of claim and accruing postpetition installment payments. The payments were tendered by [Jones] or Trustee for the specific purposes outlined in [Jones's] plan and authorized by the Order confirming same. Wells Fargo had absolutely no right to divert these payments to other obligations without Court authority.

*In re Jones*, 366 B.R. at 600.

Based on all of the above, it appears that the Bankruptcy Court found Wells Fargo in violation of Bankruptcy Code's automatic stay because Wells Fargo failed to implement the proper procedures for obtaining the funds it used to satisfy the accruing charges.  Therefore, Wells Fargo's assertion that the Bankruptcy Court modified Wells Fargo's rights in violation of *Nobleman* and Section 1322(b)(2) is a false argument.

Wells Fargo's final argument concerning this issue relies on *Matter of Howard*, 972 F.2d 639 (5th Cir. 1992).  Wells Fargo asserts that overly secured mortgage holders may actually ignore the Bankruptcy Court and demand payments outside the plan.  This statement is supported by the Fifth Circuit's conclusion in *Matter of Howard*, but only under certain conditions:

> We conclude that a Chapter 13 plan which purports to reduce or eliminate a creditor's secured claim is res judicata as to that creditor only if the debtor has filed an objection to the creditor's claim. If no objection is filed to a secured

> claim, the creditor is entitled to rely upon its lien and not participate in the
> bankruptcy proceedings.

*Matter of Howard*, 972 F.2d 639, 639 (5th Cir. 1992).  However, the facts of *Howard* do not

align with this matter.  In *Howard*, the secured creditor filed a proof of claim before the

confirmation hearing.  *Howard*, 972 F.2d at 640.  The debtors did not file an objection to the

proof of claim.  *Id.*  The creditor did not participate in the confirmation proceedings beyond

filing its proof of claim, and no objection was made to the plan's confirmation.  *Id.*

In contrast to *Howard*, the debtor in this matter objected to Wells Fargo's payoff letter;

indeed, Jones initiated the underlying adversary proceeding to recover monies from Wells Fargo.

Because Jones objected to Wells Fargo's acquisition of funds in this matter, *Howard* is

inapplicable.  Further evidence of *Howard's* inapplicability is that *Howard* focused on the *res

judicata* effect of plan confirmation, not the creditors miscalculation of amounts due, nor

possible violations of the automatic stay for misapplying funds to prepetition and postpetition

debts.


### 6. BURDEN OF PROOF

Wells Fargo claims that the Bankruptcy Court misplaced the burden of proof.  Wells

Fargo asserts that Jones, as the Plaintiff in the adversary action, had to carry the burden of proof

by clear and convincing evidence.  Wells Fargo alleges that the Bankruptcy Court, however,

improperly placed the burden of proof on the defendant.

In contrast, Jones asserts that the Bankruptcy Court acknowledged that Jones, as plaintiff

in the adversary proceeding, carried the burden of proof.  Jones argues that Wells Fargo has

"distort[ed] the concept of burden of proof."  Rec. Doc. 48, p. 46.  Jones states that the burden of

proof has two components: 1) the burden of producing evidence; 2) the burden of persuasion.

Jones avers that the burden of persuasion always rests with the plaintiff, but that the burden of

production may shift between parties.

In the Memorandum Opinion dated April 13, 2007, the Bankruptcy Court stated, "Wells

Fargo simply failed to meet its burden of proof" regarding the reasonableness of the fees it

imposed on Jones.  *In re Jones*, 366 B.R. at 595 (citing *In re Ransom*, 361 B.R. 895

(Bankr.D.Mont.2007) (noting creditor has burden of proof to establish the reasonableness of fees

and costs); *see also In re Hudson Shipbuilders Inc.*, 794 F.2d 1051 (5th Cir. 1986)).  The

Bankruptcy Court also held that "[u]nder Louisiana law, the creditor bears the burden of

establishing its debt."  *Id.* at 597.  The Bankruptcy Court provided the following explanation for

its determination that Wells Fargo was not entitled to post-confirmation attorney's fees:

> At trial, Wells Fargo offered no evidence as to the nature of the attorney's fees
> imposed post confirmation or their reasonableness. It neglected to produce
> invoices identifying the counsel who performed the services or any description
> regarding the services performed, time spent, or amounts charged. As a result, the
> Court cannot determine the reasonableness of the fees incurred because the Court
> was given no evidence as to what services were performed, much less, why they
> were necessary. Wells Fargo simply failed to meet its burden of proof on this
> issue. Therefore, the attorney's fees not previously approved by the Court and
> identified on Wells Fargo's accounting as owed post confirmation are denied.

*In re Jones*, 366 B.R. at 597.  The Bankruptcy Court also referenced this issue when it stated,

"Wells Fargo bears the burden of establishing that the charges it seeks to impose against

Debtor's loan are reasonable.  Based on the testimony of Wells Fargo and the inspection reports

offered into evidence, this Court concludes that Wells Fargo has failed to meet its burden."  *Id.* at

598.

The Bankruptcy Court also addressed Wells Fargo's claim that the burden of proof had

been improperly shifted at trial in its "Reasons for Order Denying Motion for Reconsideration of

Judgment." *In re Jones*, 2007 WL 1302549 (Bkrtcy.E.D.La. May 1, 2007).  In response to Wells

Fargo's motion for reconsideration, the Bankruptcy Court held:

> Upon review the Opinion and record, the Court finds that it properly placed the
> initial burden of proof on Jones. Jones met his burden by presenting testimony
> and evidence that demonstrated Wells Fargo improperly applied payments and
> caused Jones to pay more than required under the terms of his Note and
> Mortgage. After this point was established, Wells Fargo was given the
> opportunity to explain the obvious errors in its accounting and ultimately the
> calculation of its claim. It did not. The initial burden was properly placed upon
> Jones to establish errors in the calculation of the Wells Fargo debt. That burden
> was met based on documentary evidence, including accounting records and
> testimony supplied by Wells Fargo.
>
> Additionally, the evidence showed that Wells Fargo assessed and collected
> postpetition charges without notifying the Court, Trustee, Jones, or his counsel;
> this factual finding was acknowledged by Wells Fargo. Once this was established,
> Wells Fargo was required to demonstrate that the fees or costs imposed were
> reasonable.

*In re Jones*, 2007 WL 1302549 at *1-*2.

The Supreme Court has noted:

> For many years the term 'burden of proof' was ambiguous because the term was
> used to describe two distinct concepts. Burden of proof was frequently used to
> refer to what we now call the burden of persuasion-the notion that if the evidence
> is evenly balanced, the party that bears the burden of persuasion must lose. But it
> was also used to refer to what we now call the burden of production-a party's
> obligation to come forward with evidence to support its claim.

*Director, Office of Workers' Compensation Programs, Dept. of Labor v. Greenwich Collieries*,

512 U.S. 267, 272 (1994).  In *Greenwich Collieries*, the Supreme Court made an attempt to

clarify the phrase "burden of proof" by describing an "emerging consensus" on the term's

definition.  *Id.*  The Supreme Court quoted several evidence treatises for the proposition that

"[t]he burden of proof is the obligation which rests on one of the parties to an action to persuade the trier of the facts, generally the jury, of the truth of a proposition which he has affirmatively asserted by the pleadings." *Id.* at 275.  In addition, the Court wrote that the "party with the burden of proof bears the 'burden of persuasion,' though the opposing party may bear a burden to 'go forward with evidence.'" *Id.* at 274-75 (citing *Commercial Molasses Corp. v. New York Tank Barge Corp*., 314 U.S. 104, 111 (1941)).

The Fifth Circuit has stated: "It is recognized that as to any given issue the burden of persuasion and the burden of production of evidence generally both fall on the same party at the beginning of trial, that the burden of persuasion does not thereafter shift, but that the burden of production may shift back and forth as each side produces evidence, takes advantage of presumptions or the like." *Simpson v. Home Petroleum Corp*., 770 F.2d 449, 503 (5th Cir. 1985).  In *Simpson*, the Fifth Circuit quoted heavily from Ray, *Texas Law of Evidence* § 96 (3rd ed. 1980):

> It is the generally accepted view of courts [citing twelve Texas cases in a footnote] and textbook writers, including Professors Wigmore and Thayer, that the burden of persuasion never shifts. We have already seen that considerations of fairness and policy based on experience ultimately determine which party shall have this burden on each issuable fact. These considerations are usually disclosed by the pleadings. Thus, before the trial begins, the location of the burden is fixed. The view that this burden never shifts, but remains upon the same party throughout the trial, is based upon considerations of practical convenience.
>
>        \*     \*     \*     \*     \*
>
> In contrast with the accepted view that the burden of persuasion remains on the same party throughout the trial, it is everywhere agreed that the other burden, i.e., the burden of producing evidence (called by the Texas courts the burden of introducing evidence, the burden of evidence, and the weight of the evidence), may and often does shift back and forth between the parties like a tennis ball in play.... A party cannot be sure beforehand when it will be cast upon him or when

it will be discharged or the amount of kind of evidence necessary to remove it, except, of course, where a presumption has by precedent been given that effect.

*Simpson*, 770 F.2d at 503.

Based on the above, it appears that the Bankruptcy Court complied with "generally accepted view" regarding the burdens of persuasion and production, as described by the Supreme Court and the Fifth Circuit.  The Bankruptcy Court found that Jones produced evidence to demonstrate a prima facie case of a stay violation.  *In Re Jones*, 2007 WL 1302549 at *2 Bkrtcy.E.D.La. 2007) (stating "Jones was able to demonstrate that Wells Fargo violated the automatic stay when it applied payments from property of the estate to satisfy undisclosed fees and charges without Court authority.").  Wells Fargo was given the opportunity to explain the obvious errors in its accounting, but the Bankruptcy Court could not "determine the reasonableness of the fees incurred because the Court was given no evidence as to what services were performed, much less, why they were necessary."  *In re Jones*, 366 B.R. at 597.  Thus, Jones met the initial burden of production; however, Wells Fargo could not hit the "tennis ball" back over the net because they did not meet their burden of production.  Because Wells Fargo could not adequately explain its accounting procedures, Jones was able to succeed on the ultimate burden of persuasion.  Accordingly, Wells Fargo's claim that the Bankruptcy Court improperly shifted the burden of proof lacks merit.

### 7. BANKRUPTCY COURT'S CALCULATIONS

Again, Wells Fargo argues that the terms of the mortgage agreement cannot be modified by a bankruptcy judge.  Wells Fargo claims that the Bankruptcy Court erred in applying simple interest calculations to the amounts due.  Indeed, Wells Fargo asserts that a 360-day amortization method is the proper procedure of accounting under the terms of the mortgage.  Moreover, Wells

Fargo avers that the Bankruptcy Judge erred by performing any calculations because the judge should have relied on expert testimony, instead of applying her own knowledge of accounting to the matter.  In addition, Wells Fargo asserts that the Bankruptcy Judge erroneously acted as Jones's expert, and compounded the error by refusing Wells Fargo's request to rebut with an outside expert.

### A. Simple Interest

Wells Fargo's assertion that the Bankruptcy Court violated the anti-modification rule is discussed, analyzed, and disposed of above.  Again, the Bankruptcy Court held:

> the contractual right to seek reimbursement is not the equivalent of a right to collect an undisclosed charge from the estate. While Wells Fargo argues that the accrual of fees is not a violation of the automatic stay, the application of estate funds to their payment without Court authority is clearly a violation. In this instance, Wells Fargo assessed and paid itself for additional pre and postpetition charges from payments designed to satisfy a prepetition arrearage contained in its proof of claim and accruing postpetition installment payments. The payments were tendered by [Jones] or Trustee for the specific purposes outlined in [Jones's] plan and authorized by the Order confirming same. Wells Fargo had absolutely no right to divert these payments to other obligations without Court authority.

*In re Jones*, 366 B.R. at 600.

Wells Fargo now argues that the Bankruptcy Court erred by applying simple interest calculations to the amount Jones owed, when the terms of the mortgage called for a 360 day mortgage amortization calculation.  Rec. Doc. 34, p. 76.  However, the phrase "simple interest" does not appear in Bankruptcy Court's rulings.  The Bankruptcy Court did state:

> the portion of the installments designed to amortize principal should not be included in the prepetition arrearage amount because the full principal balance was also paid postpetition. To collect any principal or escrow payments from the Trustee (as part of the prepetition past due installments) would result in an overpayment of principal and escrow. Therefore, the prepetition installments have been reduced to eliminate escrow and principal repayment and now only provide for past due interest.

34

*In re Jones*, 366 B.R. at 591-92.  The Bankruptcy Court's finding that Wells Fargo's mis-calculated the amount due does not seem to be in error.  The Bankruptcy Court's opinion indicates that it found a violation because pre- and post-petition debts were not treated separately by Wells Fargo (i.e. the Bankruptcy Court found that Wells Fargo applied funds to both pre- and post-petition debt in violation of terms of Jones's plan).  Wells Fargo has not cited any authority to contradict the premise that pre-and post-petition must be treated differently.

Instead, Wells Fargo again relies on the argument that a bankruptcy courts cannot modify the terms of an existing mortgage.  This argument simply does not apply to this case.  The Bankruptcy Court did not attempt to modify the terms of Wells Fargo's security interest; the Bankruptcy Court found that Wells Fargo misapplied pre- and post- petition funds.  Furthermore, Wells Fargo's claim that the Bankruptcy Court erred by using "simple interest" calculations is not supported by the record.  Footnote 31 of the Bankruptcy Court's opinion specifically states that the Bankruptcy Court adopted Wells Fargo's 360 day year method of calculation:

> Wells Fargo's representative could not explain how interest was calculated in the accounting Wells Fargo supplied. The Court's review of Wells Fargo's accounting reveals that interest was calculated by applying the applicable interest rate on the full outstanding principal balance due at the time a payment was applied for a 360 day year. **The Court's interest calculations have adopted this formula**.

*In re Jones*, 366 B.R. at 592, n. 31 (emphasis added).

### B. Bankruptcy Court as Expert

Wells Fargo asserts that the Bankruptcy Judge improperly assisted Jones by acting as an expert in accounting.  The Bankruptcy Court addressed this issue on May 1, 2007 in an order

denying Wells Fargo's Motion to Reconsider.  In the May 1, 2007 Order, the Bankruptcy Court ruled:

> [Wells Fargo] argues the Court relied upon Jones's interpretation of Wells Fargo's accounting in its Opinion and objects to the Court's alleged reliance on non-expert testimony. This argument fails for a number of reasons. First, after consideration of the record and evidence, the Court formulated the factual findings contained in the Opinion. The Court's Opinion references the accounting offered into evidence by Wells Fargo as well as the testimony of its representative. It also references correspondence delivered by Wells Fargo to plaintiff and admitted into evidence, as well as the stipulated or unrefuted facts in these proceedings. Contrary to Wells Fargo's assertion, the Opinion does not rely in principal on the testimony of Plaintiff or his non-expert opinions.

*In re Jones*, 2007 WL 1302549, at *2 (Bkrtcy.E.D.La. 2007).  Wells Fargo's argument that the Bankruptcy Court acted as Jones's expert is unconvincing.  It is apparent that the Bankruptcy Court made findings of fact unfavorable to Wells Fargo;[34] however, Wells Fargo has failed to produce evidence that the Bankruptcy Court improperly acted as an advocate for Jones.

### 8. VOLUNTARY PAYMENT DOCTRINE

Wells Fargo asserts that Jones voluntarily paid the fees included in the payoff, and thus, the voluntary payments cannot be recovered.  In addition, Wells Fargo argues that the Bankruptcy Court committed an error of fact in failing to apply the Voluntary Payment Doctrine. Wells Fargo notes that the Bankruptcy Court's decision regarding the Voluntary Payment Doctrine rested, in part, on the finding that "there was no pending action" between Jones and Wells Fargo.  However, Wells Fargo asserts that the foreclosure against Jones was pending during the bankruptcy and there need not be "pending action" to apply the Voluntary Payment

---

[34] The Bankruptcy Court specifically held, "Wells Fargo's accounting also failed to recognize that prepetition charges, fees, and missed payments were to be separately paid by the Trustee under the plan and did not bear interest. All of these mistakes had the combined effect of increasing the interest charged and paid on the loan above that actually due." *In re Jones*, 366 B.R. at 589.

Doctrine.  Wells Fargo strenuously maintains that the Voluntary Payment Doctrine controls the case.

Further, Wells Fargo asserts that the Bankruptcy Court incorrectly distinguished *New Orleans & N.E.R. Co. v. Louisiana Const. & Imp. CO.*, 33 So. 51 (La. 1902) from the matter under review based on an error of fact.  Wells Fargo notes that the Bankruptcy Court distinguished *New Orleans & N.E.R. Co.* in part because the Bankruptcy Court found that there was "no pending action" between Wells Fargo and Jones when Jones made the payments to Wells Fargo.  *In re Jones*, 366 B.R. at 602.  Wells Fargo asserts that there was a pending action because Wells Fargo had already foreclosed against Jones.

Wells Fargo specifically relies on *New Orleans & N.E.R. Co. v. Louisiana Const. & Imp. Co.*, 33 So. 51 (La. 1902) and *Chris Albritton Const. Co., Inc. v. Pitney Bowes*, 304 F.3d 527 (5th Cir. 2002) to argue that the federal Voluntary Payment Doctrine should apply to this case.

In *Pitney Bowes*, the Fifth Circuit noted the elements of the Voluntary Payment Doctrine under Mississippi law,

> If the Plaintiffs voluntarily paid for something they did not owe, the voluntary payments cannot be recovered. 'The general principle is that, where the party **with full knowledge**, actual or imputed, of the facts, there being no duress, fraud or extortion, voluntarily pays money on a demand, although not enforceable against him, he cannot recover it back.'

*Pitney Bowes*, 304 F.3d at 531 (quoting *Graham McNeil Co. v. Scarborough*, 135 Miss. 59, 99 So. 502, 503 (Miss.1924)) (emphasis added).  The Supreme Court of Louisiana announced a similar rule in *New Orleans & N. E. R. Co.*: "[i]t is an established rule of law that if a party, **with a full knowledge** of the facts, voluntarily pays a demand unjustly made on him and attempted to

be enforced by legal proceedings, he cannot recover back the money." *New Orleans & N. E. R. Co.*, 33 So at 55 (emphasis added).

In this matter, the Bankruptcy Court reviewed Jones's knowledge of the facts and circumstances pertaining to Wells Fargo's claims. The Bankruptcy Court determined that "Wells Fargo did not disclose [the charges or fees] to Debtor at any point in time prior to the institution of this adversary proceeding." *In re Jones*, 366 B.R. at 601. Specifically, the Bankruptcy Court held, "Under these circumstances the Court finds that [Jones's] payment of the disputed fees and charges **was not voluntary or knowing**." *In re Jones*, 366 B.R. at 601 n. 67 (emphasis added). Because Wells Fargo relies on case law requiring the debtor's "full knowledge of the facts" for the Voluntary Payment Doctrine to apply, there is insufficient evidence that Bankruptcy Court erred when it distinguished *New Orleans & N. E. R. Co.*

Indeed, Wells Fargo's assertion that Jones "was sufficiently knowledgeable about the disputed charges"[35] does not overcome the Bankruptcy Court's finding that Jones lacked "full knowledge." As noted above, a bankruptcy court's findings of fact are subject to clearly erroneous review. Fed. R. Bankr. P. 8013. Again, the Bankruptcy Court reviewed the facts and found that Jones had less than "full knowledge:"

> At the outset, the Court notes that Wells Fargo has charged Debtor's account, post confirmation, with previously undisclosed attorney's fees, inspection charges, and a 'statutory expense.' These fees were accrued and paid from amounts delivered by the Trustee to satisfy Debtor's arrearage claim or from direct mortgage installment payments of Debtor tendered to satisfy principal, accrued interest, and escrow charges. Only after the institution of this adversary [proceeding] did Debtor discover, through discovery, the existence of these charges as they were not previously disclosed on any statement, coupon, or notice to Debtor, nor were they identified for the Trustee or Court.

--------

[35] Rec. Doc. 34, p. 82.

*In re Jones*, 366 B.R. 595.  This Court determines that Wells Fargo's bare assertion that Jones had "sufficient knowledge" does not overcome the "clearly erroneous" standard.

### 9. JONES VIOLATED THE AUTOMATIC STAY

Wells Fargo claims that Jones violated the automatic stay by paying his attorney $5,206.25.  Wells Fargo asserts that a conflict of interest was created between Jones, his attorney, and the plan because the funds paid to counsel could have satisfied the creditors.  In addition, Wells Fargo argues that the Bankruptcy Court erred by failing to disqualify Jones's attorney following the unauthorized post-petition transfer of $5,206.25.  Finally, Wells Fargo claims that the Bankruptcy Court committed manifest error when it denied Wells Fargo's motion to strike the request for attorney's fees without a hearing.

Wells Fargo's assertion that Jones violated the automatic stay originated in Wells Fargo's post-trial Motion to Strike Request for Attorney's Fees, filed February 16, 2007.[36]  On March 9, 2007, the Bankruptcy Court summarily dismissed Wells Fargo's Motion to Strike Request for Attorney's Fees, holding that Wells Fargo's Motion to Strike "was filed prematurely."[37]

After a thorough review of the record, it does not appear that this issue was ever substantively addressed by the Bankruptcy Court.  Furthermore, the Court has been unable to determine in which appeal(s), 07-7993, 07-7994, 07-7995, 07-7996, 07-7997, 07-7998, 07-9229, Wells Fargo initially raised this issue.  Because the Bankruptcy Court did not address the merits of Wells Fargo's argument, this issue does not appear ripe for review.  Moreover, this is a

---

[36] Bankruptcy Case No. 06-1093, Rec. Doc. 53.

[37] Bankruptcy Case No. 06-1093, Rec. Doc. 64.

spurious issue because it has no bearing on the Bankruptcy Court's finding that Wells Fargo violated the Bankruptcy Code's automatic stay.

### 10. INSPECTION FEES AND OTHER CHARGES

Wells Fargo asserts that the Bankruptcy Court committed manifest error in ruling that the inspection fees and other charges that Wells Fargo assessed were unreasonable.  Wells Fargo argues that it is inherently reasonable for a lender, holding a defaulted loan, to inspect the property, and to assess $15.00 fees for the inspections.  Again, Wells Fargo claims that it is improper for a bankruptcy court to interfere with a bank's policies to protect collateral when the right to inspect was established as part of the mortgage agreement.

In the Memorandum Opinion, the Bankruptcy Court stated,

> Wells Fargo bears the burden of establishing that the charges it seeks to impose against Debtor's loan are reasonable. Based on the testimony of Wells Fargo and the inspection reports offered into evidence, this Court concludes that Wells Fargo has failed to meet its burden. Wells Fargo did not show that Debtor's property was improperly maintained, nor did it show that Debtor had a history of failure to maintain his property. The inspection reports change little from month to month, and nothing in them gives cause for concern. Thus, nothing in the reports justified continued monitoring. Given Wells Fargo's failure to explain the necessity of the services or their reasonableness, the charges may not be assessed against Debtor's account.

*In re Jones*, 366 B.R. at 598 (footnote omitted).  Wells Fargo now argues that it was manifest error for the Bankruptcy Court to rule that ALL of the inspection fees were reasonable. However, Wells Fargo has failed to support its position with case law or other authority.

This Court reviews the Bankruptcy Court's legal rulings *de novo*.  Because Wells Fargo has not supported its assertion with authority, even under the less stringent *de novo* standard, there are no grounds to reverse the Bankruptcy Court's ruling.  Indeed, the inspection fees are inherently unreasonable in this case because the Bankruptcy Code's automatic stay should have

halted Wells Fargo's foreclosure proceedings, and Wells Fargo should have treated the loan as current as of the petition date.[38]  The fact that Wells Fargo continued to amass undisclosed fees against Jones was unreasonable given these circumstances.

### 11. WELLS FARGO'S STAY VIOLATION

Wells Fargo argues that the Bankruptcy Court erred by finding Wells Fargo in violation the automatic stay.  Again, Wells Fargo asserts that the amount due in the payoff letter was proper because the Bankruptcy Court authorized Jones's refinancing, on the condition that Wells Fargo be paid the amount due under the mortgage, not just the amount in the proof of claim. As argued above, Wells Fargo reiterates its position that it was entitled to make assessments against Jones's account for reasonable post-petition costs, including inspection fees.

Again, the Bankruptcy Court did not find that Wells Fargo violated the automatic stay because of the terms of the mortgage agreement.  Instead, the Bankruptcy Court found that Wells Fargo was in violation because it failed to disclose the fees to Jones, the court, or the Trustee, in combination with Wells Fargo's mis-application of funds.  "Wells Fargo applied [Jones's] direct postpetition installment payments to those payments owed prepetition" in derogation of the terms of the plan.  *In re Jones*, 366 B.R. at 589.  Specifically, the Bankruptcy Court found that Wells Fargo's accounting procedures "failed to recognize that prepetition charges, fees, and missed payments were to be separately paid by the Trustee under the plan and did not bear

---

[38] *In re Jones*, 366 B.R. at 590 (noting, "[r]ather than recalibrate the loan as current on the petition date, Wells Fargo continued to carry the past due amounts contained in its proof of claim in Debtor's loan balance. Wells Fargo applied any amounts received, regardless of source or intended application, to pre and postpetition charges, interest and noninterest bearing debt."). Furthermore, during the adversary proceeding, "[t]he Sheriff also testified that if the foreclosure suit had been dismissed on the petition date, no commissions or other charges would have been due, and the Sheriff would have refunded the unused portion of the deposit."  *Id.* at 591.

interest." *Id.*  Furthermore, the Bankruptcy Court found that Wells Fargo's proof of claim overstated the costs that were actually incurred.  *Id.* at 591 (noting that Wells Fargo listed $1,283.87 in prepetition foreclosure costs, but that the testimony at trial demonstrated that the actual amount was $743.87).  The Bankruptcy Court also noted Wells Fargo's admission that it "had collected sums in excess of the amounts necessary to satisfy the loan." *Id.* at 588 (referencing a January 12, 2006 letter from Wells Fargo to Jones).  Therefore, Wells Fargo's assertion the Bankruptcy Court "erred when it ruled that the assessment of interest, fees, commissions, and costs due to Wells Fargo under the terms of the mortgage violated the stay" is a misstatement of the Bankruptcy Court's findings.  Stated another way, Wells Fargo either does not understand the Bankruptcy Court's rationale for finding a stay violation, or is mischaracterizing the Bankruptcy Court's findings on appeal.  Consequently, Wells Fargo's argument does not undermine the Bankruptcy Court's findings.

### 12. AMENDED AND SECOND AMENDED JUDGMENTS EXCEEDED BANKRUPTCY COURT'S AUTHORITY

Wells Fargo asserts that the Bankruptcy Court did not have the authority to fashion the remedies in the amended judgments because the Bankruptcy Court's ruling limited the rights of Wells Fargo to collect post-petition amounts due under the mortgage.  Indeed, Wells Fargo argues that the amended judgments go beyond the authority granted under the Bankruptcy Code.  Specifically, Wells Fargo objects to the requirement that it issue annual notices of post-petition charges.  Again, relying on *Nobleman*, Wells Fargo claims that bankruptcy courts can modify the **claims** of secured creditors, but not the **rights** of such lenders.  Furthermore, Wells Fargo argues that the Bankruptcy Court did not have the authority to regulate non-parties by ordering that the amended judgments apply to all "debtors with pending bankruptcy cases."

### 1. Invited Error

As an initial matter, the Court notes an inconsistency in the record.  The Amended and

Second Amended Judgments ordered Wells Fargo to implement new accounting procedures

"[a]s an alternative to the imposition of punitive monetary damages.[39]  It appears that the new

_____

[39] The Second Amended Judgment, Bankruptcy Case No. 06-1093, Rec. Doc. 183, states:

1. Upon the filing of a chapter 13 bankruptcy petition, the amounts outstanding on a debtor's loan will be divided into two new, internal administrative accounts. The first account will contain the sums to be paid under debtor's plan by the Chapter 13 Trustee; typically the pre-petition past due amounts including past due interest, costs, charges, and fees ("Account One"). The opening balance on Account One should directly correlate to the amounts reflected on Wells Fargo's proof of claim. Account One will also include any amounts added by subsequent court order to the plan for payment by the Trustee during the case's administration. All payments made by the Trustee will be applied to the reduction of the amounts owed on Account One.

The second account will reflect the principal amount due on the petition date[3] ("Account Two"). No other sums should be owed on Account Two at the start of the case. Account Two will include post-petition interest accrual, post-petition property insurance or property tax expenditures, and other court authorized post-petition charges as provided in paragraph 2 below.[4] A debtor's regular monthly note payments will be posted to this account, reducing post-petition interest accrual, post-petition property and tax expenditures, and principal. The account's first posting will typically be the first installment payment due on the loan following the petition date.

Wells Fargo may maintain, post-petition, its customary records on the loan provided that the two new internal accounts shall control the loan's administration during the pendency of the case.

2. With the exception of post-petition property taxes and property insurance expenditures, Wells Fargo may provisionally accrue, but not assess or collect, any post-petition charges, fees, costs, etc. allowed by the note, security agreement and state law. Post-petition property tax and insurance expenditures may be assessed against debtor's account and collected after the delivery of a ten day written notice to debtor, debtor's counsel, and the Trustee. The assessment and collection of expenditures for post-petition property insurance and taxes will not require approval of the bankruptcy court unless a written objection is filed within 10 days of the notice of assessment and collection. If authorized by Wells Fargo's note, security agreement, and state law, the collection of amounts necessary to pay post-petition insurance and property tax expenditures may be made in advance through the use of escrow accounts. If escrows are utilized, Wells Fargo must give a written accounting of the amounts collected at the time it seeks to apply the escrowed funds to payment of the insurance or property tax expenditures.

"accounting procedures" were actually proposed by Wells Fargo.  Indeed, the Bankruptcy

Court's Supplemental Memorandum Opinion, Bankruptcy Case No. 06-1093, Rec. Doc. 153, p.

10, states, "As an alternative to the imposition of punitive monetary damages, **Wells Fargo has**

---

As to Post-Petition Charges, annually, between January 1 and February 28 of each year during a
case's administration, Wells Fargo shall file with the Court and serve upon the debtor, debtor's
counsel, and the Trustee, notice of any Post-Petition Charges (which do not include
property taxes or insurance), accrued in the preceding calendar year. The notice shall contain an
itemization describing the charge, amount provisionally incurred, the date incurred, and if
relevant, the name of the third party to whom the charge was paid. The notice will also provide a
direct reference to the provisions of the note, security agreement, or state law under which Wells
Fargo asserts its authority to assess each type of charge.

The notice shall also state that debtors, the Trustee, and any other interested party, shall have
30 days within which to object to any or all assessments outlined in the notice. It shall contain a
statement to the effect that debtor may elect to add the charges to his plan with approval of the
bankruptcy court, satisfy the charges directly outside the plan, or defer repayment until the
conclusion of his case.

If no objection to the amounts provisionally assessed is filed, or if filed, upon entry of an
order approving some amount of the provisional charges, Wells Fargo may submit a proposed *ex
parte* order authorizing assessment of the Post-Petition Charges as set forth in its notice or as
approved by the court, as applicable. However, Wells Fargo may not collect on any approved
Post- Petition Charges unless the debtor voluntarily delivers payment separate and above from
that due as a regular monthly installment or obtains approval of the court to modify the plan and
satisfy the amounts due through periodic payments by the Trustee. If the approved Post-Petition
Charges are to be paid through the modified plan, they will be added to Account One and
satisfied by the Trustee. If to be paid by the debtor, they may be added to Account Two.
If no provision for payment is made by a debtor, the collection of the approved Post-Petition
Charges must be deferred until the close of the case or relief from the stay is obtained.

3. If Wells Fargo does not issue a notice of Post-Petition Charges, in accordance with
paragraph 2, for any given year of the case's administration, then Wells Fargo shall be prohibited
from collecting or assessing any charges accrued against the debtor for that year and shall treat
the debtor as fully current at the time of discharge.

4. Upon the issuance of a discharge, Wells Fargo shall adjust its permanent records to reflect
the current nature of debtor's account. Provided however, that if debtor elected to defer the
payment of approved Post-Petition Charges until the conclusion of the case's administration,
then Wells Fargo shall be authorized to collect said sums in accordance with the provisions of its
note, security instrument, and state law.

**offered to revise its practices** in connection with all loans administered in the Eastern District of Louisiana . . . Wells Fargo has proposed [the identical procedures listed in n. 39]."[40]

Wells Fargo's right to appeal the imposition of the new "accounting procedures" is uncertain because Wells Fargo proposed the new "accounting procedures." The doctrine of "invited error" may bar Wells Fargo's claim. "The invited error doctrine provides that 'a party may not complain on appeal of errors that he himself invited or provoked the court . . . to commit.'" *Munoz v. State Farm Lloyds of Texas*, 522 F.3d 568, 573 (5th Cir. 2008) (quoting *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir.1993)). Invited error doctrine is usually applied in the context of evidentiary errors; however, the doctrine may apply under these circumstances. *See Capella v. Zurich General Acc. Liability Ins. Co.*, 194 F.2d 558, 660 (5th Cir. 1952) (stating, "counsel may not invite error and then complain of it.").

Furthermore, Wells Fargo's assertion that the new accounting procedures impermissibly modify the *rights* of secured creditors is unconvincing. The accounting procedures in the Amended Judgments state, "Wells Fargo may provisionally accrue, but not assess or collect, any post-petition charges, fees, costs, etc. allowed by the note, security agreement and state law."[41] Clearly, the language of the Amended Judgments does not inhibit Wells Fargo's *right* to accrue charges against debtors; however, the Amended Judgments outline a set of procedures for collecting the amounts due during bankruptcy proceedings.

### 2. Bankruptcy Court's Authority to Impose "New Procedures"

---

[40] See the discussion, *infra*, detailing an in court discussion between Wells Fargo's counsel, Wells Fargo's corporate representative, Ms. Miller, and the Bankruptcy Judge about Wells Fargo's consent to implement new accounting procedures.

[41] Bankruptcy Case No. 06-1093, Rec. Doc. 183, "Second Amended Judgment," ¶ 2.

First, "[t]he issue of awarding punitive damages is also appropriately reviewed under an abuse of discretion standard." *In re Adomah*, 368 B.R. 134, 137 (S.D.N.Y. 2007) (citing *In re Fugazy Express*, 124 B.R. 426, 430 (S.D.N.Y.1991)).  Section 362(k)(1) of the Bankruptcy Code states that "any individual injured by any willful violation of the stay provided by this section shall recover actual damages . . . and, in appropriate circumstances, **may recover punitive damages**."  11 U.S.C. § 362(k)(1) (emphasis added).

As the Bankruptcy Court noted, "[p]unitive damages are warranted when the conduct in question is willful and egregious, or when the defendant acted 'with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.'" *In re Jones*, 2007 WL 2480494, at *4 (Bkrtcy.E.D.La. 2007) (citing *In re Ketelsen*, 880 F.2d 990, 993 (8th Cir. 1989); quoting *In re Sanchez*, — B.R. —, 2007 WL 2137790, at * 18 (Bankr.S.D.Tex. 2007)).

Section 105 of the Bankruptcy Code defines a bankruptcy court's power:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The First Circuit noted that Section 105, "[a]lthough expansively phrased . . . affords bankruptcy courts considerably less discretion than first meets the eye, and in no sense constitutes a roving commission to do equity." *In re Ludlow Hosp. Soc., Inc.*, 124 F.3d 22, 27 (1st Cir. 1997).  "Instead, the equitable discretion conferred upon the bankruptcy court by

46

section 105(a) is limited and cannot be used in a manner inconsistent with the commands of the

Bankruptcy Code." *Id.*

 Similarly, the Ninth Circuit has stated, "whatever equitable powers remain in bankruptcy

courts must and can only be exercised within the confines of the Bankruptcy Code." *In re*

*Myrvan*, 232 F.3d 1116, 1124 (9th Cir. 2000) (quoting *Norwest Bank Worthington v. Ahlers*, 485

U.S. 197 (1988)). The Ninth Circuit then described the trend to limit Section 105 powers:

> More recent opinions at the circuit level are equally insistent that a bankruptcy
> court's application of § 105(a) is limited to those situations where it is "a means
> to fulfill some specific Code provision." *In re Fesco Plastics Corp.*, 996 F.2d 152,
> 154 (7th Cir. 1993); see *IRS v. Kaplan* (*In re Kaplan*), 104 F.3d 589, 597-98 (3d
> Cir. 1997) ("'[T]he fact that a [bankruptcy] proceeding is equitable does not give
> the judge a free-floating discretion to redistribute rights in accordance with his [or
> her] personal views of justice and fairness, however enlightened those views may
> be.'" (alterations in original) (quoting *In re Chicago, Milwaukee, St. Paul and
> Pac. R.R.*, 791 F.2d 524, 528 (7th Cir. 1986))); *Noonan v. Secretary of Health and
> Human Servs.* ( *In re Ludlow Hosp. Soc'y, Inc.*), 124 F.3d 22, 27 (1st Cir. 1997)
> ("[T]he equitable discretion conferred upon the bankruptcy court . . . 'cannot be
> used in a manner inconsistent with the commands of the Bankruptcy Code.' "
> (quoting *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 824 (1st Cir.
> 1990))).

*Id.* at 1124-25.

 The Fifth Circuit discussed Section 105, holding:

> While the bankruptcy courts have fashioned relief under Section 105(a) in a
> variety of situations, the powers granted by that statute may be exercised only in a
> manner consistent with the provisions of the Bankruptcy Code. That statute does
> not authorize the bankruptcy courts to create substantive rights that are otherwise
> unavailable under applicable law, or constitute a roving commission to do equity.

*U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986).

 In this case, the Bankruptcy Judge ordered that Wells Fargo implement new accounting

procedures to prevent Wells Fargo from violating the automatic stay in other bankruptcy cases.

The Bankruptcy Judge imposed the new accounting procedures to help protect future debtors

from harm;[42] this is injunctive relief.[43]  The Supreme Court has stated that bankruptcy courts "are essentially courts of equity, and their proceedings inherently proceedings in equity." *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, R.I. & P. Ry. Co.*, 294 U.S. 648, 675 (1935) ("[t]he power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is, therefore, inherent in a court of bankruptcy.").

"[T]he main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy."  Wright & Miller, 11A FED. PRAC. & PROC. CIV. 2d § 2942.  Additionally, the Fifth Circuit adheres to the traditional test for injunctive relief:

> a permanent injunction must meet a four-part test. It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.

*VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).

The Bankruptcy Court clearly had the authority to impose punitive damages against Wells Fargo pursuant to Section 362 because the Bankruptcy Court determined that Wells Fargo's conduct was "egregious."[44]  However, the record does not indicate that the Bankruptcy

---

[42] The Bankruptcy Judge specifically stated, "The imposition of monetary sanctions to reimburse Debtor for costs and legal fees incurred will not, in this Court's opinion, deter Wells Fargo from future objectionable conduct."  *In re Jones*, 2007 WL 2480494, at *5 (Bkrtcy.E.D.La. 2007).

[43] Douglas Laycock, MODERN AMERICAN REMEDIES 235 (2002) (noting "an injunction is a court order, enforceable by sanctions for contempt of court, directing defendant to do or refrain from doing some particular thing.  The injunction against future violations of law is the simplest use of the injunction.")

[44] Specifically, the Bankruptcy Court stated,

Wells Fargo assessed post-petition charges on a loan being paid through a plan of

Court considered whether imposing the new accounting procedures, as equitable relief, was

warranted because there was "no adequate legal remedy."  Instead, the Bankruptcy Court found:

> the imposition of monetary sanctions to reimburse Debtor for costs and legal fees
> incurred will not, in this Court's opinion, deter Wells Fargo from future
> objectionable conduct. Wells Fargo is a national lender, listed on the New York
> Stock Exchange, with considerable financial resources. The imposition of a
> $67,202.45 damage award is de minimus, and insufficient to act as a deterrent to
> future misconduct.

*In re Jones*, 2007 WL 2480494, at *5 (Bkrtcy.E.D.La. 2007).  In addition, it does not appear

from the record that the Bankruptcy Court considered the four-part test for injunctive relief

before imposing the new accounting procedures "[a]s an alternative to the imposition of punitive

monetary damages."[45]  Again, this Court notes that the action of the Bankruptcy Judge may well

have seemed justified in light of Wells Fargo having proposed the new accounting procedures in

the first place.  However, it appears that Wells Fargo's "consent" to the new accounting

procedures has been revoked.[46]  Accordingly, the equitable remedy that the Bankruptcy Judge

imposed must be remanded for additional consideration.

### 13. Initial "Final" Judgment Divested Bankruptcy Court's Authority to Enter Amended and Second Amended Judgments

---

> reorganization. However, it was not the assessment of the charges, but the
> conduct which followed that this Court finds sanctionable. Despite assessing
> post-petition charges, Wells Fargo withheld this fact from its borrower and
> diverted payments made by the Chapter 13 Trustee ("Trustee") and Debtor to
> satisfy claims not authorized by the plan or Court. Wells Fargo admitted that
> these actions were part of its normal course of conduct, practiced in perhaps
> thousands of cases. The Court finds this conduct to be egregious.

*In re Jones*, 2007 WL 2480494, at *4 (Bkrtcy.E.D.La. 2007).

[45] *In re Jones*, 2007 WL 2480494, at *5 (Bkrtcy.E.D.La. 2007).

[46] See discussion of Wells Fargo's consent, *infra*

49

Wells Fargo asserts that the April 13, 2007 Judgment was a final decree, and that filing the notice of appeal on May 10, 2007 divested the Bankruptcy Court of jurisdiction. On that basis, Wells Fargo argues that the Amended Judgments, entered in August and September 2007, were promulgated without authority. Wells Fargo extends the argument to assert that the later reformation of the April 13, 2007 "judgment" into a "partial judgment" was error, and the award of $67,202.45 is void.

The April 13, 2007 "Judgment" was not a "final judgment" ripe for appeal because the Bankruptcy Court explicitly reserved the issue of damages for a hearing on May 16, 2007.[47] As the Fifth Circuit noted in *Matter of Morrell*:

> where assessment of damages or awarding of other relief remains to be resolved [judgments] have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291. The concept of finality employed to determine appealability under the Bankruptcy Code is 'open to a more liberal interpretation' than that applicable to civil litigation governed by 28 U.S.C. § 1291 but this liberality stems from practicality, and is limited by it in turn. Determinations of liability without an assessment of damages are as likely to cause duplicative litigation in bankruptcy as they are in civil litigation, and because bankruptcy litigants may appeal to district as well as to appellate courts, the waste of judicial resources is likely to be greater.

*Matter of Morrell*, 880 F.2d 855, 856-57 (5th Cir. 1989) (quoting *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976); 1 Collier on Bankruptcy § 3.03[6][b] at 3-181 (1989) (internal citations and footnotes omitted)).

Wells Fargo's reliance on *Budinich v. Becton Dickinson & Co.*, and its assertion that "a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains

---

[47] Bankruptcy Case No. 06-1093, Rec. Doc. 68, "Amended Judgment," ¶ 3.

for adjudication a request for attorney's fees"[48] is unconvincing and inapplicable.  The

Bankruptcy Court explicitly stated in the April 13, 2007 Judgment that "an evidentiary hearing

on the propriety of a sanctions award" would be held at a later date.  Bankruptcy Case No. 06-

1093, Rec. Doc. 68, "Amended Judgment," ¶ 3.  A determination of a "sanctions award" is not

the same as an adjudication of attorney's fees.  In this case, the Bankruptcy Court imposed a

requirement that Wells Fargo implement new "accounting procedures" in the Amended and

Second Amended Judgments.  Therefore, the Bankruptcy Court retained jurisdiction to

determine more than mere attorney's fees.  Accordingly, *Matter of Morrell* is controlling over

*Budinich*, and thus, the Bankruptcy Court's April 13, 2007 "judgment" was not a "final

judgment."[49]

### 14. WELLS FARGO'S CONSENT (LACK OF CONSENT)

Wells Fargo asserts that it did not consent to the deferred ruling on sanctions and punitive

damages, and thus, the Bankruptcy Court committed a reversible error of fact in finding that

Wells Fargo consented.  Wells Fargo specifically argues that "Wells Fargo discussed the

possibility of a consent order with the Bankruptcy Court but there was no consent."  Rec. Doc.

34, p. 139 of 146.

---

[48] Rec. Doc. 34, p. 135 of 146 (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988)).

[49] In other words, Wells Fargo's initial appeal from the April 13, 2007 "Judgment" was an interlocutory appeal. The Eight Circuit has held that when a bankruptcy court retains jurisdiction when appellant lodges an interlocutory appeal. *In re Smith*, 212 Fed.Appx. 577, 578 (8th Cir. 2006) (citing *In re Christian & Porter Aluminum Co.*, 584 F.2d 326, 334 (9th Cir.1978) (general rule that properly filed notice of appeal deprives trial court of jurisdiction to proceed further except by leave of appellate court does not apply in bankruptcy proceedings)).

The Court finds Wells Fargo's assertion regarding its lack of consent disingenuous. On May 29, 2007, the following exchange took place between counsel for Wells Fargo and the Bankruptcy Judge:

> MR. RUMAGE: [Wells Fargo] really want[s] to try and make sure that this does not happen again in the future. They really -- and Ms. Miller [corporate representative][50] is here to testify if the Court wants her testimony. **They are prepared to implement these accounting procedures**, to audit every account before the discharge, to make sure that they are doing everything that they possibly can to make sure that they are in compliance with the Court's order.
>
> THE COURT: Are they willing to enter into a **consent order** on those terms?
>
> MS. MILLER: Yes.
>
> MR. RUMAGE: Yes, Your Honor.
>
> MS. MILLER: Yes, Your Honor.
>
> THE COURT: Okay. Because that would at least give me something to enforce in the future if there was a problem in the future. Okay.

Bankruptcy Case No. 06-1093, Rec. Doc. 126, Trial Transcript, p. 83 (emphasis added). Assuming that Ms. Miller, as Wells Fargo's Vice President for Bankruptcy, had the authority to bind the company, there is sufficient evidence in the record to support the Bankruptcy Court's finding that Wells Fargo consented to the imposed sanctions. Stated another way, the Bankruptcy Judge reasonably relied on Wells Fargo's statement that it was willing to enter into a consent order because both counsel for Wells Fargo and Wells Fargo's Vice President of the Bankruptcy Department made the affirmative statement, "yes," on the record in response to the Bankruptcy Judge's question: "Are they willing to enter into a **consent order** on those terms?" The Court notes that the Bankruptcy Judge's question was phrased in the future tense, but the

---

[50] Ms. Miller is a vice president of Wells Fargo, in charge of the Bankruptcy Department, nationwide. Bankruptcy Case No. 06-1093, Rec. Doc. 126, Trial Transcript, p. 45.

Court finds no further indication in the bankruptcy court record that Wells Fargo ever revoked

their intent to be bound by the consent order.  Indeed, Wells Fargo seems to have shifted its

position on the consent order solely for the purposes of seeking reversible error on appeal.

### 15. THE BANKRUPTCY COURT'S AUTHORITY TO AMEND DISTRICT COURT'S STAY

Wells Fargo argues that the Bankruptcy Court had no authority to amend this Court's

September 28, 2007 order granting Wells Fargo's Motion for Stay of Judgment.  In the

September 28, 2007 order, this Court ruled:

> IT IS ORDERED, that the emergency motion for stay of judgment and orders is
> GRANTED.  The judgments and orders of April 13, 2007 and September 14,
> 2007 are stayed pending perfection of the supersedeas bond to be set by the
> Bankruptcy Court.

District Court Case No. 07-5973, Rec. Doc. 3.

On October 16, 2007, the defendant filed a motion to approve the supersedeas bond with

the Bankruptcy Court.  Bankruptcy Case No. 06-1093, Rec. Doc. 224.  On October 19, 2007, the

Bankruptcy Court approved the supersedeas bond and then issued an order *partially* granting a

stay.  Bankruptcy Case No. 06-1093, Rec. Doc. 227.  The Bankruptcy Court bifurcated the order

of this Court, ruling:

> IT IS ORDERED that Wells Fargo's Motion for a Stay Pending Appeal is
> GRANTED, IN PART, and the monetary judgment portion of the Second
> Amended Judgment is stayed, provided Wells Fargo submits a bond in the
> amount of $100,891.24.
>
> IT IS FURTHER ORDERED that Wells Fargo's Motion for a Stay Pending
> Appeal is DENIED, IN PART, and the non-monetary portion of the Second
> Amended Judgment that requires new accounting procedures will not be stayed.

Bankruptcy Case No. 06-1093, Rec. Doc. 227.

Wells Fargo correctly argues that Bankruptcy Rule 8005 authorizes district courts to issue a stay in matters that are appealed from the bankruptcy courts.  Rule 8005 states, "subject to the power of the district court and the bankruptcy appellate panel, reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal . . . ."  11 U.S.C.A. § 8005 (West 2005).  Again, this Court ruled that "[t]he judgments and orders of April 13, 2007 and September 14, 2007 are stayed pending perfection of the supersedeas bond to be set by the Bankruptcy Court."  Under these circumstances, the Bankruptcy Judge could reasonably assume that this Court's stay was automatically lifted once the supersedeas bond was set.  Therefore, Wells Fargo's assertion that the Bankruptcy Judge exceeded her authority is unconvincing.  In addition, the new accounting procedures will be revisited on remand in the bankruptcy court.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED, that the Judgments of the Bankruptcy Court are AFFIRMED IN PART, REVERSED IN PART, and the matter is REMANDED for further action consistent with this Order and Reasons.

New Orleans, Louisiana, this 1st day of July, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

54